# EXHIBIT 1

# Index of DHCR Decisions and Affirmation

**Page(s)**

*In the Matter of 445 17th Street*,
    Docket No. RJ210007UC (10/13/04)...............................................................................2

*Answering Affirmation of Patrice Huss in Opposition to Article 78 Petition,*
    *852 Hart LLC v. DHCR*, Index No. 502737/2021 (4/23/2021)......................................5

*In the Matter of Akpan*,
    Docket No. SF210002UC (5/19/2005).............................................................................26

*In the Matter of Cholakian*,
    Docket No. VG210054RO (1/9/2008) .............................................................................34

*In re Matter of the Administrative Appeal of 219 Troutman*,
    Docket No. LO210030RO (6/6/2023)..............................................................................37

*In re Matter of the Administrative Appeal of Amos Fisher*,
    Docket Nos. DT210040RT and BO210007UC (5/18/2016).........................................52

*In re Matter of the Administrative Appeal of Creas, Inc.*,
    Docket No. MN210018RO (10/30/2024)..........................................................................69

*In the Matter of the Administrative Appeal of Cypress Hills Ventures LLC*,
    Docket No. LQ11007RO (7/24/2023)..............................................................................73

*In re Matter of the Administrative Appeal of Edwina Stroud*,
    Docket No. FV210027RT (6/14/2018) .............................................................................77

*In the Matter of the Administrative Appeal of Lorraine St. Pierre*,
    Docket No. AO410028RT (7/31/2014)..............................................................................82

*In re Matter of Various Tenants of 505 Lafayette Avenue*,
    Docket Nos. XJ210022RT and WE2100022RT (5/7/2010) ..........................................90

*In the Matter of ZG Court LLC*,
    Docket No. MQ210009RO (10/8/2024)............................................................................95

STATE OF NEW YORK
DIVISION OF HOUSING AND COMMUNITY RENEWAL
OFFICE OF RENT ADMINISTRATION
GERTZ PLAZA
92-31 UNION HALL STREET
JAMAICA, NEW YORK 11433

------------------------------------X
IN THE MATTER OF THE ADMINISTRATIVE : ADMINISTRATIVE REVIEW
APPEAL OF                             DOCKET NO. SE210086RT
                                    : RENT ADMINISTRATOR'S
VARIOUS TENANTS OF 445 17TH STREET    DOCKET NO. RJ210007UC

                 PETITIONER    :
------------------------------------X
  ORDER AND OPINION DENYING PETITION FOR ADMINISTRATIVE REVIEW


     The above-named petitioner-tenants filed a Petition for
Administrative Review against an order issued by a Rent
Administrator, concerning the housing accommodations known as 445
17th Street, Brooklyn, New York, Various Apartments, wherein the Rent
Administrator determined that the subject premises was exempt from
rent regulation based upon a substantial rehabilitation of the
premises performed in 1987-89.

     In this petition, the tenants allege, in substance, that the
renovations in the two first floor apartments were done illegally;
that the owner has failed to submit sufficient proof of the
renovation work in that it did not submit an affidavit from the
prior owner, contractor or architect; that the architect who
prepared an affidavit in 2004 never entered one apartment in the
subject premises; that the DHCR should have arranged an inspection
of the subject premises; and that the subject premises was never
over 80% vacant at the time the renovation work commenced as shown
by affidavits of former tenants as well as longtime neighborhood
residents.

     In answer to the tenants' petition, the owner stated, in
substance, that the Department of Buildings ("DOB") found no problem
with the work done in the ground floor apartments; that the
condominium offering plan (later withdrawn for lack of subscribers)
included an assessment of the construction from a licensed
architect; and that the subject premises was vacant at the time that
construction commenced.

     The tenants and attorney of one of the tenants submitted
rebuttals to the owner's answer.  Such rebuttals reiterated the
tenants' arguments that the owner should have submitted evidence
from the prior owner and contractor concerning the construction
work;  that the condominium plan was not approved by the Attorney
General's Office and was abandoned for that reason; that there was
no proof that the subject premises was vacant at the time of
construction; and that the two first floor apartments are illegal.
The tenants also cited court cases in support of their contentions.


1

The Commissioner is of the opinion that this petition should be denied.

Section 2520.11(e) of the Rent Stabilization Code provides in pertinent part that housing accommodations in buildings substantially rehabilitated as family units on or after January 1, 1974 are exempt from regulation provided that certain criteria are met. These criteria include _inter alia_ that at least 75% of listed building-wide and individual housing accommodation systems must have been replaced and that the rehabilitation must have been commenced in a building that was in a substandard or seriously deteriorated condition. When the rehabilitation was commenced in a building in which at least 80% of the housing accommodations were vacant of residential tenants, there shall be a presumption that the building was substandard or seriously deteriorated at that time.

Operational Bulletin 95-2 provides a list of building-wide and apartment systems as follows: plumbing; heating; gas supply; electrical wiring; intercoms; windows; roof; elevators; incinerators or waste compactors; fire escapes; interior stairways; kitchens; bathrooms; floors; ceilings and wall surfaces; pointing or exterior surface repair as needed; and all doors and frames including the replacement of non-fire-rated items with fire-rated ones. Additionally, Operational Bulletin 95-2 provides that all ceilings, flooring and plasterboard or wall surfaces in common areas must have been replaced; and ceiling, wall and floor surfaces in apartments, if not replaced, must have ben made new as determined by the DHCR.

In the instant case, the evidence of record discloses that at least 80% of the housing accommodations were vacant when the rehabilitation work commenced. As of April 20, 1987, the Department of Housing, Preservation and Development ("HPD") listed as a violation the fact that the subject premises had been vacant and untenanted except for a caretaker for 60 days or more, and cannot be reoccupied until a new Certificate of Occupancy has been obtained. The violation noted that the premises had been vacant since February 18, 1987. Additionally, the 1989 condominium offering plan for the subject premises did not list any residents of the subject premises and so was only offered to outsiders. Further, the owner's president submitted an affidavit to the effect that she purchased the subject premises in 1992 and that the subject premises had been vacant from 1987 to 1992. In rebuttal, the tenants submitted an affidavit from a resident of a neighboring building and a statement alleged to be from a resident of the subject premises to the effect that the subject premises was not vacant in 1987. The tenants' evidence is insufficient to overcome the substantial evidence submitted by the owner showing that the required 80% vacancy level occurred in 1987.

Further, the evidence of record, including the Condominium Offering Plan which contained a description of the work that was done, copies of the architect's flings made with the DOB under Alt. NO. 1889/87; an affidavit from a licensed architect dated January 7, 2004, and a Certificate of Occupancy dated February 4, 1994, establishes that more than the required 75% of listed building-wide

and individual housing accommodation systems were replaced. The tenants' contentions that the construction in the two first floor apartments are not legal is belied by the architect's affidavit and the fact that the DOB issued a Certificate of Occupancy after the work was completed. Further, the court cases cited by the tenants on appeal are not on point. The owner submitted sufficient proof to establish that the required work was done and there was no need for the DHCR to have conducted an inspection at the subject premises. Accordingly, the Rent Administrator's order was warranted.

THEREFORE, in accordance with the provisions of the Rent Stabilization Law and Code, it is

ORDERED, that this petition for administrative review be, and the same hereby is, denied, and, that the order of the Rent Administrator be, and the same hereby is, affirmed.

ISSUED  **OCT 1 3 2004**

PAUL A. ROLDAN
Deputy Commissioner

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
————————————————————————————-—x
In the Matter of the Application of.          ANSWERING
852 HART LLC,                                 AFFIRMATION

                          Petitioner,

For a Judgment Pursuant to Article 78.        Index No. :
of the Civil Practice Law and Rules,          502737/2021

          -against-

NEW YORK STATE DIVISION OF HOUSING            Assigned to
AND COMMUNITY RENEWAL,                        Justice Silber

                          Respondent.

RE: DHCR Dkt. No.IU-210004-RO (GR-210003-UC)
————————————————————————————-x

Patrice Huss, an attorney duly admitted to practice law before the courts of the State of New York, states the following to be true pursuant to CPLR 2106:

1.  I am an attorney in the office of Mark F. Palomino, Counsel to respondent New York State Division of Housing and Community Renewal ("DHCR").

2.  This affirmation is submitted in support of DHCR's Verified Answer and in further opposition to the CPLR Article 78 Petition of petitioner 852 Hart LLC ("Landlord").

3.  Landlord is challenging a final order of DHCR issued December 7, 2020, pursuant to DHCR docket number IU210004RO ("Final Order").  DHCR's Final Order affirmed the Rent Administrator's denial of Landlord's application seeking an

order from DHCR finding that the subject multiple dwelling is exempt from rent regulation based on a substantial rehabilitation completed after January 1, 1974. Deregulation is precluded in this case because Landlord failed to prove that prior to the renovation the building was substandard or seriously deteriorated. The Rent Stabilization Code permits a presumption of substandard or seriously deteriorated condition if Landlord can show that the building was at least 80 percent vacant of residential tenants prior to commencing rehabilitation work. Landlord was not able prove 80 percent vacancies and therefore was barred from employing the presumption of substandard or seriously deteriorated condition. A finding of substandard or seriously deteriorated condition Is a regulatory prerequisite to a finding that a building is exempt from rent stabilization due to a substantial rehabilitation. Also, an independent basis for denying the substantial rehabilitation application is Landlord's failure to submit to DHCR a permit for electrical wiring. A copy of DHCR's Final Order under review is attached hereto at Exhibit "A" and contains the grounds for its issuance.

<strong><u>FACTS</u></strong>

4. This proceeding involves various housing accommodations in a building located at 852 Hart Street, Brooklyn, New York.

The housing accommodations in the subject building are subject to regulation under the New York City Rent Stabilization Law ("RSL")[1] and Rent Stabilization Code ("RSC").[2]

### a. The Application

5.    This proceeding was commenced on June 6, 2018 by filing an application to determine whether the subject building is exempt from rent regulation due to substantial rehabilitation in accordance with RSC 2520.11(e) and DHCR Operational Bulletin 95-2 ("OB 95-2") [see copy of OB 95-2 at NYSCEF item no. 5].

6.    Landlord's application stated that it purchased the subject building on April 23, 2010; that the building was entirely vacant when the rehabilitation commenced in January 2016; that pursuant to RSC 2520.11(e) a presumption existed that at the time the building became vacant it was in substandard or seriously deteriorated condition; that renovations commenced in January 2016 and were completed in May 2016 under Department of Buildings ("DOB") Job No. 340339280; and that Landlord expended approximately $702,947.47 to gut renovate the building; that at least 75 percent of the building-wide and apartment systems listed in OB 95-2 were replaced including the:  plumbing, heating, electrical wiring, intercoms, windows, roof, fire

---

[1] Administrative Code of the City of New York, §§ 26-501 – 26-520; 65 McK. Unconsol. Laws, vol. 8601-8620, pp. 165-289 (2013 ed.).

[2] 9 N.Y.C.R.R §§ 2520.1 – 2531.9; 65 McK. Unconsol. Laws, vol. 8621-8700, pp. 212-474 (2013 ed.).

escapes, interior stairways, kitchen, bathrooms, floors, ceiling and wall surfaces, pointing and surface repairs were performed as needed, and replacement of all doors and frames. Landlord's application stated that the building did not contain elevators, nor incinerators or waste compactors; and that no government financing or tax abatement was received for the project.

7. In support of the application Landlord submitted, *inter alia,* a printout of the deed dated April 16, 2010 transferring the building from Appoo Sameshwar ("prior owner"} to Landlord 852 Hart LLC; before and after photographs of the work; contractor invoices and cancelled checks to prove payment; an affidavit from engineer Yaakov Stern, who drafted the architectural plans; an affidavit from architect Victor Fernandes; an affidavit from managing agent Joel Rubin; DOB job file no. 340339280 and DOB Letter of Completion no. 340339280.

8. On September 11, 2019 DHCR's Rent Administrator requested that Landlord provide the following additional information/evidence within 21 days: "1. Submit a copy of the Tenant Buy Out for all 6 units. 2. Submit a copy of all contracts of work performed. 3. Yaakov Stern is the applicant/ architect of record for DOB job no. 340339280. The Letter of Completion is addressed to Victor Fernandes. Submit evidence to

support the person's involvement. 4. Submit initial and final

PW3 (cost affidavit) which the architect certified to DOB."

9. DHCR' September 11, 2019 notice also stated that:

> NOTE: Your failure to comply with this request may
> result in an order dismissing your application in
> whole or in part. If you are not the applicant, your
> failure to comply will result in a determination based
> solely on the information in the record

10. On October 2, 2019 Landlord submitted a response to

the September 11, 2019 notice.

11. On October 30, 2019 DHCR requested the following

additional information: "1. A full-blown copy of all DOB

approved architectural plans for jobs. 2. Submit a copy of all

contracts, sub-contracts, permits and certifications of work

performed. 3. Submit proof of payment such as ALL cancelled

checks made as payment for the project. 4. A copy of the PW3

(cost affidavit) that the architect certified to DOB. 5. Did

any of the prior [sic] tenant re-occupy their apartment after

the work was completed." (Capitalization original). The same

"NOTE", as quoted above, was included in the October 30, 2019

notice.

12. On November 22, 2019 Landlord submitted a response to

the October 30, 2019 notice.

**b.** **Rent Administrator's order.**

13.  By order issued August 5, 2020 the Rent Administrator denied Landlord's substantial rehabilitation application.  The Rent Administrator determined that Landlord must clearly demonstrate that the criteria set forth in OB 95-2 have been met.  The Rent Administrator found that Landlord failed to show that the building was in substandard or seriously deteriorated condition or that the building was at least 80 percent vacant when the renovation commenced; and failed to show that at least 75 percent of the building-wide and individual apartment systems had been completely replaced, and failed to show that the renovated building systems comply with all applicable laws, rules, and regulations.

14.  The Rent Administrator also found that the architectural plans submitted to DHCR by Landlord did not show any form of change to the building's structure; that there was no new certificate of occupancy submitted to legitimize the additional floor that the application claimed had been constructed above the pre-existing floors; and that the affidavit of Landlord's architect, Victor Fernandes, did not confirm any structural changes to the building.

c. **Landlord's Petition for Administrative Review.**

15.   Landlord timely filed a petition for administrative review ("PAR") to challenge the Rent Administrator's order. Landlord's PAR alleged that the evidence submitted demonstrates that Landlord substantially rehabilitated the building pursuant to OB 95-2 and RSC 2520.11(e); and that DHCR should have granted Landlord's substantial rehabilitation application; that DHCR arbitrarily and capriciously determined that Landlord's claims were unsubstantiated; that DHCR failed to properly consider and weigh the evidence presented to it; that Landlord accidentally stated in its affidavit and in the application rider that a new floor was added; that a new floor was not added and therefore no new certificate of occupancy was required by DOB; that there were no structural changes to the building; that the substantial rehabilitation consisted of an Alteration Type 2, meaning that there was not a change in ingress/egress of the building; that DHCR improperly determined that Landlord did not complete a substantial rehabilitation; that DHCR improperly determined that the building is not exempt from rent regulation; and that DHCR should reverse the Rent Administrator's order.

d. **DHCR's Final Order under review herein.**

16.   DHCR's Final Order denied Landlord's PAR and affirmed the Rent Administrator's order.  The Final Order found, that as

a threshold matter, there is no presumption that the building was in substandard or seriously deteriorated condition as Landlord failed to prove that the building was at least 80 percent vacant of residential tenants when the renovation commenced; and failed to provide adequate evidence to prove that a vacancy rate of 80 percent had been achieved by lawful means without harassment. Landlord, moreover, failed to meet its burden to prove that certain tenants "had just moved out by the end of their lease."

17.  DHCR's Final Order rejected Landlord's contention that the Rent Administrator failed to properly consider and weigh the evidence presented to it.  The Final Order noted the stark inconsistency in Landlord's application, in that the managing agent had sworn in the application that an additional floor had been added to the building, but then on PAR Landlord requested that the Commissioner find that these statements were made in error and were inadvertently affirmed.  However, DHCR's Final Order found that the Commissioner must base his decision on the evidence presented to the Rent Administrator, and given Landlord's assertions that an additional floor was added to the building, the Rent Administrator was obliged to carefully review and compare Landlord's substantial rehabilitation application with the DOB application and DOB job files to confirm the

additional floor was added legally.  Having found no evidence of an additional floor in the DOB files, the Rent Administrator's determination was correct when issued.

18.  Additionally, the Final Order found that DOB requires electrical permits and electrical applications for the scope of the work to which Mr. Fernandes attested.  The Final Order found that the Rent Administrator correctly determined that Landlord failed to comply with "all applicable building codes and requirements" and therefore there cannot be a finding of substantial rehabilitation.  Given that there are no DOB electrical applications, permits or inspections which were required before the building's electrical systems could be legally installed and/or replaced, the Rent Administrator correctly denied Landlord's application.  The Final Order found that the absence of government issued work permits are evidence that Landlord did not legally substantially rehabilitate the building pursuant to RSC 2520.11(e) and OB 95-2.

19.  DHCR's Final Order further found that the construction invoices and cancelled checks are insufficient to prove substantial rehabilitation.  The Final Order explained that construction records alone cannot prove that the work resulted in at least 75 percent of the building-wide and apartment systems being replaced and that the new building systems comply

with all applicable building codes and requirements. Moreover, the Final Order found that Landlord failed to provide DHCR with a "full blown" copy of all DOB approved architectural plans, as requested by DHCR; and Landlord answered "No" to each of the following questions in DOB Job file no. 340339280: "Performing work in 50% or more of the area of the building"? and "Demolishing 50% or more of the area of the building"?

20. This CPLR Article 78 proceeding ensued.

**DHCR'S FINAL ORDER, DETERMINING THAT LANDLORD FAILED TO PROVE A SUBSTANTIAL REHABILITATION OF THE BUILDING, AS DEFINED IN RSC 2520.11(e) AND OB 95-2, IS SUPPORTED BY A RATIONAL BASIS IN THE RECORD AND THE LAW AND IS FULLY ENTITLED TO JUDICIAL AFFIRMANCE.**

**A. Deregulation is precluded because Landlord failed to meet its burden to prove that at least 80 percent of the building's apartments were vacant when the rehabilitation was commenced.**

21. The Emergency Tenant Protection Act of 1974 ("ETPA") [see 65 McK. Unconsol. Laws, section 8625(a)(5)] provides that "housing accommodations and buildings completed or buildings substantially rehabilitated as family units on or after January first, nineteen hundred seventy-four" are not subject to rent stabilization.

22. RSC 2520.11(e) establishes criteria for determining whether a building has been substantially rehabilitated within

the meaning of the statute. Essentially, a specified percentage, not to exceed 75 percent of listed building-wide and individual apartment systems must have been replaced [RSC 2520.11(e)(1)]; and the rehabilitation must have been commenced in a building that was in a substandard or seriously deteriorated condition.

23. A finding that a building was in a substandard or seriously deteriorated condition prior to the rehabilitation is a prerequisite to relief under RSC 2520.11(e) and OB 95-2. In Pavia v. New York State Division of Housing and Community Renewal, 22 A.D.3d 393 (1st Dep't 2005) the Appellate Division held that DHCR did not act arbitrarily or capriciously in declining to presume that a building was substandard or seriously deteriorated when the landlord did not show that the building was at least 80 percent vacant of residential tenants when the renovation began.

24. RSC 2520.11(e)(3) provides that:

(3) the rehabilitation must have been commenced in a building that was in a substandard or seriously deteriorated condition. The extent to which the building was vacant of residential tenants when the rehabilitation was commenced shall constitute evidence of whether the building was in fact in such condition. Where the rehabilitation was commenced in a building in which at least 80% of the housing accommodations were vacant of residential tenants, there shall be a presumption that the building was substandard or seriously deteriorated at that time. . . .
(Emphasis added)

25. Landlord failed to qualify for the presumption that the building was in substandard or seriously deteriorated condition when Landlord failed to prove that this six unit building was 80 percent vacant of residential tenants at the time the rehabilitation commenced.

26. The record shows that Landlord produced buy-out or surrender agreements as to not more than four (4) apartments:[3] 2L, 2R, 1R, and 1L. Four is two-thirds of six, or 66.66 percent —- not the requisite 80 percent. Therefore, Landlord had to produce proof as to vacancies legitimately obtained in not less than **five** apartments. Landlord failed to produce information in excess of four vacancies, and therefore cannot qualify for the presumption that the building was in substandard or seriously deteriorated condition -— an essential prerequisite to finding the building to be exempt from rent stabilization based on a substantial rehabilitation.

27. Landlord produced no information as to alleged vacancies in apartments 3L and 3R. Landlord stated only that they simply moved out. Landlord did provide copies of the

---

[3] DHCR's Final Order referred to only one of the four buy-out agreements submitted — that of apartment 2L, which stated the latest proposed vacancy date of the four agreements. However, this does not prejudice Landlord because agreements as to four apartments equals only 66.66 percent of the six apartments in the building —- far less than the threshold 80 percent vacancy rate required to establish a presumption that the building was in substandard or seriously deteriorated condition. Whether one, or four buyout agreements, the result is the same: Landlord failed to produce any evidence of vacancies beyond the four "buy-outs" that could possibly raise the vacancy rate to the 80 percent regulatory requirement.

leases for 3L and 3R, nor the dates upon which these tenants allegedly vacated.

28. DHCR records reveal that Landlord did not acquire the building with apartments 3L and 3R vacant. Landlord stated in its application that it took title to the building on April 23, 2010. DHCR's rent registration database shows that tenants were registered as occupying apartments 3L and 3R in 2010, 2011, and 2012. However, after 2012 DHCR's computer registration database does not reveal that any further registration statements had been filed by Landlord.

29. In Landlord's submission dated October 2, 2019 Landlord characterized the vacancies, other than the buy-out tenant's: "the rest of the tenants had just moved out by the end of their lease." Landlord did not provide copies of those leases, nor did Landlord provide the dates upon which those tenants are alleged to have vacated, nor did Landlord register those apartments after 2012.[4] Therefore, Landlord failed to produce any evidence to support its claim that vacancies occurred in 3L and 3R prior to commencing the rehabilitation. DHCR's Final Order reasonably found that, "Petitioner did not

---

[4] Landlord should not be heard to argue that it stopped registering the apartments because the tenants allegedly moved out. The buy-out agreements show that one or more of the buy-out tenants was in occupancy as late as the end of 2015. However, no occupancies were registered after 2012 —- especially not the tenants of 3L and 3R for which Landlord did not produce surrender agreements.

provide any additional evidence to support these contentions failed to meet its burden of proving that the alleged vacancies were procured by lawful means without harassment.  As such, there is no presumption that the building was in substandard or seriously deteriorated condition."

30.  Although Landlord submitted photographs of the building prior to the renovation work, Landlord's application made no claim that the building was in substandard or seriously deteriorated condition.  Landlord relied exclusively upon the regulatory presumption of substandard or deteriorated condition based upon the building being at least 80 percent vacant when the rehabilitation commenced.  However, Landlord failed to establish the requisite 80 percent vacancy rate.  Landlord's CPLR Article 78 petition relies exclusively upon the vacancy presumption in order to establish the essential prerequisite of substandard or deteriorated condition.

31.  A Petitioner in a CPLR Article 78 proceeding may not introduce new arguments nor new evidence for the first time upon judicial review.  "Judicial review of administrative determinations is confined to the facts and record adduced before the agency." Matter of Yarbrough v. Franco, 95 N.Y.2d 342 (2000j, quoting, Matter of Fanelli v, New York City Conciliation

and Appeals Board, 90 A.D.2d 756 (1st Dep't 1982), aff'd 58 N.Y.2d 952 (1983).

32.   This court should not consider Exhibit "P" (NYSCEF item no. 18) annexed to the CPLR Article 78 petition that has been submitted for the first time upon judicial review.  Exhibit "P" is purported to be copies of checks paid to three of the four former tenants who accepted buy-out agreements.  The Rent Administrator and Commissioner never had an opportunity to consider and review these checks.  Even if the court were to consider these checks, it does not help Landlord's case because even if these tenants vacated upon receipt of these funds it still does not establish a vacancy rate of 80 percent in the building.

**B.   Deregulation is precluded because Landlord failed to meet its burden to prove that all building systems comply with all building codes and requirements.**           …

33.   RSC 2520.11(e)(5) provides that:

> (5) in order for there to be a finding of substantial rehabilitation, all building systems must comply with all applicable building codes and requirements, and the owner must submit copies of the building's certificate of occupancy, if such certificate is required by law, before and after the rehabilitation;

(Emphasis added)

34.   DHCR's Final Order, in footnote 1 thereof, cited New York City Administrative Code, section 27-3018, which states, in relevant part that:

[B]efore commencing any electrical work, other than low voltage electrical work, a master electrician business or special electrician shall file with the commissioner an application for a work permit to be issued by the department.  All applications for permits shall be submitted on forms furnished by the department.  Applications shall include all information required by this code, or the rules of the department.  <u>No such work shall be performed until the commissioner has reviewed and approved such application and issued an appropriate permit for such work.</u>

(Emphasis added)

35.  This court should not consider the one-page document attached to Landlord's CPLR Article 78 petition at Exhibit "Q" (NYSCEF item no. 19) because it has been submitted for the first time upon a judicial review.  <u>Yarbough</u>, <u>supra</u>; <u>Fanelli</u>, <u>supra</u>. See paragraph "31," <u>supra</u>.

36.  Even if this court were to consider the untimely-produced Exhibit "Q" it does not aid Landlord's case. Landlord's CPLR Article 78 petition makes no claim that this document was submitted in the administrative proceeding. Landlord's CPLR Article 78 petition does not characterize the document as a permit, but rather, as an "Electrical Application".  See Landlord's petition at paragraph "56." Landlord does not dispute that this document was not submitted to DHCR with Landlord's substantial rehabilitation application, perhaps because it is not a permit.  Landlord has not produced any document that refers to itself as a work permit for

electrical wiring work.  Even Landlord does not refer to Exhibit "Q" as a permit.

37.  Landlord may not shift to DHCR the burden to rummage through DOB's database looking for documents that Landlord failed to submit to DHCR.  Unavailing, is Landlord's reliance upon ZB Prospect Realty LLC v. Deneice France, Index No. 56349/2019, Civ. Ct. N.Y. Co., dated September 14, 2020 (Stoller, J.H.C.) [a case where where DHCR was not a party]. Landlord concedes, in paragraph "57" of the CPLR Article 78 petition, that Civil Court in ZB Prospect did not conduct its own investigation into DOB filings in that case, and then Landlord employs faulty reasoning to conclude that therefore DHCR must perform Landlord's job to search DOB for evidence that may aid Landlord's application.

38.  "Regarding fact-based inquiries, an administrative agency may determine the type of documentation necessary or appropriate." Matter of Pena v. Division of Housing and Community Renewal, 2020 N.Y. Misc. LEXIS 2687 (Sup. Ct. Kings Co., King, J.) citing Matter of Rodriguez v. County of Nassau, 80 A.D.3d 702, 702 (2nd Dep't 2011).

39.  In Pena this court held that in order for there to be a finding of substantial rehabilitation, all building systems must comply with all applicable building codes and requirements.

Landlord, in the instant case, misinterprets the law when it states, in paragraph "55" of Landlord's CPLR Article 78 petition, that electrical wiring is only one of 17 systems in the building and not a reason to deny the entire application. The court is respectfully referred to the language of RSC 2520.11(e)(5), quoted above at paragraph "33," that expressly makes a finding of substantial rehabilitation contingent on all building systems being in compliance with all applicable codes. Landlord's CPLR Article 78 petition also does not dispute the Final Order's reliance upon Administrative Code section 27-3018, quoted above at paragraph "34," which states that a permit approving an electrical work application must be approved before such work can be performed.

40. The Appellate Division, Second Department, earlier this year held, in Matter of Sha Realty v. New York State Division of Housing and Community Renewal, __ A.D.3d __, 2021 N.Y. Slip Op 02301, that a determination by DHCR concerning claimed improvements "necessarily entails the agency's expertise in evaluating factual data and is entitled to deference if it is not irrational or unreasonable," citing, Matter of West Vil. Assoc. v. Division of a housing and Community Renewal, 277 A.D.2d 111, 112 (1st Dep't 2000). The Appellate Division, Second Department, in Sha Realty held that DHCR's determination

that the petitioner failed to establish its claimed improvements with adequate documentation had a rational basis and was not arbitrary and capricious.

41. In the instant case, Landlord's failure to prove that the building was 80 percent vacant before renovation work commenced; and Landlord's failure to produce electrical wiring permits, each preclude a finding of substantial rehabilitation pursuant to RSC 2520.11(e)(3) and (5); and Landlord's false claim in its application that it added an additional floor level to the building, and Landlord's claim in the DOB file that it performed work in less than 50 percent of the area of the building, and that it did not demolish 50 percent or more of the area of the building, each call into question the scope of the renovation work performed.

42. The test upon judicial review of a final order issued by an administrative agency is whether the order is supported by a rational basis in the record and the law. If a rational basis exists for its determination, the decision of the administrative body must be sustained. Pell v. Board of Education, 34 N.Y.2d 222, 230 (1974); Matter of a Jamaica Estates, LLC v. New York State Division of Housing and a Community Renewal, 78 A.D.3d 1053, 1054 (2nd Dep't 2010). The court may not substitute its judgment for that of DHCR so long as the agency's decision is

rationally based in the record. Matter of 85 E. Parkway Corp. v. New York State Division of Housing and a Community Renewal, 297 A.D.2d 675, 676 (2nd Dep't 2002).

WHEREFORE, respondent DHCR prays that the CPLR Article 78 petition be in all respects dismissed, and DHCR's Final Order be affirmed in its entirety, with costs.

Dated: New York, New York
       April 23, 2021

By:__/s/ _Patrice Huss_
        Patrice Huss

## VERIFICATION

Patrice Huss, an attorney duly admitted to practice law before the courts of the State of New York, hereby states the following to be true pursuant to CPLR § 2106:

1. I am an attorney in the office of Mark F. Palomino counsel to respondent New York State Division of Housing and Community Renewal ("DHCR"). I have read the foregoing answer and know the contents thereof. It is true my knowledge except as to matters therein stated to be alleged upon information and belief, as to those matters, I believe them to be true.

2. The reason this verification is being made by me is that DHCR is a government agency and I am authorized to make this verification.

Dated: New York, New York
        April 22, 2014

___/s/ *Patrice Huss*___
Patrice Huss

STATE OF NEW YORK
DIVISION OF HOUSING AND COMMUNITY RENEWAL
OFFICE OF RENT ADMINISTRATION
GERTZ PLAZA
92-31 UNION HALL STREET
JAMAICA, NEW YORK 11433

------------------------------------x
                                    :
IN THE MATTER OF THE ADMINISTRATIVE :
APPEAL OF                           : ADMINISTRATIVE REVIEW
                                    : DOCKET NO.: TD210009RK
                                    : RECONSIDERATION OF TC210002RT
                                    :
  NNENKO AKPAN                      : RENT ADMINISTRATOR'S
                                    : DOCKET NO.: SF210002UC
                                    :
            PETITIONER              : OWNER: ADNAN K. NASSER
                                    :
------------------------------------x

ORDER AND OPINION DENYING PETITION FOR ADMINISTRATIVE REVIEW
AFTER RECONSIDERATION PURSUANT TO REOPENING

The above-named petitioner-tenant filed a Petition for Administrative Review (PAR) against an Order issued by a Rent Administrator on January 18, 2005 (Docket No. SF210002UC), concerning the housing accommodations known as 206 Hoyt Street, Brooklyn, New York, various apartments, wherein the Rent Administrator determined that the owner had established the threshold requirements to support a finding of regulatory exemption from Rent Stabilization in accordance with Rent Stabilization Code (RSC) Section 2520.11(e) and DHCR Operational Bulletin 95-2 (OB95-2).

The issue in this appeal is whether the subject building had been substantially rehabilitated within the meaning of the RSC and therefore exempt from rent regulation.

The owner commenced this proceeding on June 2, 2004 by filing an application to determine whether the subject building was exempt from Rent Stabilization by virtue of a substantial rehabilitation begun in 1999 and completed in 2000. In his application, the owner alleged that the requisite conditions necessary to establish an exemption from rent regulation in accordance with the provisions of RSC Section 2520.11(e) and OB95-2 had been met. Only the tenant in apartment 5 of the subject premises, Nnenko Akpan, filed an affidavit in opposition to the owner's application.

The tenant's affidavit acknowledged that the current owner purchased the subject building in 1999 and that she had commenced occupancy of her apartment in May 2001. The tenant alleged that

it wasn't until November 2003, after the owner commenced a Non-Payment of Rent proceeding against her in the Civil Court of the City of New York, County of Kings, Housing Part (Index No. 102964/03), that she suspected that the subject building might be rent regulated. In settlement of the Housing Court proceeding, the parties entered into a "So Ordered" written Stipulation under which the owner was awarded possession and back rent of $10,400.00. The agreement afforded the tenant with an opportunity to vacate the settlement if she secured an Order from the DHCR affirming that the subject building was rent regulated.

In the proceedings below, the tenant provided the Rent Administrator with a copy of a DHCR Order issued on April 15, 2004 (Docket No. RL220012AD) which found that the reduction of the number of units in the subject building to less than six did not result in its deregulation. The Order, however, was issued "without prejudice to the owner's filing an Application to Determine Whether the subject building is Exempt from the Rent Stabilization Code based upon substantial rehabilitation on or after January 1, 1974 (DHCR Form RS-3)." (Emphasis Added). The tenant acknowledged that prior to her occupancy of the subject apartment, there was a period of renovation which resulted in a decrease from 8 to 5 of the number of family living units within the subject building. There was also an increase in the commercial space on the ground floor. The tenant argued that the owner's objective was to reduce the number of housing units to "circumvent the Rent Stabilization Law."

The tenant challenged the sufficiency of evidence introduced by the owner in support of his application for regulatory exemption before the Rent Administrator and again in this instant appeal. She noted that the owner waited over four years following the completion of renovations before filing an application for exemption. She further argued that the subject building was not in a "substandard or uninhabitable condition" prior to the renovation and therefore the owner had failed to establish a prerequisite for a finding of substantial rehabilitation.

The tenant also disputed the statements found in the affidavit of the owner's architect filed in support of the owner's application. The tenant submitted that the affidavit lacked substance and that the extent of the renovations described therein fell short of the statutory requirements for regulatory exemption. The tenant specifically challenged the extent of work performed on the building's ceilings, walls and floors. She argued that her apartment door was not new, her floors were not new and that there were cracks in the walls of her living room, kitchen and bedroom. To support her contentions, the tenant provided photographs taken within her apartment along with photographs of the subject building's exterior and common areas.

2

On appeal, the tenant reasserts alleged discrepancies in the affidavit of the owner's engineer, Ainsley Ferraro, and challenges the owner's alleged unfamiliarity with the RSC. The tenant cites court cases argued in her October 2004 response to the underlying application (Matter of Russell St. Assn. v. Scott (N.Y.L.J. 8/25/93), Matter of Eastern Pork Products (N.Y.L.J. 11/19/92), and Pape v. Doar) (553 N.Y.S.2d 344, App.Div. 1st Dept., 4/5/90) for the proposition that certain alleged substantial rehabilitations fall short of regulatory exemption. She submits that most of the work "was done by the landlord's relatives" and that there were no "workmen's schedules or timesheets" submitted. The tenant further argues that many of the payment receipts and contractors' proposals relied upon by the owner in support of his application post dated the 1999-2000 period of renovation. Based on these discrepancies, the tenant maintains that the Rent Administrator erred by granting the owner a regulatory exemption for the subject building.

The Commissioner has reviewed all of the evidence in the record and has carefully considered that portion of the record relative to the issues raised in the petition and is of the opinion that the petition should be denied.

RSC Section 2520.11(e) exempts from regulation housing accommodations in buildings completed or buildings substantially rehabilitated as family units on or after January 1, 1974. OB95-2 sets forth the circumstances under which the Agency will find that a building has been substantially rehabilitated within the meaning of RSC Section 2520.11(e). The relevant criteria require that at least 75% of the building-wide and apartment systems listed therein must have been completely replaced with new systems. All ceilings, wall and floor surfaces in common areas must have been replaced; and ceiling, wall and floor surfaces in apartments, if not replaced, must have been made as new. Additionally, the rehabilitation must have been commenced in a building that was in substandard or seriously deteriorated condition; all building systems must comply with all applicable building codes and requirements; the owner must submit copies of the building's certificate of occupancy before and after the rehabilitation; and the rehabilitation must be consistent with the goal of encouraging the creation of new or rehabilitated housing.

Based on the totality of the circumstances, the record supports the Rent Administrator's finding that the requirements for exemption from rent regulation based upon a substantial rehabilitation have been met.

OB95-2 provides, in part, that where rehabilitation was commenced in a building that was at least 80% vacant of residential tenants, there is a presumption that the building was substandard or seriously deteriorated at that time. (Emphasis added). The

record shows that at the time the current owner purchased the subject building in 1999, 206 Hoyt Street was a four story structure consisting of a basement, eight residential apartments and one store located on the first level. Only one apartment and the store were occupied at the time he purchased the building and shortly thereafter, both occupants vacated the premises. Accordingly, the Commissioner finds that the owner established the prerequisites giving rise to the presumption that the subject building was serious deteriorated prior to the commencement of the renovation.

OB95-2 also requires that at least 75% of 17 building-wide or apartment systems must have been completely replaced with new systems or, in the case of apartment ceiling, wall and floor surfaces, makes like new, unless the owner can demonstrate that a particular system did not require replacement. In the instant case, the Commissioner finds that of the 17 building-wide or apartment systems listed therein, only 15 systems within the subject building are applicable. There is no evidence in the record that the subject building had either an elevator or incinerator. To meet the 75% replacement requirement, the owner had the burden of establishing that at least 12 systems in the subject building were either totally replaced or made like new.

After a review of only those costs and relevant contracts and proposals falling within the period of renovation as provided by the owner (1999-2000), the Commissioner finds that the following 12 systems were either replaced or otherwise adequately renovated to support a finding of regulatory exemption based upon a substantial rehabilitation:

**Plumbing**: Based upon the affidavit of the owner's architect/engineer, Ainsley Ferraro (Ferraro), dated March 4, 2004, upon his personal inspection of the subject building on May 7, 2003[1] and the statement dated August 13, 2004 of the owner's representative, Lawrence Hilonowitz (Hilonowitz), Executive Director of the Kings County Tenant's Coalition, in support of the owner's application, the Commissioner finds that new plumbing was installed building-wide. Evidence in the record in support of this finding include photographs taken of the subject building's basement showing a "new hot water heater/tank & related plumbing," the "installation of new pipes for drain lines, sewer,

---

[1] It is noted that on November 18, 2004, Mr. Ferraro revised his affidavit in order to correct a typographical error by substituting May 7, 2003 for May 7, 2004 as the date on which he inspected the subject building. It is further noted that this affidavit makes mention of a reduction of the number of residential units from 6 to 5. The tenant seizes on this discrepancy to attack the veracity of the affidavit. The Commissioner, however, will treat this as an inconsequential inconsistency since it is not disputed that the renovation reduced the number of residential units from 8 to 5.

etc.", new plumbing fixtures in kitchens and bathrooms and miscellaneous billings reflecting dates corresponding to the period of renovation, including, but not limited to such plumbing suppliers as D.T. Supply Corp. (D.T. Supply Corp.), Brooklyn, N.Y. and the Home Depot (Home Depot), Brooklyn, N.Y.,.

**Heating:** Based upon the afore stated affidavit of Ferraro and the statement of the owner's representative, Hilonowitz, in support of the owner's application, the Commissioner finds an all new heating system (except for the functional radiators that were scraped and repainted with heat resistant paint) was installed building-wide. Evidence in support includes a computer printout of the owner's application filed with the New York City Department of Buildings (DOB) on November 22, 1999 relative to the replacement of the boiler in the cellar at 206 Hoyt Street. In addition, the record includes a photograph of the new boiler in the building's boiler room.

**Gas Supply:** Based upon the afore stated affidavit of Ferraro and the statement of the owner's representative, Hilonowitz, in support of the owner's application, the Commissioner finds that a new gas supply system was installed. Absent any evidence to the contrary, together with no specific challenge by the tenant relative to the installation of a new gas supply system, the Commissioner accepts the owner's representation that the gas supply system was replaced.

**Electricity:** Based upon the afore stated affidavit of Ferraro and the statement of the owner's representative, Hilonowitz, in support of the owner's application, the Commissioner finds that the electrical work and wiring were replaced building-wide. Evidence in support includes a photograph of the basement of the subject building showing the "installation of new electric meters & related work done in re-wiring the entire building, breaker boxes, etc." Miscellaneous billings and documents, reflecting dates corresponding to the period of renovation, include, but are not limited to, D.T. Supply Corp. for electric feed, Home Depot for electrical supplies, a Con Edison "Service Layout" directive dated September 13, 1999 with instructions to the owner's electrician to remove certain wires and a bonding screw from the meter equipment and copies of checks dated July 23, 1999 and December 13, 1999 payable to Ramdeem Electrical for "electrical permit work" and "206 Hoyt St. Electrical sign off," respectively.

**Intercom:** Based upon the afore stated affidavit of Ferraro and the statement of the owner's representative, Hilonowitz, in support of the owner's application, the Commissioner finds that a new intercom system was added. Prior thereto, only a "non-functioning" "bell/buzzer" system existed. Evidence includes a photograph of the front entranceway of 206 Hoyt Street showing an intercom system in place. The tenant's only issue on appeal

regarding this item is that her "intercom is defective." Absent any evidence to the contrary, together with no specific challenge by the tenant relative to the installation of a new intercom system, the Commissioner accepts the owner's representation that a new intercom system was installed.

**Roof:** Based upon the afore stated affidavit of Ferraro and the statement of the owner's representative, Hilonowitz, in support of the owner's application, the Commissioner finds that the roof of the subject building was "fully re-built," resurfaced and sealed throughout. Evidence in support includes photographs of the roof of the subject building showing resurfaced roofing paper and silverized sealant. In addition, the owner provides miscellaneous billings reflecting extensive work on the roof, including but not limited to a contract and statement dated May 17, 1999 from Advanced Contracting, Brooklyn, N.Y. (Advanced Contracting) and Neighborhood Home Centers, Brooklyn, N.Y. dated July 19, 1999.

**Fire Escapes:** Based upon the afore stated affidavit of Ferraro and the statement of the owner's representative, Hilonowitz, in support of the owner's application, the Commissioner finds that the fire escapes were brought up to Code and were painted. Evidence in support includes photographs of the revitalized fire escapes and special security gates installed on the fire escape windows. Absent any evidence to the contrary, together with no specific challenge by the tenant relative to the fire escapes, the Commissioner accepts the owner's representation that the fire escapes were brought up to Code, were repainted and that security gates were installed for windows on the fire escape side of the subject building.

**Interior Stairways:** Based upon the afore stated affidavit of Ferraro and the statement of the owner's representative, Hilonowitz, in support of the owner's application, the Commissioner finds that "the stairwells throughout were brought up to Code and the risers and treads were carpeted." Evidence in support includes photographs of before and after views of interior stairwells showing dramatic changes after renovation and a statement dated May 23, 1999 from Advanced Contracting. Item 6 thereof provides for the patching, sanding and painting of stairways and the replacement of steps. Also provided is a receipt from A-1 Carpet, Elmhurst, N.Y., dated August 24, 1999 for stairway carpeting. Absent any evidence to the contrary, together with no specific challenge by the tenant relative to the renovation of interior stairwells, the Commissioner accepts the owner's representation that the stairwells were brought up to Code and were carpeted.

**Kitchens:** Based upon the afore stated affidavit of Ferraro and the statement of the owner's representative, Hilonowitz, in support of the owner's application, the Commissioner finds that

Docket No. TD210009RK

all kitchens were "totally renovated," including new kitchen cabinets, stainless steel sinks, tiled wall areas and new appliances. Evidence in support includes photographs of before and after conditions representative of all kitchens showing dramatic improvements after renovation. In addition, the owner provides miscellaneous billings reflecting extensive kitchen revitalization, including but not limited to a contract and statement dated May 23, 1999 from Advanced Contracting and the purchase of kitchen appliances on September 6, 1999 from Circuit City Stores, Inc., store 3664, Brooklyn, N.Y. Regarding the kitchen, the tenant raised two issues, to wit, her refrigerator "ceased functioning" on September 27, 2004 but was replaced by the owner and there were some cracks in the kitchen walls that were patched up by the landlord's maintenance man. Absent any evidence to the contrary, together with no other specific challenges by the tenant relative to kitchen renovations, the Commissioner accepts the owner's representation that all kitchens were totally renovated.

**Bathrooms**: Based upon the afore stated affidavit of Ferraro and the statement of the owner's representative, Hilonowitz, in support of the owner's application, the Commissioner finds that all bathrooms were "totally renovated." Evidence in support includes photographs of before and after conditions representative of all bathrooms showing dramatic improvements after renovation including the installation of new porcelain tiles in bathtub areas and stall showers, retiled bathroom floors and the installation of new toilets/water tanks. In addition, the owner provided miscellaneous billings reflecting extensive bathroom revitalization, including, but not limited to a contract and statement dated May 23, 1999 from Advanced Contracting and a purchase receipt for bathroom ceramics and grout on June 20, 1999 from Weisman Discount Home Centers, Brooklyn, N.Y. Absent any evidence to the contrary, together with no specific challenge by the tenant relative to bathroom renovations, the Commissioner accepts the owner's representation that all bathrooms were totally renovated.

**Floors**: Based upon the afore stated affidavit of Ferraro and the statement of the owner's representative, Hilonowitz, in support of the owner's application, the Commissioner finds that all floor were sanded, re-finished and where necessary oak slats were replaced. Evidence in support includes photographs of before and after conditions representative of the condition of the wood flooring showing a dramatic improvement after renovation. In addition, the owner provided miscellaneous billings reflecting extensive floor revitalization, including, but not limited to a contract and statement dated May 23, 1999 from Advanced Contracting and an equipment rental receipt for sander and edger dated September 23, 1999 from Acme Tool & Equipment Rental, Brooklyn, N.Y. The tenant asserts that the flooring in her apartment is not new and submits that the floors "are much more

7

than 5 years old." In addition, she submits that there are "indentations just inside the front door" and "steam damage" near the radiators. The tenant provides photographs in support thereof, but the Commissioner finds that unlike the owner's photographs, the tenant's photographs are difficult to interpret. Moreover, the tenant is unable to support her allegation that the floors "are much more than 5 years old." Absent any evidence to the contrary, together with no other specific challenges by the tenant relative to floor renovations, the Commissioner accepts the owner's representation that floors were renovated building-wide.

**Pointing or exterior surface repair as needed:** : Based upon the afore stated affidavit of Ferraro and the statement of the owner's representative, Hilonowitz, in support of the owner's application, the Commissioner finds that during the period of renovation, exterior improvements included pointing, brick work and water proofing of all side and rear walls of the building. Evidence in support includes photographs of the building's cornice, rear and side walls and pointing on the front side of the building. In addition, the owner provided miscellaneous billings reflecting extensive stucco and pointing work, including, but not limited to a contract and statement dated May 17, 1999 from Advanced Contracting and a statement dated November 9, 1999 from Popular Ideal Waterproofing, Inc., Brooklyn, N.Y. Absent any evidence to the contrary, together with no specific challenge by the tenant relative to the pointing and exterior repair of the subject building, the Commissioner accepts the owner's representation that the renovations to the subject building during the period of renovation included exterior resurfacing and pointing.

THEREFORE, in accordance with the provisions of the Rent Stabilization Law and Code, it is

ORDERED, that this Petition for Administrative Review be, and the same hereby is, denied, and the Rent Administrator's Order of January 18, 2005 be, and the same hereby is, affirmed, superseding the Rent Administrator's Order of April 15, 2004.

ISSUED: MAY 1 9 2005

PAUL A. ROLDAN
Deputy Commissioner

STATE OF NEW YORK
DIVISION OF HOUSING AND COMMUNITY RENEWAL
OFFICE OF RENT ADMINISTRATION
GERTZ PLAZA
92-31 UNION HALL STREET
JAMAICA, NEW YORK 11433

```
-------------------------------------x
                                     :
IN THE MATTER OF THE ADMINISTRATIVE  :
APPEAL OF                            :  ADMINISTRATIVE REVIEW
                                     :  DOCKET NO.: VG210054RO
                                     :
                                     :  RENT ADMINISTRATOR'S
                                     :  DOCKET NO.: VB210001UC
GARO CHOLAKIAN & SIRANUSH CHOLAKIAN  :
                                     :  VARIOUS TENANTS: 6 UNITS -
                                     :  66 BOX STREET, BKLYN, NY.
                                     :
              PETITIONERS            :
                                     :
-------------------------------------x
```

## ORDER AND OPINION GRANTING PETITION FOR ADMINISTRATIVE REVIEW

The above-named petitioner-owners filed a Petition for Administrative Review (PAR) against an Order issued by a Rent Administrator on July 19, 2007 concerning the housing accommodations known as 66 Box Street, Brooklyn, New York; various apartments, wherein the Rent Administrator determined that the subject building failed to qualify for regulatory exemption based upon a substantial rehabilitation in accordance with the criteria set out in Rent Stabilization Code (RSC) Section 2520.11(e) and DHCR's Operational Bulletin 95-2 (OB95-2).

The threshold issue involved in this appeal is whether the subject building has been substantially rehabilitated within the meaning of the RSC.

RSC Section 2520.11(e) exempts from regulation housing accommodations in buildings completed or substantially rehabilitated as family units on or after January 1, 1974. OB95-2 sets forth the circumstances under which the Agency will find that a building has been substantially rehabilitated within the meaning of RSC Section 2520.11(e). The relevant criteria require that at least 75% of the building-wide and apartment systems listed therein must have been completely replaced with new systems. All ceilings, wall and floor surfaces in common areas must have been replaced; and ceiling, wall and floor surfaces in apartments, if not replaced, must have been made as new. Additionally, the rehabilitation must have been commenced in a building that was in a substandard or seriously deteriorated condition; all building systems must comply with all applicable

building codes and requirements; the owner must submit copies of the building's certificates of occupancy before and after the rehabilitation; and the rehabilitation must be consistent with the goal of encouraging the creation of new or rehabilitated housing.

In the Order under appeal herein, the Rent Administrator determined that the first criterion for a determination of regulatory exemption based upon a substantial rehabilitation to wit: "at least 75% of the building-wide and apartment systems had been replaced with new systems, and common areas, if not replaced must have been made as new as determined by DHCR" had been met. The Rent Administrator however, based upon DHCR's own records and a report by a professional home inspection service commissioned by the petitioner-owners prior to purchasing the subject building in August 2004, concluded that the subject building was not "so deteriorated" as to meet the second criterion for a determination of regulatory exemption based upon a substantial rehabilitation to wit: "the rehabilitation was commenced in a building that was in a substandard or seriously deteriorated condition."

On appeal, the petitioner-owners argue that the Rent Administrator erred by relying on internal DHCR rent rolls filed in April 2005 to conclude that the subject building was not at least 80% vacant of residential tenants so as to give rise to the "presumption" that the subject building was in a substandard condition. DHCR records show that in April 2005 the building consisted of three occupied apartments and three vacant apartments making for a 50% vacancy rate, short of the 80% vacancy rate required under the provisions of RSC Section 2520.11(e) and DHCR's Operational Bulletin 95-2 (OB95-1). Moreover, the petitioner-owners submit that the Rent Administrator erred by relying on the Building Analysis Report prepared in August 2004 by Federated Consultant Service, Inc., which failed to "depict a building so deteriorated" as to meet the prerequisite requirements for regulatory exemption based upon a substantial rehabilitation.

In this petition, the petitioner-owners argue that the entire building was vacant and was in a "dilapidated" condition on or before December 2005 and that rehabilitation work had commenced in August 2006, approximately seven months after the building became completely vacant.

The Commissioner has reviewed all of the evidence in the record and has carefully considered that portion of the record relative to the issues raised in the petition and is of the opinion that the petition should be granted.

As part of the underlying application for regulatory exemption based upon a substantial rehabilitation, the petitioner-owners proffered that between October 7, 2004 and December 31, 2005,

2

Docket No. VG210054RO

"the remaining tenants then in possession all vacated the building."

In addition, in an affidavit dated January 25, 2007, Kenny Lee, the architect who had filed construction plans and applications for work permits with the New York City Department of Buildings (DOB), affirmatively stated that at the point when construction started in August 2006, the building was vacant, "was in bad condition" and needed major renovation.

Based upon the totality of the circumstances and the fact that rehabilitation commenced when the subject building was "at least 80% vacant," the Commissioner finds that the criteria for regulatory exemption based upon a substantial rehabilitation have been met and that the subject building is no longer subject to the jurisdiction of this Agency or subject to rent regulation.

THEREFORE, in accordance with the provisions of the Rent Stabilization Law and Code, it is

ORDERED, that this Petition for Administrative Review be, and the same hereby is granted and, the Order of the Rent Administrator be, and the same hereby is, revoked.

ISSUED: JAN 0 9 2008

LESLIE TORRES
Deputy Commissioner

3

#32637

**STATE OF NEW YORK
DIVISION OF HOUSING AND COMMUNITY RENEWAL
OFFICE OF RENT ADMINISTRATION
GERTZ PLAZA
92-31 UNION HALL STREET
JAMAICA, NEW YORK 11433**

------------------------------------------------X

IN THE MATTER OF THE
ADMINISTRATIVE APPEAL OF

219 Troutman LLC

ADMINISTRATIVE REVIEW
DOCKET NO.: LO210030RO

RENT ADMINISTRATOR'S
DOCKET NO.: KR210002RP

------------------------PETITIONER------X

## ORDER AND OPINION DENYING PETITION FOR ADMINISTRATIVE REVIEW

The above-referenced owner filed a timely petition for administrative review (PAR) of an Order issued on November 18, 2020, by a Rent Administrator (RA) concerning 219 Troutman Street, Brooklyn, NY 11237, which Order denied the owner's Application to exempt the premises from rent regulation due to substantial rehabilitation. Said PAR was denied by PAR Order IX210029RO, issued on May 4, 2021. The owner then filed a judicial challenge against Order IX210029RO pursuant to Article 78 of the Civil Practice Law and Rules, which resulted in a Court Stipulation remanding the matter to this Agency for further review and for issuance of a new determination. Upon remand, a new PAR Order was issued under Docket Number KO210007RP on June 3, 2022, which Order remanded the matter to the RA for further processing and for issuance of a new determination. On March 23, 2023, the RA issued a new Order under Docket Number KR210002RP, and said Order denied the owner's Application, finding that the owner has not shown that the subject building was in substandard or seriously deteriorated condition as is required by Rent Stabilization Code (RSC) Section 2520.11(e)(3) for a qualifying substantial rehabilitation; that the owner failed to show that at least 75% of building-wide and individual apartment systems were replaced, also as required for a qualifying substantial rehabilitation; that the scope of work set forth in Department of Buildings (DOB) documentation does not show that 75% of such systems were replaced; that such documentation contradicts the scope of work described in the affidavit of the independent architect; that the subject building

is accordingly not exempt from rent regulation and remains rent regulated; and that the owner must therefore file annual registrations with DHCR and offer regulated leases to all tenants in accordance with the Rent Stabilization Law (RSL) and RSC. The owner then filed a PAR against RA's Order KR210002RP, and the instant Order is the disposition of said PAR.

On PAR, the owner alleges that the RA's determination is not based on the evidence and shows that the owner's allegations and evidence presented on remand and in the Article 78 proceeding have not been considered; that DHCR objectives in cases such as this one is to prevent deregulation of buildings, although it is not DHCR's place to set policy, but rather to follow the law; that DHCR may not "go against a mountain of precedent" upon which the owner relied herein in performing the renovation at issue; that the purpose of the substantial rehabilitation exemption is to encourage recovery of housing stock by giving owners the incentive of deregulation; that DHCR has effectively cut off this avenue of deregulation by enunciating new rules that previously did not exist; that such new rules may possibly be permitted prospectively, but no coherent guidance has been promulgated, there have been no changes to the Code, and there is no basis for retroactive application of these changes; and that DHCR may not discourage substantial rehabilitation, may not go against prior precedent, and cannot enunciate ex post facto rules and apply them to projects completed many years ago.

The owner further alleges that the substantial rehabilitation exemption should not be lightly cast aside based upon manufactured discrepancies in the record when it is established that a vacant building was fully renovated; that DHCR has at no time disputed such renovation; that Eastern Pork Prods. Co v NYSDHCR, 187 AD2d 320 (1st Dept 1992), states that "substantially rehabilitated" is a general term meaning "a true or significant restoration of a former good quality", that the purpose of the exemption is to increase family units which is accomplished by encouraging substantial rehabilitation of commercial or substandard/ deteriorated buildings and allowing owners to recoup expenses free of rent regulation, and that unduly harsh requirements like requiring buildings to be fully vacant defeats the legislative purpose of the exemption as an owner would not be allowed to recoup

costs if one out of a hundred apartments were occupied; and that, contrary to the finding of the RA, the owner submitted copious proof that the building was substandard, including proof of the scope of work when such scope would only be applicable to a substandard building, and including an affidavit from the principal of the owner who personally viewed the building and attested that the building was substandard.

The owner also alleges that the RA incorrectly ruled that, if tenants leave pursuant to a buyout, there can be no presumption that the building is substandard; that this rule is nowhere set forth in the RSC or in Operational Bulletin 95-2 (OB 95-2); that it therefore appears that DHCR has created a new standard that goes against prior precedents; that divergence from precedent is only allowed when appropriately explained, which is not the case herein; that, prior to 2020, substantial rehabilitation applications were routinely granted when tenants were bought out; that DHCR may not change this policy, as only the Legislature can change the law; that DHCR's current position regarding buyouts is contrary to the purpose of permitting exemption to encourage revitalization of housing stock; and that the owner has provided voluminous documentation to show that 75% of required systems were replaced, including affidavits from an independent engineer and from the owner's principal.

Finally, the owner alleges that, contrary to the evidence, the RA found that 75% of required systems were not replaced; that, in fact, the RA only challenged the replacement of one system, namely plumbing; that the RA focused on one sentence in DOB Schedule B for Plumbing, ignoring the totality of the evidence, including approved plans showing that the scope of the work was more than sufficient; that DHCR misreads Schedule B because there were two forms filed with DOB, which, when read together, confirm the qualifying scope of the plumbing work; that the first form establishes the scope of work as sufficient for a substantial rehabilitation while the second form was filed as a follow-up to the first; that DHCR has improperly focused on minutiae when the engineer's and principal's affidavits, along with supporting documentation, clearly show the scope of the work performed; that DOB inspections were conducted, which are only conducted when roughing work has been done and when the work is substantial; that

3

DHCR is tasked with regulating rent laws, not with review of construction or building codes and must therefore defer to DOB on such issues; that DOB has exclusive power over examination, review, and approval of construction and alteration plans filed in NYC; that sufficient work was performed to qualify the work at issue as a substantial rehabilitation, supported by sufficient documentation including sworn statements; and that DHCR may not comb through DOB records in an effort to find manufactured discrepancies in order to deny Applications such as the one at issue.

The Commissioner, after careful review of the record, finds that the PAR must be denied.

The owner does not contest that four of the six units in the building, or two thirds of the apartments in the building, were vacated pursuant to surrender agreements. Accordingly, four of the six units in the subject premises were habitable, and were only vacated because the tenants of those apartments received compensation sufficient to incentivize them to vacate their apartments (the tenants of these four apartments each received between $40,000.00 and $65,000.00 to surrender their apartments in mid to late 2014). Operational Bulletin 95-2 (OB 95-2) establishes a presumption that a building is in substandard or seriously deteriorated condition when the rehabilitation work "was commenced in a building that was at least 80% vacant of residential tenants…." This presumption has long been established and used by DHCR in substantial rehabilitation situations and is reasonably based on the fact that such degree of vacancy usually shows that the apartments in a building are not habitable, that the building is likewise uninhabitable, and that this lack of habitability is due to the deteriorated conditions of the building. This is a reasonable and longstanding presumption and is in no way a contradiction or the creation of any new standard.

In this case, a majority of the apartments in the subject building were in fact habitable prior to the work at issue, as shown by the fact that the vacancies of said apartments were obtained by surrender agreements providing for substantial payments for the vacatur of the tenants of said apartments. These vacancies, therefore, were not the result of the deterioration of

4

the apartments or of the building. That the vacancies of a majority of the apartments in the subject building were due to large payout incentives provided to the tenants pursuant to surrender agreements in fact indicates that the building was habitable at that time and was not in fact seriously deteriorated. The owner's affidavit, which is intended to persuade the Agency to grant the Application herein for the benefit of the owner, is not sufficient to rebut the fact that the building was at least mostly habitable prior to the work at issue, was not substandard or seriously deteriorated, and was not in need of substantial rehabilitation, as explained above. It is noted that, apart from the statement of the owner's principal, the owner has submitted no evidence to support its contention that the premises were in substandard or seriously deteriorated condition prior to the work at issue.

The owner's allegation that the large scope of work done, even if accurate, shows that the building was seriously deteriorated before such work is not persuasive as a building that is not uninhabitable can still be totally gutted and refurbished. It is noted that the purpose of the substantial rehabilitation provisions of the RSC and of OB 95-2 are to encourage rehabilitation of dilapidated and basically uninhabitable housing stock, and not a provision for deregulation of otherwise habitable buildings that are not seriously deteriorated. The RA was therefore correct to find that the owner has failed to show that the work at issue took place in a building that was substandard or seriously deteriorated and that the Application herein must accordingly be denied.

Notwithstanding the fact that the owner failed to meet the threshold requirement of completing work in a seriously deteriorated building and thus failed to establish a substantial rehabilitation, the Commissioner will address the remainder of the contentions in the PAR.

OB 95-2 outlines the criteria an owner must meet to prove substantial rehabilitation:

A. At least 75% of the building wide and apartment systems must have been completely replaced; all ceilings, flooring and wall

surfaces in common areas must have been replaced; and ceiling, wall and floor surfaces in apartments, if not replaced, must have been made as new.

The list of building wide and apartment systems are:

1. Plumbing
2. Heating
3. Gas supply
4. Electrical wiring
5. Intercoms
6. Windows
7. Roof
8. Elevators
9. Incinerators or waste compactors
10. Fire escapes
11. Interior stairways
12. Kitchens
13. Bathrooms
14. Floors
15. Ceilings and wall surfaces
16. Pointing or exterior surface repair as needed
17. All doors and frames

Limited exceptions to the extent of the rehabilitation work may apply where the owner demonstrates that a particular component of the building or system has recently been installed or ungraded so that it is structurally sound and does not require replacement, or that the preservation of a particular component is desirable or required by law due to its aesthetic or historical merit.

In this case, the RA correctly determined that the owner has not shown that the above-outlined requirements of OB 95-2 were satisfied.

The DOB documentation shows that, on the Work Permit Data, the owner stated that it was performing work in less than 50% of the area of the building, and that it was demolishing less than 50% of the area of the building. The intent and the permitting for the work in general, therefore, does not encompass the replacement of 75% of the building-wide and individual apartment

systems and of all ceilings, flooring and wall surfaces in common areas. Further, while the PW3 Cost Affidavit for the project, filed by the owner, states that the total cost of the project was to be $65,000.00, the owner now alleges that $398,572.85 was spent on the project (see below for discrepancies in the proof of such expenditures). While it is not uncommon for a project to cost substantially more than estimated prior to the commencement of the work, on a PW3 Cost Affidavit for example, in this case the estimate and statement on said Affidavit was more than six times less than the alleged actual cost.

A review of the contracts, invoices, and proof of payments submitted by the owner also does not support a finding that at least 75% of required systems were replaced. The record contains a Contract for framing, walls, doors, and for opening areas to build stairways; a Proposal for plumbing; an Invoice for internal demolition; a Proposal for electrical work; Estimates and Invoices for heating and cooling work; Invoices for sanding and finishing flooring; Invoices for six new refrigerators and six new stoves; Invoices for removal of loose roofing where necessary and installation of "a layer of SBS roofing imbedded in a layer of cold adhesive **(at a neighboring building)**, and for installation of a new roof over the main roof plus installation of tube and Yankee gutter (at the subject building); an Invoice for the building and installation of two staircases, one on the first floor and another on the second floor; Invoices for bathroom fixtures and moldings; and documents relating to miscellaneous supplies and services, such as drafting, "general repairs", painting, painting of fire escapes and basement door, and for windows and a door for a storefront **at a different building.**

The owner alleges that there are no elevators at the subject premises and this allegation has not been contested, so this system is not relevant and will not be counted. The owner has also submitted no evidence to show that the incinerators and/or waste compactors were present or replaced, so this system is also not considered. The remaining 15 systems are discussed below:

Despite inconsistencies in the owner's payment records, given that the DOB documentation shows that water and sanitary piping and fixtures were finished and passed inspection, the plumbing

7

system is counted as being replaced.

Heating and cooling Estimates and Invoices submitted by the owner for installation of a heating and cooling system on each of the three floors of the building total $36,500.00, and the owner's summary of payments states that this amount was paid but only $20,000.00 in checks to the relevant contractor were submitted. While the owner has not shown total payment of the cost of the new heating and cooling system, the Commissioner finds that replacement of the heating system may have occurred in this case.

The only mention of work on the gas system is DOB documentation showing that the entire cost of the plumbing work, including plumbing and gas, is $3,000.00 and showing that the gas piping and fixtures were finished and passed inspection. While the owner has not submitted any evidence regarding who did the work on the gas system or regarding proof of payment for such work, the Commissioner finds that the DOB documentation showing that gas piping and fixtures were finished and passed inspection shows that the gas system may have been replaced.

The owner has not submitted any DOB documentation showing that any electrical work at the subject premises was permitted, inspected, or signed off on. The Commissioner therefore finds that the electrical system has not been replaced.

While the owner alleges that intercoms were replaced, aside from statements of the owner and of the owner's engineer, who was not part of the work project at inception, there is no supporting documentation showing that such work was done. Accordingly, this system cannot be found to have been replaced.

Regarding replacing all windows in the building, there is only one Invoice for storefront door and glass totaling $4,200.00. **However such Invoice is for work on a different address than the subject building**. The owner claims payment of $11,900.00 to the company that allegedly did the window work (the only Invoice from this company is the above-referenced Invoice for work in another building), and $7,500.00 in checks were submitted as proof of payment to such company. Under these circumstances, in which the owner has submitted one Invoice involving a different building

8

(and nothing from any entity showing any work on windows at the subject premises), and has submitted insufficient evidence of full payment, it cannot be found that the windows were replaced in the subject premises.

The owner submitted two Invoices from the company that allegedly did the roofing work. One invoice is for $3,900.00 and **is for a different address than the subject building**, while the other is for $3,600.00 for work at the subject building. The owner also submitted three checks to this company totaling $11,000.00, one for $3,400.00, a second for $3,300.00, and the third for $4,300.00. Because the proof of payment does not in any way match the amounts set forth on the submitted Invoices, one of which is for another neighboring building, the owner has failed to show that the roof was replaced as part of the project at issue.

Regarding fire escapes, the owner submitted one Invoice from Sams Painting for $1,100.00, and the work referenced by such Invoice is "paint exterior fire escapes and metal basement door". While the owner submitted three checks to Sams Painting totaling $19,000.00, there is no way to know what other work this company allegedly performed towards the project at issue. While there is a document from Queens Iron Works General Repairs, and it appears that $2,820.00 was paid pursuant to that document (there is a check and the document states that $2,820.00 was put on deposit), said document does not outline any specific work. Accordingly, the owner has not shown that the fire escapes were replaced or had recently been replaced such that they were structurally sound so as to qualify under OB 95-2.

Regarding interior stairways, the owner's summary of payments for "Steps" totals $5,800.00, although the owner only submitted one check for $2,000.00 of the three alleged checks made out to the company that allegedly did the work. The Invoice from such company is for $5,500.00 and shows that $2,000.00 had actually been paid of said $5,500.00. The Contract with Preferred Builders provides for the creation "of [two] new staircase openings". This Contract was for $120,000.00 and the owner submitted checks totaling $100,000.00 to Preferred Builders. Under these circumstances, in which the relevant Invoice and Contract show total replacement of interior stairways, and in which the owner

9

has shown substantial payment on said Invoice and Contract, the Commissioner finds that the interior stairways may have been fully replaced.

Regarding the kitchens, the owner submitted Invoices for six stoves and six refrigerators at a total cost of $6,537.00, and checks submitted as payment to the appliance company total $6,667.00 for these appliances. The owner's summary of costs for kitchen work includes $15,000.00 (for "kitchen") with no company indicated and "construction" as the type of work done; while the owner submits proof of payment of this $15,000.00, the name of the recipient set forth on the check is illegible, and the check does not reference the project. The Proposal for plumbing work from GG Repairs includes new plumbing for six kitchens, is for $38,500.00 and the owner alleges that this sum was paid to GG; however, only $31,500 in checks to GG were submitted, and as stated above, the DOB documentation shows that the owner only expected a total of $3,000.00 to be spent on the plumbing. While the evidence is incomplete, and in some ways inconsistent, given that the owner has submitted Invoices and checks as proof of payment to the appliance company for new refrigerators and stoves and that the amount of the checks is very close to the amount set forth on the Invoices, that the owner has made a payment of $15,000.00 to an entity listed in the owner's summary as a company doing kitchen work, and that DOB documentation shows water and sanitary piping and fixtures were worked on at the premises, the Commissioner finds that the kitchen systems at the premises may in fact have been replaced.

Regarding the bathrooms, the owner submitted Invoices from BMW Plumbing for 11 toilets and 3 bathtubs totaling $4,908.16, and, while the owner's summary of payments for these items totals $6,000.00, there are no checks proving any payment(s) to the company that allegedly supplied these items. The Proposal from GG states that it is for, in part, new plumbing for 11 bathrooms and the total cost for this and other work is $38,500.00; while the owner alleges that this sum was paid to GG, only $31,500 in checks to GG were submitted as stated above, and as also stated above, the DOB documentation shows that the owner only expected a total of $3,000.00 to be spent on all of the plumbing building-wide. DOB documentation also shows that water and sanitation piping and

fixtures were worked on at the subject premises. There are also numerous Invoices from the Tile Depot of NY, Inc. totaling $5,248.47 and proof of payment of $7,500.00 to that company. While the owner submits no invoice, contract or other documents from any entity named Hernan & Brothers Corp., the owner does state in its summary of costs for the project that this entity did "tiles installation", and canceled checks totaling the $9,700.00 to Hernan & Brothers Corp. set forth on such summary were also submitted. While the evidence is incomplete, and in some ways inconsistent, given that there is evidence of plumbing work on the bathrooms, and of purchase of supplies needed to build new bathrooms, the Commissioner finds that the bathroom systems may in fact have been replaced.

Regarding the floors, the owner alleges that $9,667.27 was paid for/to "Wood floor Pc Floors", and submits a check for such amount, but there is no invoice or contract for such work, and the check reference is illegible. The owner also submits two checks for $3,150.00 each to Supreme Flooring and this matches the invoices from that company. Accordingly, even in the absence of any documentation from PC Floors, the Commissioner finds that the owner may have replaced the floors as a part of the project at issue.

Regarding ceilings and wall surfaces, the owner submitted a contract from Preferred Builders at a total cost of $120,000.00, which the owner's summary states was paid, although the owner only submitted paid checks to Preferred in the total amount of $100,000.00. Said Contract provides for, among other things, framing, insulation, sheetrock and trimming. The owner also submitted an Invoice from 1 800 Pickup Inc. for "Full Demo" of six residential units at a total cost of $35,000.00; while the owner's summary of such costs totals $39,250.00, the total of the submitted checks to 1 800 Pickup Inc. was $34,350.00. Under these circumstances, despite the inconsistencies and shortcomings in Contracts, Invoices, alleged costs and actually proven costs, it is found that the owner may have done sufficient work on the ceilings and wall surfaces to qualify this system as a replaced system under OB 95-2.

11

Aside from the statements that the exterior facade received new pointing as required, made by the owner's principal and by the owner's engineer, who was hired after the work was done, there is no documentation that any work was done on the pointing or exterior surfaces. Accordingly, it is found that this system was not replaced or sufficiently worked on to qualify as a replaced system under OB 95-2.

The Preferred Builders Contract states that doors are to be installed. As stated above, the owner only submitted checks showing that $100,000.00 was paid on this Contract, while the claimed payment and the Contract itself state that $120,000.00 was the total cost of said Contract. The Invoice from L&Y Glass Window Inc for storefront door and glass totals $4,200.00, however such Invoice **is for work on a different address than the subject building**; further, while the owner alleged payment of $11,900.00 to L&Y, only $8,800.00 worth of checks to L&Y were submitted. Because the Preferred Contract does not specify how many doors are to be replaced and proof of payment of such Contract is only partially submitted, and because the owner has submitted an Invoice from L&Y for installation of a lobby door in a different building while proof of payment is not consistent with any Invoice or with the owner's summary of payment, the doors cannot be found to have been replaced building-wide and in every apartment.

Regarding proof of payments, generally, and as in some instances more specifically outlined above, the proof of payments submitted by the owner is inconsistent and at times contradictory. Further, this proof is composed of copies of checks that are mostly illegible and do not reference the project at issue. Some few checks do have notations in the reference lines, but these notations are illegible. 18 of the 70 checks alleged to have been paid out by the owner are missing, and these checks total $78,300.00 (of the total claimed expenditure of $398,572.85). Of the $2,000.00 allegedly paid to the architect(s), the owner submitted checks totaling $1,000.00, and one of these checks (check #159) is for $500.00 while the owner's summary of costs claims that such check was in the amount of $1,000.00; and one of the three claimed checks allegedly paid to the architect(s) is missing. Finally, it is noted that the owner submitted many checks that were not relevant to the instant project.

12

In total, therefore, even assuming that many of the above-referenced inconsistencies and deficiencies in the evidence supporting the allowable systems are overlooked, the owner may have proven replacement of the following systems listed by OB 95-2: plumbing, heating, gas supply, interior stairways, kitchens, bathrooms, floors, and ceilings and walls. The owner has not, however, proven building-wide replacement or sufficient work of/on the remaining systems listed by OB 95-2, namely: the electrical system, intercoms, windows, roof, fire escapes, pointing or exterior surface repair, and all doors and frames. Of the relevant 15 systems listed on OB 95-2, and outlined above, the owner has potentially submitted adequate evidence of replacement of eight of said 15 systems, or 53.3% of such systems. The owner has not, therefore, shown complete replacement of 75% of the relevant systems at the subject premises. Accordingly, the work at issue does not qualify as a substantial rehabilitation pursuant to the RSC and to OB 95-2.

The statements of the owner's principal, of the owner's attorney, and of the owner's engineer, and the plans submitted, are not sufficient to overcome the findings above, namely that the owner has not shown that the building was substandard or seriously deteriorated prior to the work at issue, and that the owner has not shown that 75% of required systems were replaced, as required by the RSC and by OB 95-2. The above-referenced findings are based on the objective evidence in the record, including the fact that four of the six apartments were vacated pursuant to buyout agreements, and showing what work was and was not in fact permitted and proven to have been completed.

It is noted that the engineer who attested to the replacement of 15 systems was not part of the project and made all of his statements based upon inspection conducted after completion of the work at issue. His statements that the windows "were replac[ed] with more energy efficient windows…", that the "building was roofed and the parapet walls and capping repaired and replaced as required", that the fire escapes "were repaired as required…", and that the "exterior façade had received new pointing as necessary", are all statements that would require knowledge of the condition of these systems prior to the work at issue, and, again,

13

this engineer was not part of the project and had no personal knowledge of the building prior to the work at issue. Further, it is noted that the engineer was hired by the owner, after the work at issue had been performed, and to prepare paperwork that would justify the granting of the Application herein. The statements of this engineer, of the owner's principal, and of the owner's attorney, all persons who are making statements in the interest of having the owner's Application herein granted, are not sufficient to overcome the objective deficiencies and inconsistencies of the owner's other evidence as outlined above.

It is noted that there has been no new policy or rule implemented by the Agency in this case, and that the intent of the Legislature in allowing deregulation of substantially rehabilitated buildings has not in any way been usurped in this case. The presumption of the deteriorated condition of a building deriving from vacancies that are due to the uninhabitability of the apartments in such building, and the requirement that 75% of enumerated systems must be completely replaced, have been the longstanding and uninterrupted policy of this Agency since at least the promulgation of OB 95-2 in 1995. Further, the 80% vacancy presumption and the 75% replacement requirements of OB 95-2 are directly and exactly authorized by RSC Sections 2520.11(e)(1) and (3).

The Eastern Pork Products case, cited by the owner, held that requiring complete vacancy and a total "gutting" of a building is too rigid a standard in the substantial rehabilitation context, and, in that case, that having one apartment occupied during the work at issue did not automatically disqualify the project from being a substantial rehabilitation under the RSC. The real issues in that case were whether the premises at issue therein had to be completely vacant at the time of the work in question, and whether the premises had to be completely gutted to qualify as a substantial rehabilitation. While the Court found that the premises do not need to be completely vacant, and that the premises do not need to be completely gutted, to qualify as a substantial rehabilitation, this is not analogous to the instant case. In the instant case the issues are whether buyouts leading to vacatur of two-thirds of the tenants in occupancy shows that the building was in substandard condition (this actually proves the opposite as the

14

tenants would not need to be paid $40,000.00-$65,000.00 to vacate substandard apartments/building as explained above), and whether 75% of required systems had been replaced (not whether the premises were completely "gutted" which implies close to 100% replacement of 100% of the building as in Eastern Pork Products). Accordingly, Eastern Pork Products is not analogous and does not in any way contradict the findings of the RA or the findings herein.

Finally, DHCR does and did appropriately defer to DOB in this case, and their records show that less than 75% of required systems were replaced, as explained above. Making rulings based on DOB documentation, and in conjunction with other documentation in the record, as has been done herein, is proper and is not a usurpation of DOB authority, but is rather the proper deference to such authority.

**THEREFORE**, in accordance with the relevant provisions of the Rent Stabilization Laws and Regulations, it is

**ORDERED**, that this petition be, and the same hereby is, denied.

**ISSUED:**

JUN 0 6 2023

Woody Pascal
**Deputy Commissioner**

15

STATE OF NEW YORK
DIVISION OF HOUSING AND COMMUNITY RENEWAL
OFFICE OF RENT ADMINISTRATION
GERTZ PLAZA
92-31 UNION HALL STREET
JAMAICA, NEW YORK 11433

-------------------------------X

IN THE MATTER OF ADMINISTRATIVE     ADMINISTRATIVE REVIEW
APPEAL OF:                               DOCKET NO: DT210040RT

Amos Fisher

                                  RENT ADMINISTRATOR'S
                                  DOCKET NO: BO210007UC

                PETITIONER
-------------------------------X

ORDER AND OPINION DENYING TENANT'S PETITION FOR ADMINISTRATIVE REVIEW

On August 27, 2015, the above-named Petitioner-tenant filed a Petition for Administrative Review (PAR) of an order issued by the Rent Administrator on July 23, 2015, concerning the housing accommodations known as 256 Himrod Street, Brooklyn, NY 11237. The Rent Administrator's Order that is the subject of this proceeding found that the evidence shows that at least 75% of the building-wide and apartment systems, including common areas, were replaced in accordance with DHCR Operational Bulletin 95-2 (OB 95-2); that the subject building was therefore substantially rehabilitated; that there is no evidence to suggest that the owner received any government financing and/or tax abatement for this project; and that the subject building is therefore exempt from rent regulation pursuant to Section 2520.11(e) of the Rent Stabilization Code (RSC).

In the PAR, the tenant alleges that, pursuant to the RSC, illegal work that is not code compliant does not qualify as a substantial rehabilitation (citations omitted); that the Rent Administrator therefore incorrectly dismissed the tenant's arguments regarding the illegality of the work performed by advising the tenant to "refer any concerns of illegal construction to the DOB (Department of Buildings)"; that Housing Maintenance Code (HMC) Section 27-2089 requires an owner to get a new C of O for any multiple dwelling that is vacant for more than 60 days; that failing to obtain a new C of O creates the presumption that the building is uninhabitable and/or has not met City building codes (citation omitted); that it is not disputed that the building was vacant for at least 60 days during renovation, and that the owner has not obtained a new C of O; that the owner misquotes HMC Section 27-2089, arguing that no new C of O is required because the building is an old

1

law tenement for which no new C of O is required; that Section 27-2089(b)(3) of the HMC only exempts old law tenements when "two or more apartments are being combined to create larger residential units, the total legal number of families within the building is being decreased and the bulk of the building is not being increased"; and that, because the owner did not combine any apartments, this limited exception of the HMC does not apply.

The tenant further alleges that the work at issue exceeded the "Alteration Type 2" plans filed with the DOB and was therefore illegal; that the DOB only inspected the building twice, the first time resulting in a stop work order based on a finding that the complete gut renovation exceeded the scope of the work permit and in a vacate order because the building was found to be unsafe for habitation; that the second inspection found that the last tenant then in occupancy had relocated and therefore lifted the stop work order so that the owner could complete its work under the owner's amended and approved plan; that the owner did not thereafter expand the scope of work or otherwise amend the plans on file with DOB, nonetheless continuing with the complete gut renovation that DOB had already deemed beyond the scope of filed plans; that the owner claimed to replace fire escapes without submitting plans to DOB for such work; that the owner avoided further DOB scrutiny by relying on certification of its engineer; that in 2010, the year that the work was allegedly completed, the owner's engineer voluntarily surrendered his professional certification and Directive 14 privileges, while his special inspection privileges were revoked in 2011; that his DOB filing privilege was also revoked; and that, rather than having a DOB inspection that would have exposed the illegal nature of the work, the owner waited until the engineer's suspension was lifted in 2012 so that said engineer could sign-off on the work.

The tenant also alleges that the owner began renting apartments in the building in May of 2010 when the tenant first moved into apartment 3L, even though no sign-off was obtained until 2012, and even though the vacate order was not rescinded by DOB until July of 2010; that the owner did not disclose the scope of the work, or that the building was vacant for more than 60 days, to DOB; that the DOB statement that, based on the nature of the work filed in the application, a new C of O is not required was based on the owner's fraudulent misrepresentations; that, even if the work done was legally performed, the owner has not submitted sufficient proof pursuant to OB 95-2 to support a finding of substantial rehabilitation; that the building plans submitted to the Agency were reduced to the point of illegibility, which was done by the owner in an attempt to ensure that it would not be noticed that the alleged scope of

2

the work exceeded plans filed with DOB; that, while DOB issued permits to certain companies to do the work, there are no invoices, proof of payment, or other proof that these entities performed the work at issue; that the owner states that "Nick Construction" was the general contractor for the renovation, even though this company was not named on any permit; that this company did not exist at the time of the rehabilitation; that the updated scope of work submitted by this company does not correspond to invoices in that windows, roof, exterior pointing, doors, and fire escapes are not reflected on Nick Construction's invoices; and that Nick Construction invoices dated February of 2013 do not coincide with the owner's alleged dates of construction and do not show that the materials and work were for the subject building.

The tenant further alleges that invoices from Hoffman's Glass & Storefronts Inc do not reference the subject building and are billed to "Benny Macon"; that the invoice for "Lime Builders-Sukdev Singh" does not reference the subject building; that, while cancelled checks reference "Jose Guzman", there is no invoice for his work, and he could not have replaced the fire escapes when he was paid only $900.00; that various invoices are billed to unidentified parties; that there is no proof of payment to the architect named on the initial application or to the engineer; that said architect prepared a letter for the application, dated March 3, 2014, which does not state the date of his inspection, or whether he remained involved after the engineer was substituted on the application as the responsible professional in July of 2009; that the owner did not submit any documentation from said engineer, even though he was responsible for all aspects of the project; that, rather, the architect submitted a letter stating that work was done, without stating that he had personal knowledge of the final outcome of the renovation; that Leopold Kaufman is the principal of the owner Ojoto LLC, and of the contractor KNG Builders Inc., so Mr. Kaufman could have used the owner's checkbook to pay for bills and work on any other KNG project, thereby creating false documentation of payments for the renovation at issue; and that, just as the owner falsely asserted in a landlord-tenant proceeding against the tenant herein that the building has less than six units, the owner has similar incentive to pad the proofs of payment on the instant project with unrelated documentation.

The tenant also alleges that this application was submitted in response to the tenant's statement that he is rent stabilized in the context of a holdover proceeding; that the owner originally and falsely stated that the building was completely vacant, later admitting that the last tenant in occupancy had vacated in June of 2009 pursuant to a vacate order issued after construction had commenced; that, because of

3

the owner's false statements, at a minimum, a hearing should be held to determine the scope and legality of the renovation; and that the owner herein has admitted to committing several illegal acts, and has not established any legitimate basis for removing the subject building from rent regulation.

The owner answered the tenant's PAR by alleging that the PAR should be dismissed because it was not timely filed within 35 days of issuance of the Order being appealed; that 75% of the building-wide systems were replaced, which is sufficient to constitute a substantial rehabilitation pursuant to OB 95-2; that the affidavit of the owner's architect attests to replacement of 14 of the systems listed on OB 95-2; that the owner did not replace the elevator or waste compactor/incinerator systems because the building does not have these systems; that these two systems should therefore not be included in the calculation of the total number of systems that needed to be replaced; that, pursuant to Section 2520.11(e)(3) of the Rent Stabilization Code (RSC), there is a presumption that a building is in substandard condition when it is 80% vacant; that the subject building was vacant at the time that the rehabilitation began pursuant to a DOB vacate order issued on June 4, 2009; that the last tenant in occupancy remained in occupancy for a few days past this date, but soon moved out of the premises pursuant to a surrender agreement; and that the DOB Vacate Order was rescinded by DOB after their inspection showed that the entire building was vacant.

The owner further alleges that, because the building was in substandard condition, and because more than 75% of the existing systems in the building were replaced, it is clear that the building was substantially rehabilitated; that the owner submitted invoices for new staircases, fuel containers, roof, front walls, back walls and concrete work, windows, framing, sheet rock and painting, electrical wiring and intercom installation for all six units, plumbing, heating and gas supply, labor, and floors; that these invoices reference Ojoto LLC or the address of the subject premises; that the owner also submitted proof of payment of these invoices; that OB 95-2 does not require that invoices be addressed to the owner directly; that the owner also submitted copies of plans, before and after photographs, and work permits; that the owner therefore fully proved that the substantial rehabilitation was performed; that the DOB issued two Letters of Completion, the first for Job #310179446, an Alteration Type 2 job, was for a renovation including plumbing and partition work with no change in egress or occupancy, the second for Job #320048943, also an Alteration Type 2 job, was for installation of six new boilers in conjunction with Job #310179446; and that both of these Letters stated that, based on the nature of the work at issue, no new C of O is required.

4

The owner also alleges that Section 645 of the Chapter 26 of the NYC Charter states that a new C of O is required when there is an increase or decrease in the number of living rooms or apartments, that DOB has exclusive jurisdiction over deciding when a new C of O is required, and that DOB decisions regarding Cs of O are binding on other agencies; that DOB has exclusive jurisdiction over matters of Cs of O, subject only to review by the Board of Standards and Appeals (BSA), so DHCR does not have authority to review this issue; that the DOB has determined that no new C of O is required, and even issued a January 22, 2015 letter stating that it has no objection to a six family dwelling at the subject premises; that, while an owner's attorney mistakenly stated that the premises has five units, this was inadvertent error and the Letter of No Objection clearly states that the premises contain, and continue to contain, six family units; that, as this error was referenced in a non-payment proceeding which was never adjudicated, it has no relevance to the instant proceeding; that, while the PAR correctly states that a new C of O was not obtained, such C of O was not required because there was no increase or decrease of living rooms or apartments; and that the PAR fails to acknowledge that Letters of Completion issued by DOB state that a new C of O was not required.

Finally, the owner alleges that, while the tenant alleges that no sign-off was obtained until 2012 even though the tenant moved into his apartment in May of 2010, sign-off is not a prerequisite of such tenancy; that the owner submitted plans to DOB, and DOB approved such plans for the work at issue; that, while a Stop Work Order was issued by DOB on June 4, 2009 for renovation work which exceeded the scope of work under permit #310179446, this Order was rescinded on July 1, 2009 because amended plans were approved by DOB as all work was then in conformance with such amended plans; that all work was approved and conduced pursuant to code requirements; that both jobs approved by DOB were inspected and resulted in sign-offs and in issuance of Letters of Completion indicating the legality of the work performed; that, as there was no change in use, occupancy or building egress, the work at issue did not exceed the scope of an Alteration Type 2 job; that the Stop Work Order of June 4, 2009 shows that a gut renovation was taking place, despite the tenant's allegation that there is insufficient evidence to show such renovation; that DOB and not DHCR has authority to determine the legality of the work (citation omitted); and that DOB approved plans, and issued sign-offs and Letters of Completion showing that the work was performed and was legally performed.

The tenant responded to the owner's answer by repeating some of the allegations made on PAR, and by additionally alleging that the PAR was timely filed because it was postmarked August 27, 2015, which was within

5

35 days of the issuance of the Order being appealed; that the owner does not allay concerns regarding the legality of the work at issue or regarding the insufficiency of evidence showing that such work was performed; that the owner falsely states that it amended its plans to address the June 4, 2009 Stop Work Order, because amended plans were not submitted to the Agency and there is no evidence that such plans exist; that the DOB website does not reflect any filings after May of 2009 other than a plumbing certification; that, while DHCR does not have authority to overrule a DOB finding regarding Cs of O, the fact that the DOB decision was based on owner fraud is relevant to the issue of the owner's bad faith herein; that DOB's Letters of Completion do not mean that the owner is not required under Housing Maintenance Code (HMC) Section 27-2089 to get a new C of O; that the owner was in fact required to get a new C of O because the dwelling was vacant for 60 or more days; that HPD and not DOB administers the HMC; that the DOB did not consider the applicability of the HMC in this case, especially because it relied entirely on the engineer's certification; and that the owner's failure to comply with the HMC is grounds for granting the PAR.

Finally, the tenant alleges that the RSC prohibits a finding of substantial rehabilitation where the owner fails to provide copies of Cs of O as required by law; that there are no invoices or proof of payments to the entities which held the DOB permits; that the owner illegally offered the tenant a free market lease in May of 2010, months before the Vacate Order was lifted in July of 2010, long before the DOB job application was signed-off on in August of 2012, and before the owner's application for deregulation was submitted in January of 3013; that conditions in the building, including 39 outstanding Class B violations, 22 of which are in the tenant's apartment, belie any claim of substantial rehabilitation; and that many of these violations are for roof problems in 2014 and 2015, which would not exist if the roof had actually been replaced in 2010.

The Commissioner is of the opinion that this PAR should be denied and that the Rent Administrator's order at issue should be affirmed.

Rent Stabilization Code section 2520.11(e) provides that "housing accommodations in buildings [that are] substantially rehabilitated as family units on or after January 1, 1974" are exempt from rent stabilization. OB 95-2 outlines the criteria an owner must meet to prove substantial rehabilitation:

A. At least 75% of the building wide and apartment systems must have been completely replaced; and all ceilings, flooring and wall surfaces in common areas must have been replaced; and ceiling, wall and floor surfaces in apartments, if not replaced, must have been made as new.

6

The list of building wide and apartment systems are:

1. Plumbing
2. Heating
3. Gas supply
4. Electrical wiring
5. Intercoms
6. Windows
7. Roof
8. Elevators
9. Incinerators or waste compactors
10. Fire escapes
11. Interior stairways
12. Kitchens
13. Bathrooms
14. Floors
15. Ceilings and wall surfaces
16. Pointing or exterior surface repair as needed
17. All doors and frames

Limited exceptions to the extent of the rehabilitation work may apply where the owner demonstrates that a particular component of the building or system has recently been installed or ungraded so that it is structurally sound and does not require replacement, or that the preservation of a particular component is desirable or required by law due to its aesthetic or historical merit.

B. The rehabilitation must have been commenced in a building that was in a substandard or seriously deteriorated condition. Pursuant to OB 95-2, "where the rehabilitation was commenced in a building that was at least 80% vacant of residential tenants, there shall be a presumption that the building was substandard or seriously deteriorated at the time."

The following documentation will be required by owners in support of a claim for substantial rehabilitation: records demonstrating the scope of the work actually performed which may include an itemized description of replacements and installation; copies of approved building plans; architect's or general contractor's statements; contracts for work performed; appropriate governmental approvals and photographs of conditions before, during and after the work was performed. Proof of payment by the owner for the rehabilitation work may also be required.

First, the Commissioner finds that the PAR was in fact timely filed. Section 2529.2 of the RSC provides that a "PAR served by mail must be postmarked not more than thirty-five days after" the issuance date of the order that is the subject of said PAR. The Rent Administrator's Order that is the subject of the owner's PAR was issued on July 23, 2015, while the postmark on the envelope in which the owner sent its PAR is dated August 27, 2015, which is the thirty-fifth day after issuance of the Rent Administrator's Order that is the subject of the PAR. Accordingly, the PAR was timely filed.

Pursuant to OB 95-2, a building may be substantially rehabilitated when such building is in a substandard condition or is seriously deteriorated; a building that is 80% vacant of residential tenants at the time that a substantial rehabilitation is commenced is presumed to have been "substandard or seriously deteriorated at that time." It is not contested that the subject premises were more than 80% vacant of residential tenants at the time that the rehabilitation was commenced. The Commissioner finds that it is not relevant that there may have been a tenant in occupancy at the time that the rehabilitation commenced, or that the owner may have initially alleged that the building was vacant and then later changed its position to state that there was one tenant in occupancy. As both the owner and the tenant agree that there are six residential units in the premises, and that there was, at most, one tenant in occupancy and the other apartments were vacant at the time that the rehabilitation commenced, it is not contested that the building was more than 80% vacant of residential tenants at the relevant time. Therefore, pursuant to OB 95-2 as set forth above, the building is presumed to have been "substandard or seriously deteriorated at that time," and the owner was permitted to commence the substantial rehabilitation at issue.

Regarding the systems listed in OB 95-2, the owner submitted proof that the following systems were replaced:

1.  Plumbing: The owner submitted a DOB permit issued on 8/20/09 for, among other things "Plumbing Sprinkler/Standpipe" work, as well as a Letter of Completion stating that this work had been completed. The owner also submitted an invoice from Nick Construction referencing the subject premises and listing, among other work, plumbing supply throughout the premises, as well as cancelled checks evidencing that this Company was fully paid for

8

all work listed on said invoice (totaling $96,500.00). The owner submitted invoices referencing the subject premises and dated from August to December of 2009 from Fisher Supply for, among other items, plumbing supplies, as well as copies of cancelled checks evidencing payment for a majority of these charges. The owner also submitted an invoice from First Choice Plumbing Corp., dated 10/20/09 and referencing the subject premises, for repair to the sewer on the sidewalk, and for repair to the sewer inside the building; this invoice is marked as paid. Finally, the owner's architect submitted a letter certifying that the plumbing system was replaced building-wide. Accordingly, the record shows that the owner did in fact replace the plumbing building-wide.

2. Heating: The owner submitted a DOB permit and a Letter of Completion for installation of six new boilers. The owner also submitted the above-referenced invoice from Nick Construction listing, among other work, heating supply throughout the premises, as well as cancelled checks evidencing that this Company was fully paid for all work listed on said invoice. The above-referenced owner's architect's letter certified that the heating system was replaced building-wide. Accordingly, the record shows that the owner did in fact replace the heating system building-wide.

3. Gas Supply: The above referenced invoice from Nick Construction states that work was performed on the gas supply throughout the premises, and copies of cancelled checks evidence payment for this work. The above-referenced owner's architect's letter certified that the gas supply system was replaced building-wide. Accordingly, the record shows that the owner did in fact replace the gas supply system building-wide.

4. Electric Wiring: The above referenced invoice from Nick Construction lists complete electrical wiring in all six apartments and the record contains proof of payment for this work. The owner also submitted a DOB permit, issued on 9/08/09, for electrical work, including service work, general rewiring, new risers, and new meters. The above-referenced owner's architect's letter certified that the electrical system was replaced building-wide. Accordingly, the record shows that the owner did in fact replace the electrical system building-wide.

9

5.  Windows: The owner submitted invoices from Hoffman's Glass, referencing the subject premises and dated in July and August of 2009, for installation of 27 new windows. The owner also submitted three cancelled checks to Hoffman, dated November and December of 2009 totaling payments of $7,234.80 of the $8,500.00 set forth as the charges on the Hoffman invoices. The above-referenced owner's architect's letter certified that the windows had been replaced building-wide. Accordingly, the record shows that the owner did in fact replace the windows building-wide.

6.  Roof: The owner submitted an invoice from Lime Builders-Sukdev Singh, dated December of 2009 and referencing the owner, for a new roof, front and back walls, and all concrete work. The owner submitted cancelled checks to Lime and to Sukdev Singh dated July to November of 2009 and totaling the $23,300.00 set forth on the Lime invoice. The owner's architect also certified that the roof had been replaced as part of the rehabilitation at issue. Accordingly, the record shows that the owner did in fact replace the roof. The tenant's allegation that several violations placed against the premises in 2014 and 2015 for problems with the roof evidence that a new roof was not installed in 2009 is not persuasive. The invoice from, and payments to, Lime Builders for installation of the new roof are dated from August to November of 2009, which was four to six years prior to such violations. In light of the documentation showing that a new roof was in fact installed, as outlined above, and given the lapse of time between such installation and any alleged violations, the Commissioner finds that, despite any possible violations, a new roof was in fact installed as a part of the project at issue.

7.  Interior Stairways: The owner submitted an invoice from J&G Iron Works, dated August of 2009 and referencing the owner, for new metal staircases "in entire building". The owner also submitted cancelled checks made out to J&G and dated August of 2009 and January of 2010 and totaling the $7,000.00 set forth on the J&G invoice. The owner's architect also certified that the interior stairways had been replaced. Accordingly, the record shows that the owner did in fact replace the interior stairways building-wide.

8.  **Kitchens**: The owner submitted invoices from All Home, referencing the subject premises and dated from November of 2009 to January of 2010, for six gas ranges and range hoods, and for six refrigerators. The owner also submitted an invoice from United Kitchens Inc., dated October of 2009 and referencing the subject building, for six kitchen cabinets. The owner's architect's certification states that the kitchens were replaced in all apartments. Accordingly, the record shows that the owner did in fact replace the kitchens building-wide.

9.  **Bathrooms**: The owner submitted invoices from Fisher Supply, dated from August to December of 2009 and referencing the subject building, for plumbing supplies, six new bathtubs and showers, new radiators, six kitchen sinks and faucets, six new boilers, six new electric water heaters, six new vanities, six new toilets, six vanities and sink and faucet assemblies. All of these invoices, totaling about $43,000.00, are marked as paid. The owner's architect certified that there were new bathrooms put in all apartments. Accordingly, the record shows that the owner did in fact replace the bathrooms building-wide.

10. **Floors**: The owner submitted an invoice from A&E Surfaces Co., referencing the subject premises and dated November of 2009, for a new floor for the premises at a cost of $12,227.50. The owner also submits a cancelled check from October of 2009 evidencing a payment of $8,000.00 to A&E. The owner's architect submitted a letter certifying that there was new flooring installed in all apartments and common areas. Accordingly, the record shows that the owner did in fact replace the flooring building-wide.

11. **Ceilings and Walls**: The above-referenced invoice from Nick Construction is for, among other work, framing, sheetrocking and painting of all six apartments and of hallways and common areas, as well as for complete framing, sheetrocking, and painting. Again, the owner submitted proof of payment for this work. The owner also submitted invoices from Tri-state Lumber Inc., referencing the subject building and dated July and August of 2009, for studs, framing, plywood, drywall and other wall and ceiling supplies. Finally, the owner's architect certified that ceilings and walls were replaced in all apartments and common areas. Accordingly, the record shows that the owner did in fact replace the ceilings and walls building-wide.

11

12. Pointing or Exterior Surface Repair as Needed: The owner submitted a letter from Nick Construction referencing the subject premises and signed by the owner of Nick Construction stating that, among other work, that company had performed "pointing of exterior building" and that this work had been inspected and fully paid for. The owner's architect also certified that there had been new siding put on the exterior of the building. Accordingly, the record shows that the owner did in fact perform pointing and exterior surface work as a part of the project at issue.

13. Doors and Frames: The owner submitted an invoice from Sai Wah Glass & Aluminum Door Inc., referencing the subject premises and dated September of 2009, for an Aluminum Door. The owner also submitted a cancelled check to Sai Wah Glass dated September of 2009 in the amount of $1,700.00, which was the amount set forth on the Sai Wah invoice. The record also contains invoices from NYC Door, dated between August of 2009 and February of 2010 and referencing the subject premises, for doors and frames and related items totaling about $14,300.00. These invoices indicate that all charges set forth therein had been fully paid. Invoices from B&B Millwork, dated January of 2010 and referencing the subject premises, show payment of $2,150.00 for door supplies. Finally, the owner's architect certified that new fire rated doors and frames had been installed building-wide. Accordingly, the record shows that the owner did in fact replace the doors and frames building-wide.

14. Intercoms: The above-referenced invoice from Nick Construction, referencing the owner and dated in 2009, states that intercoms in all six apartments were installed. Again, the owner submitted proof that Nick Construction was paid for this work. The owner's architect also certified that a new intercom system was installed in the premises. Accordingly, the record shows that the owner did in fact replace the intercom system in the subject premises.

Generally, the owner submitted a copy of a letter from Nick Construction of NY (in addition to the Nick Construction invoice referenced several times above) referencing the subject premises and stating that said Company had been hired to "construct and renovate all apartments and common areas, including the entire plumbing, heating, gas supply, electrical wiring, intercoms, windows, roof, kitchen, bathrooms,

floors, ceiling and wall surfaces, pointing of exterior building, all doors and frames including non-fire rated items with fire rated, interior stairways, fire escape, ceiling and walls of the hallways", and that all of this "work has been inspected and is completely done and fully paid up." The owner also submitted a letter from KNG Builders INC. dated December 1, 2012, and signed by the Construction Manager of KNG stating that he inspected the premises and that all of the following items were completely replaced throughout the building: plumbing including piping, new toilets, new sinks, new bathtubs and new showers; new heating including new boilers and new radiators; gas supply and piping; electrical wiring in all apartments, halls and common areas; intercoms in all apartments; new windows in all apartments, hallways and common areas; a new roof; interior stairways in the halls; new kitchens in all apartments; new bathrooms in each apartment; new floors in all apartments, hallways and common areas; and new ceilings and walls in all apartments, halls and common areas (consisting of new studs, sheetrock, plaster and paint). This letter further stated that the exterior of the building has been covered with new vinyl siding and repaired as required, that all doors and frames are fire rated, and that there are no incinerators, waste compactors or elevators in the building.

The owner also submitted invoices referencing the subject premises and dated in 2009 from Guma Corp. for seven 30 yard dumpsters at a total cost of $6,266.17, and from Global Carting, all dated in July of 2009 and also referencing the subject building, for dumpsters from 20 yard sizes to 40 yard sizes at a total cost of $4,100.00. The owner submitted a copy of a cancelled check to Guma dated in May of 2009 for $3,878.40 and of cancelled checks to Global Carting dated from May of 2009 to September of 2009 and totaling $9,350.00. The owner further submitted an invoice from Landmark Lighting referencing the owner and dated October of 2009 for new lighting at the subject premises at a cost of roughly $1,500.00, as well as an invoice from First Choice Plumbing Corp., referencing the subject building and dated October of 2009, for sewer work inside and outside the building at a cost of $6,500.00 (this invoice is marked as paid).

The certification from a registered architect, referenced above and dated March 3, 2014, states that the subject premises was rehabilitated during 2009-2010 and that said rehabilitation included new heating and plumbing systems, a new gas supply system, new electrical systems, a new intercom system, new windows, a new roof, new interior stairways, new

kitchens and bathrooms in all apartments, new flooring, ceilings and wall surfaces in all apartments and common areas, new siding on the exterior of the building, and new fire-rated doors and frames. The architect further certified that the rehabilitation enlarged and reconfigured all apartments as shown in DOB plans, that a legal bathroom with windows was added to each apartment, and that the location and size of the kitchens, bathrooms and living rooms was changed. Finally the architect certified that the building does not have an incinerator, waste compactor, or elevator.

All invoices reference the subject premises, except for a small minority that reference the owner only, and most are marked paid in full or the owner has submitted copies of cancelled checks evidencing payment in full (or almost in full) for all work and supplies listed on said invoices.

The record also shows that DOB issued a Vacate Order on 6/4/09 which Order states that a "[t]otal gut renovation in progress at building. Unsafe tenant conditions." Therefore, DOB found that there was a "total gut renovation" in progress. On 6/4/09 the DOB also issued a Stop Work Order because the "complete gut renovation of entire bldg. exceeds scope of work for permit # 310179446 with app plans 7/31/08". Again, this Order shows that DOB found that there was a "complete gut renovation" in progress. On 7/1/09 the Stop Work Order was "fully rescinded" because the premises were vacant, and because it was "ok to return to work" as the work at issue had been approved pursuant to "amended and approved plans." This finding was pursuant to two DOB inspections. Therefore, DOB, pursuant to inspection, found that the premises were being totally and completely gut renovated, and that the work at issue was acceptable pursuant to amended plans filed with DOB. This also shows that, despite allegations by the tenant that the plans filed by the owner were not legible, DOB in fact reviewed such plans and found them both legible and acceptable for the project at issue. The Commissioner finds that the determinations of DOB regarding such plans is dispositive regarding the legality and sufficiency of such plans.

Further, DOB stated, in Letters of Completion dated 1/3/13 and 1/21/13, that a new C of O is not required for the work at issue. While this finding may have been based upon engineer certification, DOB did in fact inspect the premises, finding that there is "no change in use, egress or occupancy" under the owner's application. The Commissioner finds that the DOB finding that no new C of O is required must be relied on by this Agency. Any alleged fraud that the tenant claims may have been perpetrated against DOB in this regard should be addressed to the DOB.

14

The record also contains copies of a 9/08/09 DOB permit for electrical work, including service work, general rewiring, installation of new risers and of new meters. On 5/1/09 DOB also issued a permit for "renovation of existing building, plumbing and partition work". On August 4, 2009 the DOB approved the installation of six new boilers in conjunction with this work. There is also another DOB approval in the record, issued 8/20/09, for "gen constr renovation of existing building, plumbing and partition work". Accordingly, the DOB knew of and approved the work performed in the substantial rehabilitation of the premises.

The owner did not submit sufficient evidence that the fire escapes were replaced building-wide. Nor did the owner's architect certify that this work was done. Accordingly, the Commissioner finds that the fire escapes were not replaced as a part of the rehabilitation at issue.

Pursuant to the above-referenced owner's architect's affidavit, and to the above-referenced letter from Nick Construction, the building did not contain incinerators, waste compactors or any elevator prior to the substantial rehabilitation at issue, and these systems were not installed as a part of such substantial rehabilitation. Because the building did not have incinerators, waste compactors or elevators, the Commissioner finds that these two systems should not be included among those systems that needed to be replaced, and will not be included in the total number of systems when calculating the 75% of such systems that needed to be replaced for the work at issue to qualify as a substantial rehabilitation pursuant to OB 95-2. Accordingly, the owner is required to have replaced 75% of the 15 remaining systems set forth on OB 95-2 in order for the work at issue to qualify as a substantial rehabilitation.

As explained above, 14 of the 15 building-wide and apartment systems set forth in OB 95-2 have been replaced (93.3%), these 15 systems being those set forth in OB 95-2 and that existed in the subject premises prior to the project at issue (all of which were replaced except the fire escapes). Because more than 75% of these qualifying 15 systems were replaced, the work at issue qualifies as a substantial rehabilitation pursuant to OB 95-2 and as found by the Rent Administrator.

The owner further submitted photographs of the premises both before and after the work at issue showing that the subject building was seriously deteriorated before the work at issue was performed and showing that the premises were in fact substantially rehabilitated.

15

Regarding proof of payment for the rehabilitation, the owner submitted documentation showing that a majority of the costs of the project at issue, as documented by paid invoices and by cancelled checks, was paid by the owner contemporaneously with the work at issue. This proof is more specifically outlined above.

The tenant's allegations that the building may not have been vacant, and/or that the owner misrepresented the status of the building regarding occupancy or vacancy, and/or that there may have been tenant occupancy prior to sign-off on the project, are not relevant to the instant proceeding. The instant proceeding is concerned solely with the owner's application for exemption from rent regulation due to a substantial rehabilitation having been performed in the subject premises. OB 95-2 permits the Agency to make a finding of substantial rehabilitation even if an apartment was occupied during the performance of such rehabilitation. Nor does the owner's having possibly rented to the tenant herein prior to the project at issue having been signed-off on have any bearing on whether such project was in fact a substantial rehabilitation. As found herein, based on a totality of the evidence, the Commissioner finds that the work at issue did in fact constitute a substantial rehabilitation, that this work was paid for, and that said work was legally performed.

The tenant's allegations regarding other proceedings are not relevant, as the issue herein is whether the premises were legally and substantially rehabilitated. While the tenant raises such issues to cast doubt on the bona fides of the owner's allegations and evidence, the Commissioner finds that the owner has submitted sufficient evidence, as outlined in this Order, that the premises were in fact legally and substantially rehabilitated.

Nor are the tenant's allegations regarding the owner's engineer persuasive. As stated above, the owner supported the application herein with proof that the work at issue was performed, and that such work was legally performed. Any alleged improprieties involving the owner's engineer and/or the owner regarding DOB proceedings must be addressed to DOB. The work herein was supported by invoices, evidence of payment, permits, DOB paperwork and sign offs, certification by a licensed architect, and by photographs. The certifications by the owner's engineer are therefore corroborated by all of this evidence, and the allegations of the tenant regarding said engineer, and regarding the sign-offs by said engineer, are not persuasive in light of the evidence corroborating such sign-offs.

16

Nor is there any reason to find that the architect's certification was not proper. Such certification was dated March 3, 2014, which is reasonable, as such certification was prepared soon after the owner filed the application herein in late January of 2013. There is nothing irregular in the owner's architect preparing such certification in support of the owner's application herein. Nor is such certification lacking in any way. The certification is affirmed to as "true to the best of [the architect's] knowledge", and there is no need for such certification to detail what such knowledge is based upon. Again, the architect's certification is supported and corroborated by invoices, proofs of payment, permits and other DOB documentation, and photos, all as set forth more fully above. Accordingly, the Commissioner finds that the architect's certification is both valid and probative.

Accordingly, because the owner sufficiently documented that the subject premises was seriously deteriorated, that a substantial rehabilitation was subsequently performed and paid for, and that said rehabilitation was legally performed, the Commissioner finds that a hearing is not necessary and that the Rent Administrator correctly found that the premises have been substantially rehabilitated and that they are therefore exempt from rent regulation.

THEREFORE, in accordance with the provisions of the Rent Stabilization Code it is

ORDERED, that the findings of the Rent Administrator as set forth in the order docketed under Docket Number BO21OOO7UC are affirmed, and that the tenant's PAR is denied.

ISSUED:

MAY 18 2016

Woody Pascal
Deputy Commissioner

17



# STATE OF NEW YORK
## DIVISION OF HOUSING AND COMMUNITY RENEWAL
## OFFICE OF RENT ADMINISTRATION
## GERTZ PLAZA
## 92-31 UNION HALL STREET
## JAMAICA, NEW YORK 11433

# 33448

---------------------------------------X

IN THE MATTER OF THE
ADMINISTRATIVE APPEAL OF

ADMINISTRATIVE REVIEW
DOCKET NO.: MN210018RO

RENT ADMINISTRATOR'S
DOCKET NO.: KU21005UC

CREAS, INC.

TENANTS: VARIOUS

              PETITIONER    X
---------------------------------------

## ORDER AND OPINION DENYING ADMINISTRATIVE REVIEW

The petitioner-owner timely filed an administrative appeal (PAR) against an Order issued on January 11, 2024, by a Rent Administrator (RA) concerning the premises located at 117 North 4th Street, Brooklyn, NY, 11211. Said Order denied the owner's Application, which was filed on September 15, 2022, to determine whether the subject building is exempt from rent regulation based on substantial rehabilitation pursuant to Rent Stabilization Code (RSC) §2520.11 (e). Said Order found that the owner failed to establish that the building was substandard or seriously deteriorated prior to the work at issue as required by Operational Bulletin 2023-3 (OB 2023-3); that three out of eight units (2R, 4L and 4R) in the subject building were vacated due to surrender agreements; that two out of those eight units (1L and 2L) were occupied by the owner immediately prior to the renovation; and that the owner has failed to submit sufficient evidence to support its claim that the building was substandard or seriously deteriorated.

On PAR, the owner contends that the RA erred in denying its substantial rehabilitation Application based on DHCR's Operational Bulletins and that such denial is arbitrary and capricious; that, although Operational Bulletin 95-2 (OB 95-2) has been approved by the Courts, such approval does not give DHCR carte blanche to use OB 95-2 as a blunt weapon to deny substantial rehabilitation applications; that an architect verified that more than 75% of the building-wide and apartment systems were in substandard condition; that the owner's Application also documented significant evidence of the substandard conditions in the subject building which conditions have resulted from over 100 years of wear and tear and from the lack of replacement of building-wide systems since the building was built in 1910; that the subject building was 100% vacant at the time of the commencement of the construction in 2021; that OB 95-2 creates a presumption that a building is substandard if it is more than 80% vacant; that, because the building was 100% vacant at the time the work was commenced, it should therefore be found that such building was substandard pursuant to OB 95-2; that OB 95-2 only provides for two instances in which a vacancy would not be considered towards the 80% presumption: 1. when the vacancy was secured by arson or another criminal act by the owner or its agent, or 2. when the tenants vacated

the building based on harassment; and that the RA's denial Order did not find that any vacancy was secured by arson, by any other criminal act, or by harassment, so the building was therefore legitimately 100% vacant prior to the work at issue and should therefore have been found to have been in a substandard condition.

The owner further contends that the RA erroneously relied on OB 2023-3 to determine that the owner failed to establish that the premises were in substandard condition; that the RA failed to explain the deficiencies in the owner's documentation that led to the determination that the building is not exempt from rent regulation due to substantial rehabilitation; that the RA failed to explain why apartments that were occupied by a prior owner, but which became vacant prior to the work at issue, were not allowed by the RA to count towards the 80% presumption; that the current owner acquired the building on or about September 13, 2023, and the construction began on or about October 13, 2021 which was well before the current owner took possession of the building; that the RA failed to explain why the tenants' voluntary surrender agreements precluded their apartments from being considered as vacant and as counting towards the 80% presumption; that, given that the 110-years old building-wide and apartment systems had not been previously replaced, the owner submitted ample documentary evidence establishing the substandard condition of the premises; that the owner has established that the building was 100% vacant at the time that the work commenced; and that there is no law, regulation, or Operational Bulletin which authorizes DHCR to disregard vacancies based upon the RA's rationale, or that provides any basis for DHCR to deny owner's Application herein.

The owner also contends that the RA's Order made reversible error in retroactively applying OB 2023-3; that said Operational Bulletin was issued on November 8, 2023; that the prior owner acquired the building and submitted the Application at issue to DHCR upon completion of the work in 2022, which was more than a year prior to the issuance of OB 2023-3; that the RA's Order made reversible error in discrediting the voluntary vacancies occurring prior to the rehabilitation; that OB 95-2, in effect at the time of the renovation and of the Application, had a presumption that the building is in a substandard condition when 80% of the building is vacant at the commencement of the construction, provided that the vacancies were not secured by a criminal act or harassment, but rather were secured by voluntary decisions of the tenants and owner; that such voluntary vacancies were in fact secured in this case in connection with the sale of the building which is allowed by OB 95-2; that RSC §2520.11(e)(3), as it was in effect at the time of the Application, does not preclude an owner from obtaining vacancies in a building as a result of duly negotiated surrender agreements or from obtaining such vacancies to facilitate the sale of such building; and that there is simply no way to know if a vacancy occurred due to the substandard conditions of the building, or due to other personal reasons of a tenant.

Finally, the owner contends that the fact that an apartment may be occupied immediately prior to substantial rehabilitation work is not grounds for finding that the building is not "substandard" or "deteriorated"; that the RSC and OB 95-2 are clear that the determination as to whether a building was in substandard condition is not based on whether a tenant(s) vacated because of a buyout agreement(s); that the DHCR is engaging in impermissible rulemaking without consideration for precedent and without regard to logic; that the owner's color photographs, submitted to DHCR on July 31, 2023, demonstrate that the subject building has not been renovated in decades and was indeed in substandard or seriously deteriorated condition; that

the Application contained a sworn affidavit from an architect which stated that the building was in substandard and deteriorated condition and has not been renovated in 110 years; that the Application provided that the prior owner expended more than $700,000.00 to rehabilitate a 110 year old, eight unit, building; and that, and for all of the reasons stated above, the RA's Order must be reversed in its entirety.

On August 22, 2024, the owner submitted a supplement to the PAR in which it contends that Eli Hechet, the licensed general contractor (GC), swore out an affidavit stating that the subject building was substandard and in seriously deteriorated condition when said GC inspected the building; and that the subject building required substantial rehabilitation from roof to cellar.

The Commissioner, having reviewed the entire evidentiary record, finds that the owner's PAR is denied.

The Commissioner finds that the owner is correct to point out that OB 2023-3 is not applicable to the instant proceeding. Because the work at issue was completed in 2022, prior to the promulgation of OB 2023-3, the prior Operational Bulletin, namely OB 95-2, applies. It is noted that the RA applied the relevant provisions of OB 95-2 in her analysis even though she cited OB 2023-3.

In order to exempt a building from rent regulation based on substantial rehabilitation, an owner has the burden of showing that the building was in substandard or seriously deteriorated condition prior to the commencement of substantial rehabilitation work. OB 95-2, which was effective at the time of work at issue, establishes a presumption that a building is in substandard or seriously deteriorated condition when the rehabilitation work "was commenced in a building that was at least 80% vacant of residential tenants." This presumption has long been established and used by DHCR in substantial rehabilitation situations and is reasonably based on the fact that such degree of vacancy usually shows that most of the apartments in a building are not habitable, that the building is likewise uninhabitable, and that this lack of habitability shows the deteriorated conditions of the building.

In this case, the owner secured the vacancy of three out of the eight apartments by buyout agreements ranging from $150,000.00 (4R) - $175,000.00 (2R and 4L). The Commissioner finds that these buyout agreements, providing for the large sums paid pursuant to such agreements, show that these three apartments had substantial value, that they were therefore habitable, and that the building was not substandard given that three of the eight apartments therein (or 37.5% of the apartments) were habitable and of some considerable value. Nothing in these buyout agreements implies or establishes that substandard conditions had any bearing on the tenants' acceptance of such buyouts.

The Commissioner further finds that the fact that two units (Apt. 1L and 2L) were occupied by the owner immediately prior to the renovation shows the said units were also habitable at that time, further showing that the premises were not seriously deteriorated. In sum, five of the eight apartments in the building (or 62.5% of the apartments) were habitable prior to the work at issue, which supports the RA's conclusion that the building was not substandard at such time. The substantial rehabilitation provisions of the RSC are to encourage the rehabilitation of buildings

3

that are essentially uninhabitable and are not to facilitate a formal removal of otherwise habitable buildings from rent regulation. For this reason, the presumption that a building is substandard when 80% of the apartments in such building are vacant, is not a formal formula, but, rather, is based on reasoning that, if 80% of such apartments are not habitable, the building itself is very likely to be substandard. When vacancies occur, as they did in this case, pursuant to buyouts for large sums, and when an owner vacates two apartments prior to the commencement of work, such vacancies do not indicate that these apartments were uninhabitable, or that the building was therefore substandard, as explained above, and the presumption will not be applied.

The owner's allegation that the subject building was substandard because it had not been worked on for over 100 years is unsupported and is belied by the fact that five of the eight apartments were habitable and occupied, and that at least three of them had substantial value as habitable apartments, immediately prior to the work at issue, as explained above. The owner also alleges that the large amount expended on the work at issue proves that the building was in substandard condition prior to such work. However, the amount spent to improve or renovate a building does not in any was evidence the condition of the building prior to such work as even a new building in near perfect condition can be completely renovated. Further, the affidavits of the owner's architect and of the owner's GC are insufficient to show that the building was substandard. Such affidavits are less persuasive than the objective fact that five of eight apartments were habitable immediately prior to the work at issue and that the building was therefore not substandard as explained above.

The photographs submitted by the owner are insufficient to show that the building was substandard or seriously deteriorated pursuant to OB 95-2. These photographs were not labeled, there is no indication when the photographs were taken, and no indication regarding what part of the premises are the subject of the photographs. Nor did the photographs shows that the entire subject building was deteriorated. Further, again, these photographs are not persuasive in light of the objective fact that five of the eight apartments in the subject premises were habitable, which shows that the building was not substandard immediately prior to the work at issue.

**THEREFORE**, in accordance with the relevant Rent Regulatory Laws and Regulations, it is

**ORDERED,** that the owner's petition is denied; and that the Rent Administrator's Order is affirmed.

**ISSUED:**
**OCT 3 0 2024**

**Woody Pascal**
**Deputy Commissioner**

4

STATE OF NEW YORK
DIVISION OF HOUSING AND COMMUNITY RENEWAL
OFFICE OF RENT ADMINISTRATION
GERTZ PLAZA
92-31 UNION HALL STREET
JAMAICA, NEW YORK 11433

----------------------------------------X

IN THE MATTER OF THE
ADMINISTRATIVE APPEAL OF           ADMINISTRATIVE REVIEW
                                   DOCKET NO.: LQ110017RO

CYPRESS HILLS VENTURES LLC,        RENT ADMINISTRATOR'S
                                   DOCKET NO.: HW110006UC

              PETITIONER      X
----------------------------------------

## ORDER AND OPINION DENYING PETITION FOR ADMINISTRATIVE REVIEW

Petitioner timely filed an administrative appeal (PAR) against an order issued on April 19, 2023 by the Rent Administrator (RA) concerning all building-wide housing accommodations in the premises located at 48-54 46ᵗʰ Street, Flushing, New York which denied the petitioner's application for exemption from rent regulation by virtue of substantial rehabilitation.

Petitioner commenced this proceeding on November 18, 2019 by filing an application to determine whether subject premises was exempt from rent regulation due to substantial rehabilitation in accordance with Rent Stabilization Code (RSC) §2520.11(e) and DHCR Operational Bulletin 95-2 (OB 95-2).

Petitioner stated that it purchased the six-dwelling building in July 2017 and that the subject premises was entirely vacant when the rehabilitation commenced in 2018. Petitioner annexed a surrender agreement signed by the tenant of apartment 1L on December 7, 2017 who vacated the premises in exchange for a sum of money; a surrender agreement signed by the tenant of apartment 2L on October 29, 2017 who vacated the premises in exchange for a sum of money; a surrender agreement signed by the tenant of apartment 3L on November 17, 2017 who vacated the premises in exchange for a sum of money; a surrender agreement signed by the tenant of apartment 1R on December 20, 2017 who vacated the premises in exchange for a sum of money; and a surrender agreement signed by the tenant of apartment 3R on October 8, 2017 who vacated the premises in exchange for a sum of money.1 Petitioner also produced

---

1 The amount of money on each surrender agreement was whited out.

an affidavit of the CEO of the contractor affirming that 87% of the building-wide and apartment systems were replaced as well as work records and proof of payment. Petitioner also produced 17 photographs depicting before and after the exterior/façade renovations, the new roof, new backyard fencing, basement demolition, interior gut demolition, interior framing, finished interior hallway and new staircase, and both gutting and finished photographs of an apartment. Petitioner also produced the deed to the premises, Department of Buildings (DOB) records, architect records and DOB Letter of Completion.

In supplemental correspondence, petitioner indicated that the tenant of apartment 1R vacated approximately 2 months after petitioner purchased the premises after indicating that the apartment was her second home and that she no longer wanted the added expense. Petitioner indicated that it spent $782,751 for the renovations and provided additional DOB records, proof of payment, work records and architectural plans.

The RA found that under RSC §2520.11(e)(3), the rehabilitation must commence in a building that was in a substandard or seriously deteriorated condition and that a vacancy percentage of 80% can constitute evidence of such condition. The RA denied the application finding that since five out of the six tenants vacated due to surrender agreements, the vacancy percentage alone did not satisfy the presumption that the premises was substandard or seriously deteriorated and that the owner has otherwise failed to prove such condition of the premises.

On PAR, petitioner asserts that RSC §2520.11(e)(3) provides that where the premises is 80% vacant there shall be a presumption that the building was in substandard or seriously deteriorated condition; that the building herein was 100% vacant; that the RA never questioned the condition of the premises; that the RA deprived the petitioner of the right to submit any evidence of the condition of the premises to support the application; that petitioner now supplements the PAR by submitting an affidavit of Anthony Gurball, an engineer, who filed the plans with DOB for the project; that Mr. Gurball affirms that he inspected the premises before the work and that it was fully vacant and in a substandard condition; and that, in Mr. Gurball's opinion, the work herein qualifies as a substantial rehabilitation.

2

Admin Review Docket No. LQ110017RO

The PAR is denied.

Prior to commencement of work leading to a substantial rehabilitation, an owner has the burden of showing that the building was in substandard or seriously deteriorated condition. OB 95-2 establishes a presumption that a building is in substandard or seriously deteriorated condition when the rehabilitation work "was commenced in a building that was at least 80% vacant of residential tenants." This presumption has long been established and used by DHCR in substantial rehabilitation cases and is reasonably based on the fact that such degree of vacancy usually shows that most of the apartments in a building are not habitable, that the building is likewise uninhabitable, and that this lack of habitability is due to the deteriorated conditions of the building.

Here, the owner secured the vacancy of 5 out of 6 apartments by surrender agreements in which tenants were paid sums of money to vacate their apartments. The Commissioner finds that nothing in these surrender agreements implies or establishes that substandard conditions were the reason that the tenants accepted the buyouts; that payments to tenants to incentivize them to vacate shows that the apartments had significant value and were not in substandard condition; that these buyouts do not show the substandard condition of the apartments or building, but rather reflect an effort to empty the building for the purpose of removing it from rent stabilization; and that these buyouts do not establish grounds to exempt the building from rent stabilization and in fact demonstrate that the RA's determination was correct. Indeed, 5 of the 6 vacancies were not the result of the deterioration of the apartments or of the building and the buyouts themselves prove that the apartments had value and were habitable as opposed to being seriously deteriorated.

The before/after photographs submitted by the owner do not demonstrate a substandard or seriously deteriorated condition of the entire premises in order to satisfy OB 95-2. Indeed, the owner did not submit any evidence before the RA, other than the vacancy rate, to establish a substandard or seriously deteriorated condition.

The Commissioner need not consider the engineer's affidavit which was produced for the first time on PAR. Under RSC §2529.6, review on PAR is limited to consideration of the evidence and

3

arguments set forth in the proceeding before the RA. Moreover, a review of the affidavit submitted does not indicate that the engineer was even aware of the buyout agreements, and he made no effort to explain why the petitioner had to purchase apartments away from the tenants living there before commencing the work.

The Commissioner finds that the owner's due process arguments are without merit. The owner was aware of the requirements of the RSC and OB 95-2 and had a full and fair opportunity to submit all of its evidence and arguments to the RA.

Finally, it should be noted that the purpose of the substantial rehabilitation provisions of the RSC and of OB 95-2 is to encourage rehabilitation of dilapidated and basically uninhabitable housing stock, and not a provision for deregulation of otherwise habitable buildings that are not seriously deteriorated.

**THEREFORE**, in accordance with the relevant Rent Regulatory Laws and Regulations, it is

**ORDERED**, that this petition be, and the same hereby is, denied; and that the Rent Administrator's order be, and the same hereby is, affirmed.

**ISSUED:**

JUL 2 4 2023

Woody Pascal
Deputy Commissioner

4

STATE OF NEW YORK
DIVISION OF HOUSING AND COMMUNITY RENEWAL
OFFICE OF RENT ADMINISTRATION
GERTZ PLAZA
92-31 UNION HALL STREET
JAMAICA, NEW YORK 11433

_____X

IN THE MATTER OF THE
ADMINISTRATIVE APPEAL OF            ADMINISTRATIVE REVIEW
                                    DOCKET NO.: FV210027RT

                                    RENT ADMINISTRATOR'S
EDWINA STROUD,                      DOCKET NO.: EP210004UC

_____PETITIONER____X

## ORDER AND OPINION DENYING PETITION FOR ADMINISTRATIVE REVIEW

The petitioner, a former tenant of apartment 1L, timely filed an administrative appeal (PAR) against an order issued on September 22, 2017 by the Rent Administrator concerning various housing accommodations in the building located at 737 McDonough Street, Brooklyn, NY which granted the owner's application for exemption from rent regulation due to substantial rehabilitation.

The owner commenced this proceeding on April 16, 2016 by filing an application to determine whether the building located at 737 McDonough Street, Brooklyn, NY was exempt from rent regulation based on substantial rehabilitation in accordance with Rent Stabilization Code (RSC) §2520.11(e) and DHCR Operational Bulletin 95-2. The owner asserted that the substantial rehabilitation occurred between 1998 and 1999 when the premises was gut-renovated and converted from a six-family building to four dwelling units and a new Certificate of Occupancy was issued by the Department of Buildings (DOB) on May 5, 1999.

In the application, the owner provided a current deed; an affidavit of Walter Maffei, a licensed architect; records from DOB, including the Altered Building Application, permits and approved engineering plans; and the Certificate of Occupancy. Mr. Maffai stated that he reviewed DOB records which revealed that in July 1998, Engineer Shahriar Afshari filed an Alteration Type I application (Job 300773731) to convert the premises from a six-family dwelling to a

1

FV210027RT

four-family dwelling. The plans filed at DOB indicated the following new items: wood framing, walls, partitions, ventilation, plumbing, bathrooms, kitchens, electrical service, interior stairs and heating system. In 1999, the DOB records revealed a new filing (Job 300862877) under an Alteration Type 2 for new gas distribution. The plans filed with DOB also indicated that the building was vacant at the time of the work, that the work involved a gut renovation and that the work passed all inspections. The owner later supplemented his application by providing the approved plans and an affidavit of Shahriar Afshari. Mr. Afshari stated that he was a licensed engineer and that the premises was vacant when he was retained by the former owner in 1998 to get approval for a gut renovation and conversion from a six-family to a four-family dwelling. He stated that all apartments were reconfigured and that more than 75% of the building wide and apartment systems were replaced, including: plumbing; heating; gas; electric; kitchens and bathrooms.

On September 14, 2017, petitioner opposed the owner's application by stating that less than 75% of the building and apartment systems were replaced. Petitioner asserted that to achieve the required 75%, the owner would have to show that he replaced thirteen out of the seventeen systems listed in DHCR Operational Bulletin 95-2 and that the owner, at most, proved that seven systems were replaced. Petitioner asserted that the owner failed to demonstrate that the building was in substandard condition as required by DHCR Operational Bulletin 95-2. Petitioner asserted that the owner failed to provide the necessary documentation under DHCR Operational Bulletin 95-2. Petitioner also submitted an affidavit stating that her apartment was in bad condition when her tenancy commenced in January 2016.

The Rent Administrator issued an order finding that the evidence submitted by the owner proves that the subject building was substantially rehabilitated and that at least 75% of the building-wide and apartment systems, including the common areas, were replaced within the meaning of RSC §2520.11(e). The Rent Administrator also noted that the owner did not receive any government financing or tax abatement for the project and that the premises was exempt from rent stabilization.

On PAR, petitioner asserts that the owner failed to demonstrate that 75% of the building-wide systems listed in DHCR Operational Bulletin 95-2 were completely replaced. In this regard, petitioner asserts that the engineer's affidavit only stated that seven systems were replaced (plumbing, electrical, interior stairway, heating, gas distribution, kitchens and bathrooms). Petitioner also states that the owner failed to demonstrate that the building

2

FV210027RT

was in serious disrepair or substandard condition before starting the renovation. Petitioner asserts that the owner failed to provide sufficient documentation, including contractor records and proof of payment, to prove the alleged work was actually performed. Lastly, petitioner argues that the Rent Administrator's decision did not address the issues raised in the petitioner's response to the application.

The Commissioner, having reviewed the entire evidentiary record, finds that the tenant's petition should be denied. The Rent Administrator correctly determined that the premises was substantially rehabilitated and was exempt from rent regulation.

RSC §2520.11(e) provides that a housing accommodation is exempt from rent stabilization if it has undergone a substantial rehabilitation.

DHCR Operational Bulletin 95-2 outlines the criteria an owner must meet to prove substantial rehabilitation:

A. At least 75% of the building wide and apartment systems must have been completely replaced; and all ceilings, flooring and wall surfaces in common areas must have been replaced; and ceiling, wall and floor surfaces in apartments, if not replaced, must have been made as new. The list of building-wide and apartment systems are:

1. Plumbing
2. Heating
3. Gas supply
4. Electrical wiring
5. Intercoms
6. Windows
7. Roof
8. Elevators
9. Incinerators or waste compactors
10. Fire escapes
11. Interior stairways
12. Kitchens
13. Bathrooms
14. Floors
15. Ceilings and wall surfaces
16. Pointing or exterior surface repair as needed
17. All doors and frames

Limited exceptions to the extent of the rehabilitation work may apply where the owner demonstrates that a particular component of the building or system has recently been installed or ungraded so that it is structurally sound and does not require replacement, or

3

FV210027RT

that the preservation of a particular component is desirable or required by law due to its aesthetic or historical merit.

B. The rehabilitation must have been commenced in a building that was in a substandard or seriously deteriorated condition. The fact that the building was vacant at the time of the rehabilitation is proof that the building was in such condition.

The Operational Bulletin goes on to state that the following documentation will be required by owners in support of a claim for substantial rehabilitation: records demonstrating the scope of the work actually performed which may include an itemized description of replacements and installation; copies of approved building plans; architect's or general contractor's statements; contracts for work performed; appropriate governmental approvals and photographs of conditions before, during and after the work was performed. Proof of payment by the owner for the rehabilitation work may also be required.

The Commissioner finds that the owner's evidence comports with the aforementioned Operational Bulletin and supports the finding of substantial rehabilitation. Petitioner has not set forth any evidence on PAR that warrants reversal of the Rent Administrator's order.

Petitioner's assertion that the owner failed to prove that 75% of the building-wide and apartment systems were replaced is not supported by the evidence. The Commissioner notes that of the seventeen systems listed in the Operational Bulletin, there is no evidence that the building contained an elevator, incinerator or intercoms thereby eliminating these three systems from consideration. Of the remaining fourteen systems, the evidence indicates that eleven systems were replaced or 78.5%. Petitioner acknowledges that seven of the remaining fourteen systems, i.e. plumbing, electrical, interior stairway, heating, gas distribution, kitchens and bathrooms were replaced. There is no evidence that the owner replaced three systems, i.e. the roof, fire escapes or pointing/exterior surface repair. As such, there are four remaining systems (windows, doors/frames, walls/ceilings and floors) to discuss. The engineering plans on file with DOB, when considered in conjunction with the DOB issuance of work permits, the professional affidavits submitted and the new Certificate of Occupancy prove that the premises underwent a gut renovation and that four new apartments were created, including the replacement of windows, doors, walls, ceilings and flooring. The engineering plans on file with DOB also specify the replacement of walls, ceilings and flooring in common areas. The engineer also affirmed that he designed new walls and observed new doors and windows in

4

the new apartments. Petitioner has not produced any evidence in the form of contrary architect or engineer affidavits to rebut the owner's contention that the requisite percentage of building systems were replaced.

The Commissioner notes that work records and proof of payment may be required, but are not mandated under the Operational Bulletin. The Commissioner finds that the owner has produced sufficient documentation to support the substantial rehabilitation, including documents specifically described in DHCR Operational Bulletin 95-2. The DOB records, including the Altered Building Plan, and the affidavits of the architect and engineer demonstrate the scope of the work performed. The owner has also demonstrated that DOB approved the work plans, issued work permits and later approved the work by issuing a new Certificate of Occupancy.

With respect to the condition of the building, the engineer's affidavit states that the building was vacant in 1998 when the work commenced. Such evidence satisfies the Operational Bulletin requirement that the building was in substandard or seriously deteriorated condition at the time the work commenced.

Petitioner's claim that the Rent Administrator failed to address the issues raised in the petitioner's response to the owner's application is without merit. Indeed, the Rent Administrator specifically acknowledged review of petitioner's September 14, 2017 opposition and found that it did not rebut the owner's evidence concerning substantial rehabilitation. Moreover, the Commissioner notes that the condition of the apartment when petitioner took occupancy in January 2016 has no bearing on the substantial rehabilitation which was completed some seventeen years earlier.

**THEREFORE**, in accordance with the relevant Rent Regulatory Laws and Regulations, it is

**ORDERED**, that this petition be, and the same hereby is, denied, and that the Rent Administrator's order be, and the same hereby is, affirmed.

ISSUED:

**JUN 14 2018**

_____

Woody Pascal
Deputy Commissioner

5

FV210027RT

STATE OF NEW YORK
DIVISION OF HOUSING AND COMMUNITY RENEWAL
OFFICE OF RENT ADMINISTRATION
GERTZ PLAZA
92-31 UNION HALL STREET
JAMAICA, NEW YORK 11433

---------------------------------------X

IN THE MATTER OF THE
ADMINISTRATIVE APPEAL OF         :      ADMINISTRATIVE REVIEW
                                       DOCKET NO.: AO410028RT

                                 :

                                 :

                                 :      RENT ADMINISTRATOR'S
LORRAINE ST. PIERRE,                 DOCKET NO.: AN410004RP

               PETITIONER      X

---------------------------------------X

## ORDER AND OPINION DENYING PETITION FOR ADMINISTRATIVE REVIEW

The petitioner timely filed an administrative appeal against an order issued on February 14, 2012 by the Rent Administrator concerning various housing accommodations in the building located at 517 Manhattan Avenue, New York, NY which granted the owner's application for exemption from rent regulation by virtue of substantial rehabilitation.

The Commissioner having reviewed the record herein finds that the petition should be denied.

### Procedural History

The owner commenced this proceeding on or about March 17, 2011, by filing an application to determine whether the building located at 517 Manhattan Avenue, New York, NY was exempt from rent regulation by virtue of substantial rehabilitation in accordance with Rent Stabilization Code 2520.11(e) and DHCR Operational Bulletin 95-2. Petitioner, a tenant in apartment 1, objected to the application. The owner's application was granted by the Rent Administrator on July 28, 2011. Petitioner filed a PAR. On PAR, the Commissioner remanded the matter back to the Rent Administrator to make a specific finding on ceilings, floors and walls in common areas and

AO410028RT                       1

apartments as they pertain to substantial rehabilitation. On remand, the Rent Administrator again granted the application finding that all ceilings, walls and floors in common areas were replaced and in apartments, if not replaced, were made new and also finding that tenants in occupancy before the owner's J-51 tax abatement expired would remain rent stabilized providing they had no notice of the impending expiration. Petitioner filed this PAR.

## Background

The owner purchased the subject premises, at the time a seven single room occupancy and store, in 1981. In 1984, while the premises was vacant, the owner sought to convert it to a five unit, Class A building. The owner hired an architect, Thaddeus Whitley, now deceased, who filed an Altered Building Application and architectural plans with the DOB. The owner also retained Wint Construction Corp., a contractor, to perform the work in accordance with Whitley's plans. DOB issued a work permit on July 6, 1984. Approximately two years later, in August 1986, the work was complete and the DOB issued a new Certificate of Occupancy reflecting conversion of the premises to a five unit building. HPD issued a Certificate of Eligibilty for a J-51 tax abatement for the premises in August 1987 which expired on June 30, 2003. The petitioner took occupancy to her apartment pursuant to a vacancy lease on November 1, 2007.

## The Applicable Law on Substantial Rehabilitation

Rent Stabilization Code section 2520.11(e) provides that a housing accommodation is exempt from rent stabilization if it has undergone a substantial rehabilitation.

DHCR Operational Bulletin 95-2 outlines the criteria an owner must meet to prove substantial rehabilitation:

A. At least 75% of the building wide and apartment systems must have been completely replaced; and all ceilings, flooring and wall surfaces in common areas must have been replaced; and ceiling, wall and floor surfaces in apartments, if not replaced, must have been made as new.

The list of building wide and apartment systems are:

1. Plumbing
2. Heating
3. Gas supply
4. Electrical wiring
5. Intercoms
6. Windows

AO410028RT                           2

        7.   Roof
        8.   Elevators
        9.   Incinerators or waste compactors
       10.   Fire escapes
       11.   Interior stairways
       12.   Kitchens
       13.   Bathrooms
       14.   Floors
       15.   Ceilings and wall surfaces
       16.   Pointing or exterior surface repair as needed
       17.   All doors and frames

Limited exceptions to the extent of the rehabilitation work may apply where the owner demonstrates that a particular component of the building or system has recently been installed or ungraded so that it is structurally sound and does not require replacement, or that the preservation of a particular component is desirable or required by law due to its aesthetic or historical merit.

B. The rehabilitation must have been commenced in a building that was in a substandard or seriously deteriorated condition. The fact that the building was vacant at the time of the rehabilitation is proof that the building was in such condition.

. . .

The following documentation will be required by owners in support of a claim for substantial rehabilitation: records demonstrating the scope of the work actually performed which may include an itemized description of replacements and installation; copies of approved building plans; architect's or general contractor's statements; contracts for work performed; appropriate governmental approvals and photographs of conditions before, during and after the work was performed. Proof of payment by the owner for the rehabilitation work may also be required.

Pursuant to Rent Stabilization Code section 2520.11(o), where the housing accommodation received a J-51 tax abatement as a result of the rehabilitation, tenants in occupancy when the tax abatement expires shall remain stabilized unless they were put on notice of the expiration of the abatement and the impending deregulation.

## Petitioner's Contentions

In her original opposition to the owner's request for destabilization, the petitioner argued that the documents presented by the owner, including the Building Alteration Plan, the Certificate of Occupancy, the Affidavit of Martin Della Paolera and the HPD field inspection for the J-51 tax abatement did not prove

AO410028RT                                    3

substantial rehabilitation. Petitioner pointed out building defects, including: inconsistent hot/cold water; asbestos on plumbing pipes; heating complaints from 2008-10; windows not fitting properly; leaks; mold in the basement; bathtubs not being caulked properly; defective kitchen ceiling in apartment 3; defective sprinklers; problems with light fixtures; and lack of an intercom for her apartment. Petitioner also pointed to DOB boiler records not indicating placement of a new boiler and presented HPD violations to challenge the owner's claim of substantial rehabilitation, including replacement of the roof. Petitioner asserted that she was protected under rent stabilization and that the owner's architects and construction company were not believable.

On this current PAR, petitioner asserts that there is no proof that 75% of the building and apartment systems were replaced or made new and that ceilings, walls and floors both in apartments and common areas were not replaced or made new. Petitioner points again to the lack of supporting evidence presented by the owner and that the Rent Administrator erred in relying upon the owner's documents to grant the application for exemption. Petitioner goes on to suggest that the owner has fraudulently tried to remove her apartment from rent stabilization.

In support of her contentions, petitioner sets forth:
a. an Affidavit of William Mandara, an architect with South Park Consulting LLC;
b. HPD violations issued to the premises spanning 2003-2010;
c. an Affidavit of Evan Lepore, former tenant of apt.3; and
d. written complaints to the landlord about apartment defects, including mold.

## Owner's Contentions

The owner answered the PAR and relies upon its prior documentary submissions which it says are proof of the substantial rehabilitation. According to the owner, the petitioner, without sufficient evidence, alleges a wild conspiracy theory hatched by the owner and its representatives over thirty years earlier to deregulate the building. The owner states that the Commissioner should consider the petitioner's lawsuits and other claims against the owner when judging her motives in this matter. In addressing the petitioner's specific evidence, the owner states that building violations cited years after the substantial rehabilitation was completed prove nothing more than wear and tear over time and do not prove that the building systems were not changed or replaced. The owner acknowledges that while petitioner's apartment may not have had an intercom, it did have a buzzer system and lack of an intercom does not warrant overturning the Rent Administrator's

AO410028RT                                    4

order.  Further, the owner attacks the expert affidavit of William Mandara on two fronts, one that it is not timely and second that it contains deficiencies and contradictions such that it does not warrant overturning the Rent Administrator's order.

## Decision

The Commissioner finds that the evidence supports the Rent Administrator's determination that the owner was entitled to deregulate the building based upon substantial rehabilitation.  The Commissioner further finds that since the petitioner was not a tenant when the owner's J-51 tax exemption expired in 2003, she is not in the protected class of tenants under RSC 2520.11(o) and is not entitled to be rent stabilized.

The Rent Administrator correctly found that there is no time limit for filing an application for exemption based upon substantial rehabilitation.  Therefore, the owner's application, made approximately 25 years after the substantial rehabilitation took place was correctly afforded due consideration by the agency.

In is uncontested that the building was vacant when the rehabilitation work was performed in 1984-1986 and, as such, was in a substandard or seriously deteriorated condition.  As noted in DHCR Operational Bulletin 95-2, the fact that the building was vacant at the time of the rehabilitation is proof that the building was in such condition.

The Commissioner finds that the owner has produced sufficient documentation to support its claim of substantial rehabilitation, including documents specifically described in DHCR Operational Bulletin 95-2.  The Altered Building Plan and architect's drawings demonstrate the scope of the work performed.  The owner has demonstrated that DOB approved the plan, issued a work permit and later approved the work by issuing a new Certificate of Occupancy. The owner has produced a copy of the contract with the general contractor and provided proof of payment for the work.  Since the owner's architect is deceased, the Commissioner finds that it was appropriate for the owner to have had the premises inspected by and offer the opinion of an architect Martin della Paolera to support its application.  The owner also provided an HPD inspection report of the premises for purposes of the J-51 tax abatement.

The Rent Administrator correctly found that the building had 14 of the 17 building wide and apartment systems outlined in DHCR Operational Bulletin 95-2.  It is not contested that there was no elevator, incinerator or fire escape in the building.  Based upon the record evidence, the Rent Administrator properly determined that the building was gut renovated and as a result the owner

AO410028RT                         5

replaced or upgraded 14 of 14 systems and that all ceilings, walls and floors were replaced or made as new. The Building Alteration Plan and architect drawings when considered in conjunction with the DOB issuance of a work permit and new Certificate of Occupancy in 1986 prove that the building underwent gut renovation and conversion to 5 unit apartment housing. Mr. Paolera inspected the premises twice in 2010 and found it had undergone a gut renovation and conversion to 5 unit apartment housing. He found that the renovation work (completed approximately 25 years earlier) included new plumbing; new boiler; new gas services with meters and hot water heaters; new ventilation system; new electrical with 6 new sectional panels; new intercom system for 4 apartments and buzzer for petitioner's ground floor apartment; new windows; new roof with new gutters, leader and skylight; 5 new kitchens with new floors, walls, cabinets and plumbing fixtures; 5 new bathrooms with new floors, walls, cabinets and plumbing fixtures; all flooring in apartments was either replaced or made new; ceilings and walls in common areas were replaced or made new; new doors and frames; new exterior pointing and waterproofing; and finished carpentry in the apartments. According to Mr. Paolera, the gut renovation did not include the interior staircase, front door, fireplace mantels and the brownstone street façade which were preserved for their historical architectural details. Also, the J-51 abatement inspection by HPD confirms the premises was vacant at the commencement of the rehabilitation and that the building underwent replacement of the boiler, doors, electrical systems, flooring, walls, bathrooms, kitchens, intercoms/bells/buzzers, gas piping, plumbing, appliances and windows. Based upon this evidence, the Commissioner finds that the owner has satisfied the requirements of RSC section 2520.11(e) and DHCR Operational Bulletin 95-2.

The petitioner has not submitted sufficient evidence to warrant overturning the Rent Administrator's order. The affidavit of petitioner's expert, William Mandara, will not be considered on PAR because it is new evidence that was not submitted before the Rent Administrator. RSC section 2529.6 mandates that administrative review shall be limited to facts and evidence before the Rent Administrator as raised in the petition unless petitioner establishes said facts and evidence could not reasonably have been offered in the proceeding prior to issuance of the order being appealed. The Commissioner finds that there was no reason for the petitioner not to offer the expert's opinions before the Rent Administrator. The Commissioner notes that the Mr. Mandara did not even inspect the premises until after the Rent Administrator's Order was issued. Petitioner was aware of the opinions of the owner's architect, Mr. Paolera, from the very outset of the proceedings and had three months from April 29, 2011 through July 28, 2011 to present expert evidence to counter Mr. Paolera. See also Charles Birdoff & Co. v. New York State Div. of Housing and

AO410028RT                         6

<u>Community Renewal</u> 204 A.D.2d 630, 612 N.Y.S.2d 418 (2 Dept. 1994)(Commissioner of DHCR could refuse to consider evidence offered for the first time on administrative appeal).

Even assuming the Mandara affidavit should be considered at PAR, the Commissioner finds that it does not rebut a finding of substantial rehabilitation. Mr. Mandara does not specifically address the 14 building/apartment systems as required under the Operational Bulletin. Although he points out present defects in the building, he concludes that his review of construction documents appears to be in accordance with construction drawings. Furthermore, the inspection conducted by Mr. Mandara was incomplete as it focused only on the petitioner's apartment and the entrance vestibule and not the entire premises. Finally, his specific opinion that building plumbing, intercoms and the walls in the basement apartment were not replaced is not enough to overturn the finding of substantial rehabilitation as he has at most pointed to only two systems, less than the required 75% for the owner to qualify for the exemption, and he does not indicate that the basement apartment walls were not made new in 1986.

The Commissioner further finds that petitioner's evidence concerning building violations issued by HPD, mostly between 2007-2010 and over 20 years after the substantial rehabilitation, are not sufficient proof to block the building's deregulation. The Rent Administrator rightly concluded that any instances of disrepair cited by HPD proved nothing more than degrading of systems over time or, in other words, common wear and tear. Likewise, the petitioner's complaints regarding alleged mold and other conditions in her apartment as well as the complaints of a former tenant, Evan Lepore, prove nothing more than presently existing defects. Current building conditions, or even those dating back a few years, are insufficient to prove that the owner did not complete substantial rehabilitation in 1986.

The Commissioner finds no credence to petitioner's claim of fraud. The substantial rehabilitation took place 20 years prior to the petitioner's tenancy and has been supported by convincing evidence. There is simply no credible proof of any scheme between the owner and its agents to illegally deregulate the building.

The Commissioner finds that petitioner, who took occupancy in November 2007, is not afforded the protection of RSC section 2520.11(o) because she was not a tenant at the time of the expiration of the J-51 tax abatement on June 30, 2003. As such, there is no barrier to the deregulation of her apartment.

With respect to petitioner's request for treble damages on her overcharge claim and the requested abatement of mold and other

AO410028RT                                  7

violations, the Commissioner will defer to the Rent Administrator and agencies or Courts who have the proper jurisdiction to decide those matters.

**THEREFORE**, in accordance with the relevant Rent Regulatory Laws and Regulations, it is

**ORDERED**, that this petition be, and the same hereby is, denied, and that the Rent Administrator's order be, and the same hereby is, affirmed.

**ISSUED:**   JUL 31 2014

**Woody Pascal**
**Deputy Commissioner**

AO410028RT                                                8

STATE OF NEW YORK
DIVISION OF HOUSING AND COMMUNITY RENEWAL
OFFICE OF RENT ADMINISTRATION
GERTZ PLAZA
92-31 UNION HALL STREET
JAMAICA, NEW YORK 11433

------------------------------------x
                   :

IN THE MATTER OF THE ADMINISTRATIVE :
APPEAL OF                 : ADMINISTRATIVE REVIEW
                   : DOCKET NO.: XJ210022RT
                   :

                   : RENT ADMINISTRATOR'S
VARIOUS TENANTS OF 505 LAFAYETTE  : DOCKET NO.: WE210002UC
        AVENUE           :

                   : OWNER: LAFAYETTE PLAZA,
                   :        LLC.
         PETITIONER(S)     :
                   :

------------------------------------x

## ORDER AND OPINION DENYING PETITION FOR ADMINISTRATIVE REVIEW

Various tenants of 505 Lafayette Avenue, Brooklyn, New York, filed a Petition for Administrative Review (PAR) against an Order issued by a Rent Administrator on September 14, 2009 concerning the housing accommodations known as 505 Lafayette Avenue, Brooklyn, New York; various apartments, wherein the Rent Administrator determined that the owner had satisfied the criteria set out under Rent Stabilization Code (RSC) Section 2520.11(e) and DHCR's Operational Bulletin 95-2 (OB95-2) and found that the work completed on and within the subject building constitutes a completed substantial rehabilitation qualifying the subject building for exemption from rent regulation thereby removing the subject building from the jurisdiction of this Agency.

Several tenants of the subject building filed individual PARs, more fully set out below, to supplement the collective PAR filed by fifteen of the building's tenants. In substance, the collective PAR repeats many of the objections raised by the tenants before the Rent Administrator citing the following alleged reviewable errors, in part:

   the owner failed to complete a substantial rehabilitation;

   the Rent Administrator erred by granting the owner's application based on "illegal construction"; and

   the owner presented inadequate evidence.

The tenant of apartment 1A, Patricia Fosen, additionally submits, in part, that the "entire interior of the building" was not

"gutted and replaced" and that the first floor foyer "retains its original marble walls from the last century." The hallway floor tiles on the first through fourth floors were never replaced but were "patched" in places. The staircases and banisters are "original" from the "last century" and are in "disrepair." The owner did not "replace the roof" and complained that it was in such disrepair that it leaks down from the fourth floor to her apartment on the first floor. Ms. Fosen maintains that her bathroom was never renovated and that the plumbing is "fatigued" and in "constant need of repair." She further submits that the owner introduced "bogus" plans stating that her apartment was a "one bedroom" unit when, in fact, it consisted on a "kitchen, partial bathroom and living room." The tenant also complains that the owner misrepresented that it converted an 8 unit building to a 16 unit building.[1]

The tenants of apartments 3A, 3B, 3C, 3D and 4A also filed separate supplementary PARs echoing, in substance, Ms. Fosen's complaints including an allegation that the owner failed to provide "essential services" such as heat and hot water. The tenant in apartment 3D also argues that the plumbing has not been upgraded and, for the first time on appeal, that the intercom is hanging from her apartment wall exposing the wiring.

In response to the tenants' PAR, the owner's representative, relies, in substance, on certain "indisputable facts." The owner argues that the record supports the fact that the subject building was "vacant and uninhabitable" at the time the current owner took title to the subject building in January 2001 and that the only reason the subject building is "currently habitable" is due to the rehabilitation work performed by the current owner during the years 2001 to 2003. The owner further argues that the only issue to be determined on appeal is whether or not the rehabilitative work performed by the current owner "rises to the level of Substantial Rehabilitation as delineated in DHCR Operational Bulletin 95-2."

The Commissioner has reviewed all of the evidence in the record and has carefully considered that portion of the record relative to the issues raised in the petition and is of the opinion that the petition should be denied.

The Commissioner finds that the threshold issue to be determined in this appeal is whether the subject building has been substantially rehabilitated within the meaning of the RSC.

The Commissioner further finds that there is no statute of limitations for an owner to file for deregulation under the

---

[1] The Commissioner notes that this allegation has merit and the owner's representative admits that the subject building always consisted of 16 units.

provisions of RSC Section 2520.11(e) in conjunction with OB95-2 for housing accommodations in buildings substantially rehabilitated as family units on or after January 1, 1974.

RSC Section 2520.11(e) exempts from regulation housing accommodations in buildings completed or substantially rehabilitated as family units on or after January 1, 1974. OB95-2 sets forth the circumstances under which the Agency will find that a building has been substantially rehabilitated within the meaning of RSC Section 2520.11(e). The relevant criteria require that at least 75% of the building-wide and apartment systems listed therein must have been completely replaced with new systems. All ceilings, wall and floor surfaces in common areas must have been replaced; and ceiling, wall and floor surfaces in apartments, if not replaced, must have been made as new. Additionally, the rehabilitation must have ·been commenced in a building that was in a substandard or seriously deteriorated condition; all building systems must comply with all applicable building codes and requirements; the owner must submit copies of the building's certificates of occupancy before and after the rehabilitation; and the rehabilitation must be consistent with the goal of encouraging the creation of new or rehabilitated housing.

Where rehabilitation was commenced in a building that was at least 80% vacant of residential tenants, there shall be a presumption that the building was substandard or seriously deteriorated. The underlying record shows that in February 1994, the New York City Department of Buildings (DOB) deemed the subject building "vacant, open and unguarded" as a result of a building fire in November 1993. During the same month and year, the DOB declared the building abandoned and structurally unsafe.

The tenant of apartment 1A provided supporting evidence supplementing the owner's argument that the subject building was in a "substandard" condition prior to renovation and rehabilitation. Such evidence included a printout purporting to show several New York City Administrative Code (Code) violations against the subject building recorded with the New York City Department of Housing Preservation and Development (HPD). In August 2000, the then occupant of apartment 2B reported a "nuisance" consisting of "rodents and rats" in the kitchen. In September 2000, a Code violation described the premises as "vacant and untenanted except for [a] caretaker for 60 days or more, and cannot be reoccupied until a new certificate of occupancy has been obtained. premises [sic] have been vacant since 5/13/2000."

It is not disputed that the subject premises, a four story walk-up, consisted of 16 apartment units in the year 2000 and continued to consist of 16 units following the period of rehabilitation which commenced after the current owner took title

from the prior owner in January 2001. Whether or not the building housed a caretaker and/or an occupant in apartment 2B in the year 2000, the underlying record supports the owner's contention that at least 80% of the subject building was vacant giving rise to the presumption that the building was "substandard or seriously deteriorated" prior to rehabilitation. The record further shows that the renovation period preceded the occupancy of the subject tenants herein.

Of the 17 building-wide and apartment systems listed in OB95-2, only 15 such systems need be addressed as the subject building does not have an elevator and/or incinerator/waste compactor. To meet the 75% threshold, 12 of the existing 15 systems had to be either completely replaced or recently updated so as to not require replacement.

The owner has the burden of establishing deregulation based upon a substantial rehabilitation. The Commissioner finds that the evidence in the record reveals that the requirements for exemption based upon a substantial rehabilitation have been met and the work done was in compliance with the applicable building codes as evidenced by a letter of completion issued by the DOB on March 22, 2004 relative to the work associated with Job No. 301153230 in accordance with an application by the owner's professional engineer, Bernard Dinunzio. The engineer's application was for an approval for "alterations type 2" as well as accompanying work permits. DOB records disclose that Job No. 301153230 covered the following 8 building-wide systems: plumbing, gas supply, heating, windows, doors, fire escapes and the interior renovation of the existing building. The DOB concluded that based on the nature of the work filed with this application, a new certificate of occupancy was not required.

The owner also submitted a contract and proposal from Moishe's Construction Inc., the contractor who did the rehabilitation work. According to this document, the contractor installed new kitchens and bathrooms, "electricity as per New York City Law," plumbing, including gas supply, heating units and hot water tanks, metal fireproof apartment doors, sheetrock on ceilings and walls, oak flooring, and windows in each unit. The owner also submitted the general contractor's affidavit dated March 18, 2009 stating that all of these systems were completed in compliance with the NYC building codes and copies of payments associated with said work made by the owner to the general contractor and several subcontractors appear in the underlying record totaling $566,900.00. This evidence establishes that the owner satisfied the requirements to replace 75% of the systems.

In the underlying proceeding, the tenants occupying apartments 1A, 2A, 2B, 2D, 3A, 3C and 3D independently opposed the owner's application for deregulation based upon a substantial rehabilitation. A common theme among all the opposing tenants was

the lack of maintenance and repair of many of the building-wide and apartment systems listed in OB95-2, especially the roof with its history of leaking and the persistent lack of heat and hot water. The implication is that if a substantial rehabilitation had indeed been completed, it is not evident by the current conditions existing throughout the building. While the tenants' complaints may be indicative of a need for repairs, they do not establish that the work the owner claims to have done in 2001-2002 was not actually completed. The Commissioner finds that the tenants may refer such complaints to the particular municipal agency having jurisdiction over such matters or bring an action in a court of competent jurisdiction. Accordingly, the Commissioner accepts the Rent Administrator's finding that the arguments brought forth by the tenants "do not negate the finding of a completed substantial rehabilitation."

THEREFORE, in accordance with the provisions of the Rent Stabilization Law and Code, it is

ORDERED, that this Petition for Administrative Review be, and the same hereby is denied and, the Order of the Rent Administrator be, and the same hereby is, affirmed.

ISSUED: **MAY 0 7 2010**

LESLIE TORRES
Deputy Commissioner

5

(10)

#33446

STATE OF NEW YORK
DIVISION OF HOUSING AND COMMUNITY RENEWAL
OFFICE OF RENT ADMINISTRATION
GERTZ PLAZA
92-31 UNION HALL STREET
JAMAICA, NEW YORK 11433

---------------------------------------X

IN THE MATTER OF THE
ADMINISTRATIVE APPEAL OF

ZG COURT LLC,

ADMINISTRATIVE REVIEW
DOCKET NO.: MQ210009RO

RENT ADMINISTRATOR'S
DOCKET NO.: LS210001UC

TENANTS: VARIOUS

----------------- PETITIONER ------X

## ORDER AND OPINION GRANTING PETITION FOR ADMINISTRATIVE REVIEW

The petitioner - owner timely filed an administrative appeal (PAR) against an order issued on April 18, 2024 by the Rent Administrator (RA) concerning various housing accommodations in the building located at 449 Court Street, Brooklyn, NY which denied petitioner's application for exemption from rent regulation based on a substantial rehabilitation.

The owner commenced this proceeding on July 5, 2023 by filing an application to determine whether the building located at 449 Court Street, Brooklyn, NY was exempt from rent regulation based on a substantial rehabilitation in accordance with Rent Stabilization Code (RSC) §2520.11(e) and DHCR Operational Bulletin 95-2.

The owner submitted a deed indicating it purchased the premises on January 19, 2022. The owner stated that the renovations began on April 29, 2022 and ended on February 1, 2023. The owner stated five out of the six apartments were vacant when it purchased the premises and that it reached a buyout agreement with the sixth tenant prior to commencement of the work. The owner asserted that the premises was vacant at the outset of the work which satisfies the presumption of substandard condition and also

1

MQ210009RO

that said condition is supported by expert opinion in the form of a pre-construction architects' affidavit as well as pre-renovation photographs. The owner asserted that the work was to combine 6 apartments into 3 (one on each floor) and according to the architect's opinion involved replacement of 13 out of 15 existing building systems to qualify as a substantial rehabilitation. The owner annexed a construction contract, proof of payment to the contractor for $450,000, pre and post work architect affidavits, architectural plans, pre and post work photographs, seven Department of Building (DOB) permits, cost affidavits, and Letters of Completion from the DOB.

The RA denied the owner's application finding that the owner did not establish that the building was substandard or seriously deteriorated in accordance with DHCR Operational Bulletin 2023-3; that the building was occupied just prior to the commencement of the renovation; that the owner failed to explain how the building became vacant; that the owner failed to prove that 75% of the building-wide and apartment systems (including common areas) were replaced; that full scale architectural plans were requested and not submitted and that work contracts, proof of payment and cost affidavits were requested and not submitted.

On PAR, the owner asserts that the RA incorrectly applied the recent rent law amendments of November 8, 2023 and the newly amended Operational Bulletin to work that commenced before their enactment; that Operational Bulletin 95-2 governs this case; that the owner was entitled to a presumption of substandard condition when it proved that the building was 100% vacant prior to the work; that in addition to the vacancy rate, the owner also submitted an expert affidavit and photographs to prove the substandard condition of the building; that the RA improperly created a new standard by denying the application because apartments were "occupied just prior to the work"; that the owner did in fact submit work contracts, cost affidavits and proof of payment; that the evidence submitted proves that 75% of the building-wide and apartment systems, including the common areas, were rehabilitated; and that the exemption application should have been granted.

The Commissioner agrees with the owner's contentions and grants the PAR.

RSC amendments promulgated in November 2023 eliminated the presumption of substandard or seriously deteriorated condition when

2

MQ210009RO

a building was 80% vacant of tenants.  Operational Bulletin 2023-3 published on November 21, 2023 replaced Operational Bulletin 95-2 and likewise eliminated the vacancy presumption leaving owners with actually having to prove that the premises was substandard or seriously deteriorated even if no tenants were living there when the renovations commenced.

According to the evidence in this case, the substantial rehabilitation work took place between April 2022 and February 2023.  The Commissioner finds that said work and the owner's application for exemption must be governed by the pre-amendment version of RSC §2520.11(e) and Operational Bulletin 95-2. Therefore, the presumption of substandard or seriously deteriorated condition provided when a building was 80% vacant of tenants applies to this case.  The RA erred in retroactively applying the rent law amendments of November 2023 and Operational Bulletin 2023-3 to the owner's substantial rehabilitation application.

The Commissioner finds that the owner set forth evidence that the building was 83.3% vacant upon its purchase with five out of six apartments being vacant and then was 100% vacant prior to the renovations.  The fact that the last vacancy was secured via a buyout agreement does not preclude the substantial rehabilitation because the owner had already achieved the 80% vacancy rate before said buyout.  The owner also submitted sufficient evidence in the form of photographs and a pre-work expert affidavit that the condition of the building was substandard and seriously deteriorated.

The Commissioner finds that the RA had no justification for denying the application based on the fact that the "building was occupied just prior to the commencement of the renovation."  No such standard exists under the law.

DHCR Operational Bulletin 95-2, in relevant part, outlines the criteria an owner must meet to prove substantial rehabilitation as follows:

> At least 75% of the building wide and apartment systems must have been completely replaced; and all ceilings, flooring and wall surfaces in common areas must have been replaced; and ceiling, wall and floor surfaces in apartments, if not replaced, must have been made as new. The list of building-wide and apartment systems are:

MQ210009RO

1. Plumbing
2. Heating
3. Gas supply
4. Electrical wiring
5. Intercoms
6. Windows
7. Roof
8. Elevators
9. Incinerators or waste compactors
10. Fire escapes
11. Interior stairways
12. Kitchens
13. Bathrooms
14. Floors
15. Ceilings and wall surfaces
16. Pointing or exterior surface repair as needed
17. All doors and frames

Limited exceptions to the extent of the rehabilitation work may apply where the owner demonstrates that a particular component of the building or system has recently been installed or upgraded so that it is structurally sound and does not require replacement, or that the preservation of a particular component is desirable or required by law due to its aesthetic or historical merit.

Operational Bulletin 95-2 goes on to state that the following documentation will be required by owners in support of a claim for substantial rehabilitation: records demonstrating the scope of the work actually performed which may include an itemized description of replacements and installation; copies of approved building plans; architect's or general contractor's statements; contracts for work performed; appropriate governmental approvals and photographs of conditions before, during and after the work was performed. Proof of payment by the owner for the rehabilitation work may also be required.

The Commissioner finds that the owner has produced sufficient documentation to support its claim of substantial rehabilitation, including documents specifically described in DHCR Operational Bulletin 95-2. The owner has produced DOB permits under seven job numbers, Letters of Completion by the DOB for the specific jobs; cost affidavits, construction contract, proof of payment, architectural plans, before and after photographs and pre-work and post-work expert affidavits from Vincente Varela, a licensed

MQ210009RO

architect. Mr. Varela's affidavit demonstrates the scope of the work performed. He affirms that two systems, elevators and incinerators, were not present in the building. Mr. Varela established that 12 of the 15 building-wide and apartment systems or 80% of the systems were replaced with new systems, including plumbing, heating, gas services, electrical, intercoms, windows, doors and frames, interior stairway, kitchens, bathrooms and that all walls, floors and ceilings in the apartments and common areas were replaced. Mr. Varela's affidavit states that the roof was patched, fire escapes were scraped and painted, and that pointing/exterior repair was not performed. The Commissioner finds that these three systems must therefore be excluded. In addition to proving that 80% of the systems were replaced, the owner demonstrated that it obtained required DOB permits for plumbing, electrical, gas lines and general construction and that DOB signed off on the completion of all work associated with the permits. The Commissioner finds that the owner therefore satisfied all requirements of Operational Bulletin 95-2 for a substantial rehabilitation. The lack of enlarged architectural plans, by itself, is not enough to deny the owner's application based on the other evidence in the file.

Based on the foregoing, the Commissioner grants the owner's application and finds that the premises is exempt from rent regulation based on a substantial rehabilitation completed in February 2023.

**THEREFORE**, in accordance with the relevant Rent Regulatory Laws and Regulations and Operational Bulletin 95-2, it is

**ORDERED**, that this petition be, and the same hereby is, granted, and that the RA's order be, and the same hereby is, revoked.

ISSUED:
OCT 08 2024

Woody Pascal
Deputy Commissioner

5

MQ210009RO