**Office of the New York State Attorney General**

**Letitia James Attorney General**

August 24, 2026

**By ECF**
Honorable Vera Scanlon
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Balanced Housing Solutions v. Visnauskas*, EDNY No. 25-cv-6574 (DG) (VMS)

Dear Judge Scanlon:

This Office represents Defendant RuthAnne Visnauskas, Commissioner of the NYS Division of Housing and Community Renewal ("DHCR"). In accordance with Rule III(b) of the Court's Individual Practices, DHCR requests that the Court issue a protective order to prevent the future unauthorized disclosures by Woody Pascal, a former Deputy Commissioner of DHCR's Office of Rent Administration (and an expert retained by Plaintiffs). Specifically, DHCR seeks an order barring Pascal from disclosing (1) DHCR's internal deliberative process privilege protected deliberations; (2) confidential attorney-client communications Pascal was privy to; and (3) work product protected information that Pascal possesses about DHCR's investigation into Plaintiffs.

This protective order is necessary because, as is evident from the declarations filed in this matter (ECF No. 28-1, as amended ECF No. 33-1), Pascal has already disclosed privileged information belonging to DHCR, and in light of his exposure and access to privileged information, there is substantial risk that he will continue to do so in the future absent an order from this Court.

## I. Factual and Procedural Background

Plaintiffs, a group of real estate investors and owners commenced this action seeking to enjoin a state enforcement action brought by DHCR (and the New York State Attorney General ("OAG")). At issue in the state action is the rent-stabilization status of 157 apartments which Plaintiffs own and which they claim were deregulated under the substantial rehabilitation exemption to the State's rent-stabilization laws. In this court, Plaintiffs claim that DHCR's enforcement action seeks to retroactively apply new exemption requirements, constitutes a regulatory taking as applied to them, and violates their rights to due process and equal protection.

On July 2, 2026, the parties jointly requested an agreed-upon briefing schedule for DHCR's motion to dismiss, and submitted their respective proposals for a discovery schedule. ECF No. 27. On July 7, 2026, Plaintiffs filed a letter purporting to "explain the basis for [their] requested schedule" (ECF No. 28 at 1), and attached to that letter a declaration signed by Pascal. On July 8, 2026, DHCR objected to Plaintiffs' letter on the grounds that, among other things, the Pascal

declaration contained privileged information belonging to DHCR that Pascal was not authorized to disclose. ECF No. 30. On July 9, 2026, the Court temporarily sealed the Pascal declaration.

In his declaration, Pascal states that he has been retained as a "compensated expert witness" by Plaintiffs in connection with the state enforcement action. ECF No. 33-1 ¶ 8. His declaration then describes an internal meeting with DHCR officials, including a number of DHCR attorneys (Sheldon Melnitsky, Mark Palomino, and Pavita Krishnaswamy), wherein DHCR officials discussed a purported change in how DHCR administers the substantial rehabilitation exemption. *Id.* at ¶¶ 44-51. Pascal states in the declaration that he expressed his opinions about potential issues with the proposal, states that "others" at DHCR shared his concerns, and claims that DHCR altered an aspect of the proposal to "accommodate" his concerns. *Id.* ¶¶ 46, 49, 51. Pascal further alludes to the opinions of DHCR attorneys about issues he raised at the meeting. *Id.* ¶¶ 49, 51. Pascal further states in his declaration that he had access to other privileged and confidential information while working at DHCR. For example, Pascal states that he learned about the substantial rehabilitation exemption and its workings "through discussions with . . . lawyers within DHCR." *Id.* at ¶ 11. He also attests that prior to leaving DHCR, he "was apprised" of the investigation into Peak (the lead plaintiff in this action)—the subject of the pending state enforcement action that Plaintiffs are seeking to enjoin. *Id.* ¶ 56.

The parties met and conferred telephonically about DHCR's privilege concerns raised by the Pascal declaration. DHCR identified the specific portions of the Pascal declaration protected by deliberative process privilege and attorney-client privilege (i.e., paragraphs 44-51 of the Pascal declaration). Plaintiffs disagreed that the portions DHCR identified were privileged (ECF No. 37 at 1 n.2), but revised the Pascal declaration to remove the language DHCR identified to narrow the disputes between the parties. DHCR's position is that the revisions removed privileged content within the four corners of the Pascal declaration, but did not address its broader concerns about the unauthorized disclosure and use of privileged information belonging to DHCR. DHCR also objects to the filing of the declaration, for the reasons explained in its opposition. *See* ECF No. 38.

The parties also conferred about DHCR's request for a prospective order to protect against Pascal's future unauthorized disclosures of privileged information. Plaintiffs' counsel denied that Pascal had disclosed any privileged information but offered a stipulation governing prospective disclosures. However, because the meet-and-confer made clear that the parties have materially different views of what constitutes privileged information, and because of DHCR's concerns that Pascal will continue to reveal additional privileged information in his possession, DHCR does not believe that any stipulation between the parties will be adequate to protect against future unauthorized disclosures of privileged information belonging to DHCR. Rather, the prospective protective order sought here is necessary because, as explained in greater detail in the accompanying Declaration of Anthony Tatano at ¶¶ 17-25, dated August 24, 2026, the harms to DHCR resulting from Pascal's unauthorized use of privileged information belonging to DHCR are serious and cannot be adequately remedied merely by after-the-fact revisions to the declaration.

## II. The Court Should Issue a Protective Order to Prevent Future Unauthorized Disclosures of Privileged and Confidential Information in Pascal's Possession

District courts have broad discretion under Rule 26(c) to fashion an appropriate order to protect the disclosure of privileged information. *See Dorsett v. Cnty. of Nassau*, 800 F. Supp. 2d

453, 457 (E.D.N.Y. 2011), *aff'd sub nom. Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156 (2d Cir. 2013). Courts have recognized that "a protective order may issue upon a showing that former employees were privy to privileged information" to prevent the prospective disclosures of such information during *ex parte* interactions. *See, e.g.*, *G-I Holdings, Inc. v. Baron & Budd*, 199 F.R.D. 529, 533-34 (S.D.N.Y. 2001); *Polycast Tech. Corp. v. Uniroyal, Inc.*, 129 F.R.D. 621, 628 (S.D.N.Y. 1990). Here, that Pascal is in possession of several distinct categories of confidential and privileged information belonging to DHCR, his former employer, is plain from the face of his declaration. *See, e.g.*, *Lawrence v. Suffolk County*, 2022 WL 855380, *10 (E.D.N.Y. Mar. 23, 2022) (deliberative process privilege "belongs to the government" and "is the agency's to assert—not the employee's"); *In re Grand Jury Investigation*, 399 F.3d 527, 534 (2d Cir. 2005) (individual employees cannot waive the attorney-client privilege belonging to the government agency). The Court should thus issue a protective order preventing the unauthorized disclosures of any privileged information in Pascal's possession. *See G-I Holdings*, 199 F.R.D. at 533-35.

**A. Deliberative Process Privilege**

First, Pascal's description of DHCR's internal deliberations about a purported change in agency procedures falls squarely under the deliberative process privilege. ECF No. 33-1 ¶¶ 44-51. The privilege protects the decision-making processes of executive agencies and shields from disclosure information "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *Natural Res. Def. Council v. United States Env't Prot. Agency*, 19 F.4th 177, 184 (2d Cir. 2021). The privilege encourages "candor, which improves agency decisionmaking, by blunting the chilling effect that accompanies the prospect of disclosure." *Id.* (cleaned up). To be protected, the communication must be "predecisional," *i.e.*, it must predate the "consummation of the agency's decisionmaking process," and "deliberative," *i.e.*, it must bear "on the formulation or exercise of [the agency's] policy-oriented judgment." *Id.* at 184-85 (cleaned up). Applying this privilege, courts have shielded information reflecting proposals and suggestions of agency staff raised during the decisionmaking process, *Hopkins v. H.U.D.*, 929 F.2d 81, 84 (2d Cir. 1991), and documents and information "which reflect the personal opinions of the writer rather than the policy of the agency," *Grand Central P'ship, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999).

Pascal's declaration makes clear that he has already engaged in the unauthorized disclosure of privileged information concerning DHCR's predecisional deliberations to Plaintiffs. ECF No. 33-1 ¶¶ 44-51. His declaration describes DHCR officials' proposals (*id.* ¶ 45) and disagreements (*id.* ¶ 46) discussed prior to DHCR's decisionmaking. Pascal's own sworn statements make clear that these discussions were predecisional, as he claims that DHCR purportedly altered the proposal to "accommodate" his expressed views (*id.* ¶ 51). As set forth in the Tatano Declaration, the types of communications described in the Pascal declaration are the prototypical communications protected by the deliberative process privilege asserted by DHCR. *See* Tatano Decl. ¶¶ 23-25. Furthermore, it is evident from Pascal's declaration, and his past role as a high-ranking DHCR official (ECF No. 33-1 ¶¶ 5-6) that he was exposed to many other internal discussions within DHCR about agency procedures and policies that would be similarly protected by the deliberative process privilege. *See, e.g.*, *id.* ¶¶ 40 (discussing "new or changed regulations"), 41 (referencing his attempts to influence how DHCR purportedly administered the rent-stabilization laws); *G-I Holdings*, 199 F.R.D. at 534-35 (concluding based on employee's role that "there was little doubt" the former employee was "exposed to privileged information during the course of their work").

Under the circumstances presented here, the risk of Pascal's future unauthorized disclosures of privileged information—whether intentional or inadvertent—is substantial in light of what Pascal has already disclosed and Plaintiffs' counsel's insistence that nothing in the declaration implicated any privilege. *See, e.g.*, *MMR/Wallace Power & Indus., Inc. v. Thames Assocs.,* 764 F. Supp. 712, 726 (D. Conn. 1991) (attorney's claim that no privileged information was revealed during *ex parte* interview with adversary's former employee with extensive exposure to such information "rings hollow ... in light of former employee's own admissions that, as a lay person, he did not know what information or communications were protected by … privilege"). A protective order is thus warranted to protect DHCR's confidential predecisional deliberations.[1]

**B. The Attorney-Client Privilege**

Second, although the declaration itself was carefully worded to avoid directly disclosing attorney-client communications in the meeting Pascal describes (ECF No. 33 ¶ 49), Pascal's declaration nonetheless makes clear that he had ample exposure to confidential attorney-client communications with DHCR attorneys over the course of his time at DHCR concerning the substantial rehabilitation exemption—the subject of this action. *See, e.g.*, ECF No. 33 at ¶¶ 11-12 (citing discussions with DHCR attorneys), ¶ 39 (referencing DHCR legal staff's involvement in aspects of his work). The Tatano Declaration likewise confirms that Pascal had access to confidential and privileged legal communications concerning the oversight of the adjudication of rent disputes, including disputes about owner exemption claims. Tatano Decl. ¶ 7. These facts are sufficient to warrant a prospective protective order prohibiting Pascal from further disclosing privileged communications between him or DHCR attorneys, or other privileged communications between others at DHCR and DHCR attorneys which Pascal was privy to, given his prior disclosure of other privileged discussions. *See also Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 417 (S.D.N.Y. 2011) (issuing prospective protective order to employee).

**C. Confidential Information Concerning DHCR's Investigation of Plaintiffs**

Additionally, Pascal's claim that he "was apprised" of the investigation of Plaintiffs (ECF No. 33-1 ¶ 56) that is the subject of the pending state enforcement action that Plaintiffs are seeking to enjoin raises the serious risk that Pascal possesses information about DHCR's "highly sensitive attorney work product," consisting of legal theories and strategies in the underlying state action. *See Simmions v. Pierless Fish Corp.*, 592 F. Supp. 3d 68, 76-77 (E.D.N.Y. 2020) (opinions and theories and litigation strategies of adversary are highly confidential). Pascal's admission that he received information about the investigation into Plaintiffs warrants a preventative protective order prohibiting him from disclosing any such information he learned of about the state investigation.

[1] Though the deliberative process privilege is not absolute and may be overcome upon a showing of need, *see, e.g.*, *Rodriguez v. Pataki*, 280 F.Supp.2d 89 (S.D.N.Y. 2003), a protective order is necessary now. The determination of whether a protective order should issue to prohibit prospective disclosures by former employees depends on whether the former employee likely possesses privileged information, *see G-I Holdings*, 199 F.R.D. at 534-35—and not on the distinct question of whether that privilege, once established, may be overcome by a showing of need by the party seeking the information. Pascal has already made unauthorized disclosures of privileged information to Plaintiffs' counsel, and these disclosures occurred (first to Plaintiffs' counsel, who then publicly filed the information) without conferring with DHCR, and without any showing—let alone a judicial determination—that the privilege should yield.

Respectfully submitted,

/s/ Linda Fang
LINDA FANG
Special Litigation Counsel
212-416-8580

cc: All Counsel of Record (By ECF)