UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BALANCED HOUSING SOLUTIONS, et al.<br><br>Plaintiffs,<br><br>v.<br><br>RUTHANNE VISNAUSKAS, in her official capacity as Commissioner of the New York State Division of Housing and Community Renewal,<br><br>Defendant. | No. 25-cv-6574 (DG)(VMS)<br><br>**DECLARATION OF ANTHONY TATANO IN SUPPORT OF DEFENDANT'S ASSERTION OF THE DELIBERATIVE PROCESS PRIVILEGE** |

Anthony Tatano, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury as follows:

1. I am the Deputy Commissioner for the Office of Rent Administration ("ORA") of the New York State Division of Housing and Community Renewal ("DHCR"). I have served in various positions in ORA since 1989. DHCR's Commissioner, RuthAnne Visnauskas, is named as the defendant in the above-captioned action, in her official capacity only.

2. I submit this declaration in support of DHCR's assertion of the deliberative process privilege over certain portions of the Declaration of Woody Pascal, dated July 6, 2026, filed at ECF No. 28-1, and, as amended, at ECF No. 33 ("Pascal Declaration")[1], and over other disclosures of similarly privileged information that Mr. Pascal may have made or will make in connection with this litigation and that were learned as a result of his past employment with DHCR. I have been designated by Commissioner Visnauskas to assert the deliberative process privilege on her, and DHCR's, behalf.

[1] All references herein are to the original Pascal Declaration filed as ECF No. 28-1 on the docket of this case. I understand that the Court ordered the declaration temporarily sealed, pending DHCR's assertions of privilege.

**Background of Declarant**

3. DHCR is a component part of New York State Homes and Community Renewal ("HCR"), a consortium of State agencies under the aegis of Commissioner Visnauskas responsible for the supervision, maintenance, and development of affordable housing in New York State. HCR oversees and regulates publicly assisted housing; administers and enforces the State's rent regulations; and administers housing development and community renewal programs, including State and federal grants and loans to housing developers to finance construction and renovation of affordable housing.

4. As DHCR's Deputy Commissioner for ORA, I oversee all aspects of ORA's operation, and I report to HCR's Executive Deputy Commissioner Betsy Mallow. The ORA oversees rent regulation, including investigating complaints about rent overcharges, maintenance of services issues, and lease renewals. ORA oversees registration of rent-stabilized apartments, provides information regarding legal rent increases and lease renewal requirements and assures the implementation of appropriate remedies set forth by law for both tenants and property owners.

5. I have been employed at ORA since 1989 in various titles: as a Rent Examiner, Rent Program Specialist, Deputy Bureau Chief, Bureau Chief, Assistant Commissioner, and now Deputy Commissioner. I am knowledgeable about the laws, regulations, and policies governing rent-stabilized housing in New York State. I have been involved in matters involving all aspects of ORA's responsibility with respect to the administration of the Rent Stabilization Law ("RSL") and the RSL's parallel statute, the Emergency Tenant Protection Act ("ETPA"). This responsibility includes processing tenant-initiated applications such as rent overcharges and denial of service complaints as well as owner-initiated applications involving major capital improvement increases,

the substantial rehabilitation exemption[2] and other assessments of exemption from the RSL. I am regularly and directly involved in making these decisions and interacting with ORA and HCR staff on these issues.

6. I am the successor in the Deputy Commissioner position to Mr. Pascal and assumed this position in March, 2025. I am therefore in a unique position to assert the deliberative process privilege with respect to the Pascal Declaration and to discuss its impact on the ongoing operations of ORA and its administration of the RSL. I currently supervise all matters that Mr. Pascal mentioned in the Pascal Declaration as his former responsibilities, and I was involved in many of them prior to his exit when I worked with him as Assistant Commissioner.

7. Neither Mr. Pascal nor I are attorneys. In performing my current job functions, I consult when necessary with counsel within ORA and DHCR's Office of Legal Affairs ("OLA") for legal advice about the proper processing and adjudication of applications concerning rent increases and exemptions from the RSL, including those involving the substantial rehabilitation exemption. In my current role—the same one that Mr. Pascal held prior to his departure from DHCR—I am regularly exposed and have access to confidential and privileged attorney-client communications between DHCR program staff like myself and attorneys from DHCR's OLA and ORA, as well as privileged and confidential information concerning DHCR's pre-decisional deliberations and discussions about agency policy, procedures and regulations. Mr. Pascal had the same access to such privileged and confidential information belonging to DHCR when he served as Deputy Commissioner.

[2] DHCR has never had a "substantial rehabilitation program" and I am not aware of any such program ever existing.

8. I have personally reviewed the Pascal Declaration, and am familiar with the facts surrounding this litigation.

**Deliberative Process and Attorney Client Privilege**

9. DHCR considers the confidentiality of its internal, confidential, and policy-making documents and communications to be a matter of great importance, including communications reflecting candid discussion of ideas within DHCR by DHCR officials.

10. When considering matters related to DHCR's administration of the State's rent regulations, including but not limited to the review of significant issues in administrative proceedings and litigation, as well as the formulation of internal policies and procedures, DHCR typically convenes meetings with DHCR officials and attorneys knowledgeable about the particular regulations, policies, procedures, and/or guidance to discuss concerns and recommendations.

11. These meetings are often attended by senior and staff-level attorneys within both ORA and DHCR's OLA so that program staff may seek and obtain the legal advice of counsel in connection with DHCR's regulations, policies, procedures, and/or guidance. This exchange of ideas ahead of DHCR's decision-making is crucial to DHCR being able to carry out its statutory obligations in administering the State's rent-regulation laws.

12. Indeed, these discussions often continue even after the issuance of a formal administrative determination for various reasons. For example, there may be actual or threatened litigation after an agency determination. Deliberative discussions also continue as we gauge the impact of determinations and consider policy options, including maintaining current policy or potential changes, in light of other legitimate concerns and evolving practices, including practices by tenants or owners to challenge, circumvent, or evade the rent laws or agency determinations.

13. The disclosure of such communications would be harmful to the effective functioning of DHCR in the administration and enforcement of the State's rent regulations because it would impinge on good and reasoned decision-making by inhibiting candid deliberative discussions within DHCR.

14. This process of self-examination and discussion is an integral part of the overall and cohesive enforcement of the State's rent regulations, given the broad reach of these laws. If such communications were not protected, DHCR would potentially be deprived of its ability to obtain forthright and meaningful advice and assistance from policy and program staff members. Moreover, as the free exchange of ideas is primarily intended to determine how best to serve residents throughout New York State who benefit from DHCR's administration and enforcement of the State's rent regulations, it would be detrimental to the interests of the millions of New Yorkers served by these laws, regulations, and policies if deliberative discussion were not protected from disclosure.

15. DHCR also considers the confidentiality of its internal documents and communications concerning legislative and regulatory policymaking to be of great importance and confidential. The reasons for confidentiality in the areas of legislative and regulatory policymaking are significant. DHCR officials need to be able to draft and consider legislative and regulatory proposals and policy freely, without worry that their concerns, criticisms, and opinions will later be used against them in any forum. Part of what DHCR may do is attempt to build consensus between different interest groups and to analyze the respective positions. Disclosure of internal discussions relating to legislation and regulatory activities would prevent DHCR officials from speaking freely with regard to how to build such consensus and what the real concerns of such interest groups are, and the validity of such concerns. To allow public disclosure of such discussions, opinions, and thought processes could inhibit DHCR personnel from doing their jobs.

**The Pascal Declaration**

16. This federal action was commenced by the Plaintiffs in November 2025. As I understand it, DHCR's motion to dismiss the amended complaint is being briefed and the parties have exchanged discovery requests but have not yet exchanged any discovery. On July 6, 2026, the Plaintiffs suddenly filed the original Pascal Declaration, supposedly in support of their proposed discovery schedule. ECF No. 28.

17. Shortly thereafter, I understand that the Plaintiffs revised the original Pascal Declaration to correct one statement in the original document that they now admit was not true—about a state legislator allegedly having participated in DHCR's internal deliberations. Mr. Pascal has now withdrawn this assertion as untrue, but only after the original declaration was publicly filed with the admittedly false suggestion of impropriety on DHCR's part. *Compare* ECF No. 28-1 at ¶ 44 *with* ECF No. 33 at ¶ 44.

18. I also understand that the Plaintiffs have made further revisions to the Pascal Declaration to remove information about DHCR's internal deliberations in response to DHCR's assertions of privilege following the public filing of the Pascal Declaration.

19. The original declaration is troubling because, at its core, it is not a factual statement of final agency policy, but is instead a subjective recollection of privileged and confidential information belonging to DHCR, concerning DHCR's internal deliberations.

20. The evolution of this declaration is also prejudicial to DHCR because it evinces a pattern of the Plaintiffs making after-the-fact corrections and revisions to a declaration they initially made public containing at least one admitted misstatement (suggesting that a legislator had involvement with DHCR internal deliberations), and other statements containing confidential privileged information that belongs to DHCR and which the declarant and the Plaintiffs are not authorized to disclose or use without DHCR's permission (which they do not have).

21. DHCR has had no opportunity to rebut or respond to its untested assertions and personal opinions impugning DHCR's processes and actions.

22. Despite this Court's sealing of the declaration, the original declaration was publicized on social media by an attorney affiliated with the Plaintiffs, reported on by at least one news organization, and has now nonetheless been cited—and publicly filed (and will likely continue to be used)—by unrelated parties in multiple other litigation matters involving DHCR. These circumstances demonstrate that the serious harms to DHCR resulting from the Plaintiffs' and Mr. Pascal's unauthorized disclosures and use of privileged and confidential information belonging to DHCR are continuing.

**Assertion of the Deliberative Process Privilege in This Case**

23. I reviewed the Pascal Declaration, which discusses DHCR's administration of the "substantial rehabilitation exemption," an exemption from rent stabilization generally applicable to all rental buildings in New York City built before 1974 with six or more units, pursuant to ETPA § 5 and RSL § 26-504(b). The Pascal Declaration describes a meeting or meetings attended by DHCR officials and attorneys[3] discussing DHCR's purported internal priorities and procedures concerning enforcement, application, and adjudications of the exemption and purported internal DHCR discussion of possible changes to those priorities and procedures. Moreover, the Pascal Declaration describes opinions, concerns, and recommendations about proposed changes to DHCR's priorities and procedures on how the exemption is enforced and how adjudications concerning the exemption are handled that the declarant states were raised during the meeting or

[3] Three of the individuals Mr. Pascal identifies as having attended the purported meeting he describes in his declaration (ECF No. 33 at ¶ 44) are (or were) attorneys within DHCR's OLA: Sheldon Melnitsky, DHCR Deputy Counsel, Mark Palomino, DHCR Counsel, and Pavita Krishnaswamy, attorney and former DHCR Deputy Commissioner.

meetings and discloses their contents. These statements are found in paragraphs 44-51 of the Pascal Declaration (ECF No. 33).

24. I assert the deliberative process on behalf of Commissioner Visnauskas and DHCR over the statements in the Pascal Declaration described above, and all disclosures of similarly privileged information concerning internal DHCR discussions that Mr. Pascal may have made or will make insofar as they refer to or contain the individual opinions and recommendations of DHCR officials (including attorneys) expressed in connection with those internal discussions and pre-decisional deliberations, and do not represent the official or final policy of DHCR or its official views. I also assert the attorney-client communications privilege over any confidential communications between DHCR officials and attorneys for DHCR that Mr. Pascal may have made or will make to the Plaintiffs or the Plaintiffs' counsel.

25. DHCR asserts the deliberative process privilege because the disclosures contained in the original Pascal Declaration reflect an improper disclosure of internal discussions, opinions, and thought processes expressed during routine deliberations that are necessarily confidential to ensure a fair and unvarnished analysis of the issues. While the end-product of routine agency deliberations (like that described in the Pascal Declaration) are matters of public record, allowing a former official to disclose the internal deliberations that produce such decisions, including the individual opinions and recommendations that DHCR officials (including Mr. Pascal) expressed or may have expressed during agency decision-making, could chill the candid discussions that are necessary for DHCR staff to do their jobs, and compromise the free flow of ideas essential to the development of good policy, procedures, and regulation.

Executed in Queens, New York, this 24th day of August 2026.

Anthony Tatano