# Exhibit C

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

---

BALANCED HOUSING SOLUTIONS, by its President, Hank Sheinkopf, PEAK CAPITAL ADVISORS, LLC, 4836 41 STREET OWNERS LLC, 48-33 47TH STREET LLC, 47-21 47TH STREET OWNER LLC, 51ST AVENUE OWNER LLC, 41ST STREET OWNER LLC, 47TH ROAD OWNER LLC, 70 MIDDAGH OWNER LLC, 45TH STREET NEW OWNER LLC, 44TH STREET OWNER LLC, 5317 SKILLMAN OWNER LLC, 32ND STREET OWNER LLC, 3070 44TH STREET OWNER LLC, 4745 43RD STREET OWNER LLC, 4707 OWNER LLC, 4709 47TH AVENUE OWNER LLC, 3093 44TH OWNER LLC, 4127 49TH OWNER LLC, 4542 VERNON OWNER LLC, 131 GREENPOINT OWNER LLC, 586 MANHATTAN OWNER, LLC, 94 MILTON OWNER LLC, 3230 OWNER LLC, 311 ECKFORD OWNER LLC, 250 OWNER LLC, 515 GRAHAM OWNER LLC, 4544 40TH OWNER LLC, 251 NORTH 8TH OWNER LLC, 2559 35TH OWNER LLC, 154 ATLANTIC OWNER LLC, 724 METROPOLITAN OWNER LLC, 101 GREENPOINT OWNER LLC,

Plaintiff,

-against-

RUTHANNE VISNAUSKAS, in her official capacity as Commissioner of the New York State Division of Housing and Community Renewal,

Defendant.

Case No. 1:25-cv-06574

---

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION**

***PLEASE TAKE NOTICE*** that pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Civil Rules of the Southern and Eastern Districts of New York ("Local Rules"), Plaintiffs, by and through their undersigned attorneys, hereby serve the following

Requests for Production of Documents ("Requests") to Ruthanne Visnauskas, in her official capacity as Commissioner of the New York State Division of Housing and Community Renewal ("DHCR" or "Defendant"). Pursuant to Rule 34(b), Defendant shall serve responses to these Requests, including the marked Priority Requests, by the earlier of: 1) within 30 days of service; or 2) the deadlines for production of documents set by the in the above-captioned case by Chief Magistrate Judge Vera Scanlon, if any.

## DEFINITIONS

1. The Definitions set forth below, and the Definitions and Rules of Construction set forth in Local Rule 26.3, are hereby incorporated as if fully set forth herein, including terms defined in the body of the Requests for Production below. **Please note:** this document reflects minor corrections to a few definitions in Plaintiffs First Set of Requests for Admission and Interrogatories, dated July 3, 2026, and thus those documents are **hereby amended** to reflect a unified set of definitions to guide responses to all three documents.

2. **75BSRP** (or the **"75% Building System Replacement Presumption"**) means the presumption of sufficient improvements for substantial rehabilitation first established by OB 95-2 Section I.A. where, among a list of 17 building-wide and apartment systems, "At least 75% . . . have been completely replaced with new systems."

3. **80VP (or the "Vacancy Presumption")** means the presumption first established by OB 95-2 Section I.B. that "Where the rehabilitation was commenced in a building that was at least 80% vacant of residential tenants, there shall be a presumption that the building was substandard or seriously deteriorated at that time."

4. **Advisory Opinions** means an opinion issued (whether or not its release was to the general public, to limited persons, or only internal) by a Commissioner, Deputy Commissioner, or

other authorized individual at DHCR establishing the position of DHCR outside the context of a case or controversy before it.

5. **Any Means** means any regulatory or enforcement powers and authorities possessed by DHCR in relation to the SubRehab Program, including, but not limited to, an Advisory Opinion, a Prior Opinion, a response to or inaction on an Application for SubRehab Exemption, a Tenant Complaint, a lawsuit, an enforcement action, taking a position in an Article 78 proceeding, a letter of warning, a Notice of Intent to Proceed, orders issued by DHCR Rent Administrators, Deputy Commissioners, Commissioners, or other authorized individuals, or any other available means.

6. **Changes or Modifications** of a Policy means changes of any nature to (a) internal or external policies, (2) rules of agency practice, and (c) established processes or protocols or processes for its administrative and enforcement functions. A "Change or Modification" includes not merely the language of the policy, rule or process itself, but any change in interpretation and meaning of it given by DHCR, including the rationale of basis for the "Change or Modification." If any "Change or Modification" was based on a change of law, documents reflecting it are "related" to the Request for Production. If any change was based on a change of interpretation, documents reflecting it are "related" to the Request for Production. If any such "Change or Modification" was based on any inter-agency communication or directive, documents reflecting it are "related" to the Request for Production. If any such "Change or Modification" was based on any communication with any elected official, documents reflecting it are "related" to the Request for Production. If any such "Change or Modification" was based on any communication with any person employed by the Office of the New York Attorney General (NYAG"), documents reflecting it are "related" to the Request for Production.

7. **Communication** means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) pursuant to Local Rule 26.3(c)(1).

8. **Comparator Buildings** means residential buildings built before 1974, with between 6 and 20 apartments, which were 80% vacant before renovations were performed to replace 75% or more of major building systems after 1974.

9. **Concerning**, pursuant to Local Rule 23.3(c)(7), means relating to, referring to, describing, evidencing or constituting.

10. **DHCR** means the New York State Division of Housing and Community Renewal, including any predecessor agency responsible for the administration of ETPA § 5(a)(5).

11. **DHCR Documents** means any and all relevant documents, including documents reflecting communications, within DHCR related to document request in question, including, but not limited to, Advisory Opinions, Prior Opinions, responses to and applications for SubRehab Exemptions, Tenant Complaints and DHCR responses and communications about them, Rent Administrator Decisions, PAR Decisions, or documents such as internal policies, rules, and procedures, as well as DHCR's "schedules, forms, instructions, and the official interpretive opinions and explanatory statements of general policy of the commissioner, including operational bulletins," see 9 NYCRR 2527.11(b), including any and all Changes or Modifications to any of these over time.

12. **Documents**, pursuant to Local Rule 26.3(c)(2), is defined to be synonymous in meaning and equal in scope to the usage of the term 'documents or electronically stored information' in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term. The term "Document" always includes documents reflecting communications, whether or not a Request specifies, including any form in which communications

or stored or memorialized, including hand-written notes, e-mails, text messages, calendar entries, post-it notes, journal entries, telegrams, fax messages, talking-points for upcoming communications, presentations or memos reflecting past communications or statements, transcripts, voicemail or other recordings, etc., without limitation. "Documents" includes **all** documents, created or received between 1995 and the present, unless a more expansive or more limited timeframe is included in a Request below.

13. **Employee Training Materials** means any documents reflecting educating employees concerning Policies on a subject matter related to DHCR's official business, standard or expectations.

14. **ETPA** means the Emergency Tenant Protection Act of 1974, 1974 N.Y. LAWS ch. 576, § 3(a), codified in N.Y. UNCONSOL. LAWS § 8623(A).

15. **ETPA § 5(a)(5)** means the New York statute exempting "substantially renovated" apartments from local governments' ability to declare them "rent stabilized."

16. **Including** means the kind of information responsive to each Request for Production herein. Such examples are not intended to be exhaustive of the information sought and shall not in any way be read to limit the scope of the Requests.

17. **Instant Action** means *Balanced Housing Solutions et al. v. Visnauskas*, No. 1:25-cv-06574 (E.D.N.Y.).

18. **Interrogatories** means to Plaintiffs' First Set of Interrogatories, served on and dated July 3, 2026.

19. **NYAG** means the New York State Attorney General.

20. **NYAG Complaint** means the complaint in *New York v. Peak Capital Advisors, LLC et al.*, Index No. 453503/2025 (Sup. Ct. N.Y. Cnty. 2025).

21. **NYS** means the State of New York.

22. **OB 95-2** means Operating Bulletin 95-2, a guidance document issued by DHCR on December 15, 1995 concerning substantial renovation on buildings built pre-1974, where such renovations occurred after 1974.

23. **PAR** means a petition for administrative review before DHCR.

24. **PAR Decisions** include a request for all documents underlying the final decision concerning any controversy or dispute related to a SubRehab Project, including any nonprivileged documents that reflect factual or policy discussions or deliberations between the signatory of the PAR Decision and DHCR staff or inter-agency communications concerning the matter.

25. **PCA** means Peak Capital Advisors, LLC, Plaintiff, including any or all of its executives or officers.

26. **Policy or Policies** means any DHCR policy, procedure, rule and practices, whether internal to DHCR or external (pertaining to the public and its interactions with DHCR in relation to DHCR's official business).

27. **Prior Opinion** means a non-binding advisory prior opinion issued by DHCR in response to an application by an owner of a building in which the DHCR advises as to whether the building qualifies for the substantial rehabilitation exemption.

28. **Priority Requests** means Requests that Plaintiffs have selected for limited discovery subject to an earlier production schedule, according to deadlines for production of documents set in the Instant Case by Chief Magistrate Judge Vera Scanlon, if any.

29. **Reflecting**, **relate to**, **related to**, or **relating to** mean concerning, constituting, containing, embodying, identifying, dealing with, reflecting, mentioning, defining, explaining, discussing, commenting upon, monitoring, supporting, evidencing, modifying, contradicting,

quoting, criticizing, describing, creating or maintaining, bearing upon, referring to, having any relationship to, constituting a basis for, deriving from or arising from, or in any manner whatsoever pertinent to that subject.

30. **Rent Administrator** means a person designated by the Commissioner of DHCR to issue orders based on complaints or applications made to the DHCR.

31. **RA Decision** means a decision by the Rent Administrator or an authorized person concerning any controversy or dispute related to a SubRehab Project. Requests for RA Decisions include a request for all documents underlying the final decision, including any nonprivileged documents that reflect factual or policy discussions or deliberations between the signatory of the PAR Decision and DHCR staff or inter-agency communications concerning the matter.

32. **Requests for Admission** means to Plaintiffs' First Set of Requests for Admission, served on and dated July 3, 2026.

33. **RSC** means the Rent Stabilization Code, Title 9, Subtitle S, Chapter VIII, Subchapter B of the Official Compilation of Codes, Rules and Regulations of the State of New York (NYCRR).

34. **Settlement Agreements** means any agreement, by any name, whether such agreement was written or oral, between a building owner and DHCR, or their agents, to resolve a regulatory or enforcement dispute (whether filed or anticipated) between them concerning the SubRehab Program, including but not limited to any dispute concerning a Prior Opinion, an application for SubRehab Exemption, the applicability of the SSD Standard, the applicability of 80VP, the applicability of 75BSRP, a Tenant Complaint, a Tenant Buyout, or other related disputes of any kind.

35. **SSD Standard** means the phrase "substandard or seriously deteriorated," including but not limited to its use in OB 95-2 and/or RSC § 2520.11(e).

36. **SubRehab Project** means a building that was, is, or is anticipated to be under renovation work to effectuate a "substantial rehabilitation" in anticipation of deregulation or exemption of the apartments therein from rent-stabilization laws under ETPA § 5(a)(5) and/or RSC § 2520.11(e).

37. **SubRehab Exemptions** means an official record, order, certificate or writing issued by DHCR as proof that it approved a building and/or the apartments therein as excluded from rent stabilization laws under ETPA § 5 because it had been "substantially rehabilitated" on or after January 1, 1974, pursuant to the ETPA and/or RSC § 2520.11(e).

38. **SubRehab Program** means DHCR's process, including but not limited to internal policies, rules, forms, guidelines, directives and instructions, for administering which buildings were exempt under ETPA § 5(a)(5) and/or RSC § 2520.11(e).

39. **SubRehab Staff** means those DHCR employees, in any section, unit, or department of the Agency, whose job responsibilities included drafting, reviewing or approving Advisory Opinions, Prior Opinions, Applications for SubRehab Exemptions, responding to Tenant Complaints, or any other internal processes or procedures necessary for the administration of ETPA § 5(a)(5) and/or RSC § 2520.11(e).

40. **Subject Buildings** means the 31 buildings targeted by DHCR and the NYAG: 48-36 41st Street, Sunnyside, New York; 48-33 47th Street, Sunnyside, New York; 47-21 47th Street, Sunnyside, New York; 5-13 51st Avenue, Long Island City, New York; 45-35 41st Street, Sunnyside, New York; 5-35 47th Road, Long Island City, New York; 70 Middagh Street, Brooklyn, New York; 47-34 45th Street, Sunnyside, New York; 47-25 44th Street, Sunnyside,

New York; 53-17 Skillman Avenue, Sunnyside, New York; 35-34 32nd Street, Astoria, New York; 30-70 44th Street, Astoria, New York; 47-45 43rd Street, Sunnyside, New York; 47-07 47th Avenue, Sunnyside, New York; 47-09 47th Avenue, Sunnyside, New York; 30-93 44th Street, Astoria, New York; 41-27 49th Street, Long Island City, New York; 45-42 Vernon Boulevard, Long Island City, New York; 131 Greenpoint Avenue, Brooklyn, New York; 586 Manhattan Avenue, Brooklyn, New York; 94 Milton Street, Brooklyn, New York; 32-30 41st Street, Astoria, New York; 311 Eckford Street, Brooklyn, New York; 250 North 6th Street, Brooklyn, New York; 515 Graham Avenue, Brooklyn, New York; 45-44 40th Street, Sunnyside, New York; 251 North 8th Street, Brooklyn, New York; 25-59 35th Street, Astoria, New York; 154 Atlantic Avenue, Brooklyn, New York; 724 Metropolitan Avenue, Brooklyn, New York; and 101 Greenpoint Avenue, Brooklyn, New York.

41. **Tenant Buyout** means any agreement, regardless of the name given to the agreement (such as "Surrender," "Vacancy" or "Buyout"), whether oral or in writing, between a building owner and a tenant (whether rent-stabilized or free-market), or agents thereof, reflecting the terms and conditions of the tenant's agreement to vacate an apartment or surrender any rights therein or thereto.

42. **Tenant Complaints** means any written complaint by any tenant alleging, in sum and substance, in whole or in part, rent overcharge or illegal deregulation of apartment(s) in relation to ETPA § 5(a)(5) or the SubRehab Program.

43. **You** and **Your** mean Defendant DHCR.

## INSTRUCTIONS

1. Answer Requests in good faith and based on reasonable inquiry and diligence.

2. Your good-faith response must address the core or "substance" of each request. A technically correct but misleading or incomplete answer (e.g., denying the whole request because one minor word is off) violates FRCP Rule 34.

3. These Requests should be construed in the broadest possible manner consistent with the Federal Rules of Civil Procedure and the Local Civil Rules.

4. In each instance, if any, where You deny knowledge or information sufficient to respond to a Request, or any part thereof, identify each person known or believed to have such knowledge.

5. In responding to the Requests, furnish all responsive documents that are available to You, including documents in the possession of Your agents, advisors, attorneys, contractors, representatives, partners, and anyone else acting on Your behalf or otherwise subject to Your control. If you make requests of such agents to comply with the Requests below, you are instructed to forward to them the Definitions and Instructions provided herein.

6. In responding to the Requests, make a diligent search of Your records, electronic files and of any other papers and materials in Your possession or available to Your representatives.

7. Documents are to be produced in full and unexpurgated form without abbreviation or redaction. If You can provide only part(s) of the document(s) called for in any particular Request, provide all document(s) that You are able to provide and state the reason, if any, for the inability to provide the remainder.

8. If You do not have within Your possession, custody or control any document(s) responsive to a particular Request, Your response to that Request should so state.

9. If any document requested herein has been lost, deleted, discarded or destroyed, it shall be identified and described as completely as possible, including the following information:

content, author, recipient, sender copied recipient (indicated or blind), date prepared or received, date of disposal, reasons for disposal, personal authorizing the disposal, person disposing of the document and contents of the document.

10. All documents shall be produced in the order in which they are kept in the usual course of business, and shall be produced in their original file folders, binders, cover or containers, or facsimiles thereof. In addition, all documents shall be produced, organized, and labeled to correspond to the individual Requests for Production.

11. Documents constituting Electronically Stored Information ("ESI") are to be provided in Concordance Default format with associated default delimiters, and are to include bates-labeled TIFF images, all associated metadata, and native files named after the bates number of the corresponding TIFF image.

12. Documents include responsive material to these Requests wherever located, including on state-issued devices, or personal devices (whether or not used with DHCR's permission or authority, so long as the communication was related to DHCR's official business). This includes information stored on non-state-issued or authorized storage or electronic devices or applications, including, but not limited to, Google Document or any messaging application (e.g., G-mail, What's App, Instant Messenger, iMessage, Snap Chat, etc.).

13. Text Messages must be produced in native format, not as "screen shots."

14. Hard copy documents (non-ESI) are to be produced in Concordance Default format with associated default delimiters and are to include bates-labeled TIFF images and all associated metadata.

15. If You object to any Request or any portion of any Request on the ground that it requests information that is privileged (including the attorney-client privilege) or falls within the attorney work-product doctrine, provide the following information:

a. The nature of the privilege or doctrine You claim; and

b. Identify the document or communication.

c. Do not reply with "group" or "batch" entries for allegedly privileged documents.

d. If only a portion of a responsive document is privileged against disclosure, You must produce the responsive non-privileged portion of the document in redacted form, provided that the redacted material is identified and the basis for the claim of privilege stated as provided in the instruction above.

16. Each and every non-identical duplicate of a document within the scope of any request, whether different from the original because of stamps, indications of recipient, handwritten notes, marks, comments or attachments to different documents, or for any other reason, is a separate document to be produced in response hereto.

17. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Requests all responses that might otherwise be construed to be outside its scope.

18. Pursuant to Local Rule 26.3(d)(3), "[t]he use of the singular form of any word includes the plural and vice versa."

19. The use of a verb in any tense or voice shall be construed as the use of that verb in all other tenses and voices, as necessary to bring within the scope of the Request all information that might otherwise be construed as outside its scope.

20. The Requests are continuing in nature and require that You promptly produce additional responsive documents or information whenever they are acquired, discovered or come into existence after the date of the initial production in accordance with Federal Rule of Civil Procedure 26(e).

## FIRST REQUESTS FOR PRODUCTION

**1. Priority Requests Due on July 29, 2026 (if Chief Magistrate Judge Scanlon orders compliance with the schedule suggested by Plaintiffs):**

a. Any document-preservation notice(s) sent within DHCR after the filing of the Instant Action. If none exist, please so state.

b. Documents from Requests below, for a limited time period (specified here in red font but without changing or waiving the time period further for each Request specified below for the next production):

  i. Between January 1, 2020 and present, Documents requested in Request No. **4** below (related to past FOIL requests).

  ii. Between January 1, 2020 and present, Documents requested in Request No. **5** below (related to training materials).

  iii. Between January 1, 2023 and the filing of the Instant Action, Documents requested in Request No. **7 Subpart c** below (related to communications about PCA).

  iv. Between January 1, 2020 and the present, Documents requested in Request No. **8 Subpart c** below (related to SubRehab documents).

  v. Between January 1, 2020 and the present, Documents requested in Request No. **8 Subpart d** below (related to Settlements).

vi. Between January 1, 2020 and the present, Documents requested in Request No. **8 Subpart e** below (related to Tenant Buyouts).

vii. Between January 1, 2019 and January 1, 2023, Documents requested in Request No. **8 Subpart f** below (related to Greenbrook).

viii. Between January 1, 2022 and June 1, 2024, Documents requested in Request No. **8 Subpart i** below (related to *219 Troutman*).

ix. Between February 1, 2021 and January 1, 2025, Documents requested in Request No. **8 Subpart j** below (related to *852 Hart*).

x. Between November 1, 2025 and March 31, 2026, Documents requested in Request No. **8 Subpart l** below (related to Lohan).

xi. Between November 1, 2025 and March 31, 2026, Documents requested in Request No. **8 Subpart m** below (related to 251 N. 8th Street).

2. **Produce Documents sufficient to explain:**

a. Whether DHCR adopted a Policy with respect to maintenance or storage of documents in an electronic format under N.Y. State Tech. Law § 305 or other statute.

b. DHCR Content or Information Management system(s), and the internal operations thereof, including any use of OpenText Content servers, IBM FileNet, or other document-management or storage systems, and including any support or collaboration with SONYMA, Caso Document Management, HTFC or the Center for Technology in Government pertaining thereto.

c. DHCR's systems, vendors, facilities or locations for remote storage of hard-copy files.

d. DHCR's systems for archives, emergency back-ups or other redundancies for electronically stored information.

e. DHCR's Policy concerning record retention.

f. DHCR's Policy for state-owned devices, including mobile devices.

g. DHCR's Policy concerning use of personal devices for official state business.

h. DHCR's Policy for use of off-channel or non-state-controlled e-mail or messaging applications for official state business.

i. The organizational structure of DHCR between 1995 and the present, including personnel and titles for the SubRehab Staff and the supervisors thereof.

3. **Produce Documents reflecting DHCR's Policies with respect to or concerning:**

a. ETPA § 5(a)(5), including those reflecting any Change or Modification thereof.

b. The SubRehab Program, including those reflecting any Change or Modification thereof.

c. OB 95-2, including those reflecting any Change or Modification thereof.

d. Tenant Buyouts.

e. Ethical Behavior by employees.

f. Contact with elected officials.

g. Inter-agency communications.

**4. Produce Prior FOIL Requests and Documents supplied in response**—For the period between January 1, 2005 and the present, produce any Freedom of Information Law, Public Officers Law Article 6 § 84–90, request submitted to DHCR, and Documents supplied in response to such request by DHCR, pertaining to:

a. ETPA § 5(a)(5).

b. The SubRehab Program.

c. OB 95-2.

d. RSC § 2520.11(e).

e. Tenant Buyouts.

**5. Produce Employee Training Materials with respect to or concerning:**

a. ETPA § 5(a)(5).

b. The SubRehab Program.

c. OB 95-2.

d. RSC § 2520.11(e).

e. Tenant Buyouts.

**6. Produce Documents Related to Your Own Requests, Defenses or Specific Entities and Individuals:**

a. You identified in Your Initial Disclosures pursuant to FRCP Rule 26(a)(1).

b. You identified, relied upon, or referred to in drafting Your responses to the Interrogatories pursuant to FRCP Rule 33.

c. You identified, relied upon, or referred to in drafting Your responses to the Requests for Admissions pursuant to FRCP Rule 36.

d. You intend to rely on in defending against Plaintiffs' claims set forth in the First Amended Complaint in the Instant Action.

e. You intend to rely on at trial of the Instant Matter.

f. Relating to City5 Consulting, including communication with NYAG before the filing of the Instant Action.

g. Relating to James Chai, including communication with NYAG before the filing of the Instant Action.

h. Relating to Lawrence ENV, LLC, including communication with NYAG before the filing of the Instant Action.

i. Relating to PVE Engineering, including communication with NYAG before the filing of the Instant Action.

7. **Documents Related to Specific Subjects of Communication**—For the time periods (red font) and topics (underlined font) specified below, produce Documents concerning or relating to communication:

a. Between January 1, 1993 and January 1998, and pertaining to the anticipated or actual contents of OB 95-2, all internal and external communications concerning the rationale for, or meaning or interpretation thereof.

b. Between January 1, 2019 and the present, and pertaining to Senate Bill S2980-C, Part A, Section 5, between You and the following:

   i. The Governor of the State of New York or her staff.

   ii. Any other State agency in the State of New York.

   iii. Any Member or staff of the state Senate or Assembly.

   iv. Any agency or official for the City of New York.

   v. Any employee, representative or agent of any not-of-profit entity.

   vi. The Real Estate Board of New York or New York Apartment Association, or any employee or representative thereof.

   vii. Any union or other labor group, tenant group, industry organization or other group, including representatives thereof, and regardless of whether incorporated or unincorporated.

   viii. Inter-agency communications.

c. Between January 1, 2023 and the filing of the Instant Action, and pertaining to PCA (including its counsel, lenders, investors, employees or consultants) or any of the Subject Buildings (or their tenants), within DHCR and between You and NYAG.

d. Between January 1, 2023 and the present, and pertaining to PCA (including its counsel, lenders, investors, employees or consultants) or any of the Subject Buildings (or their tenants), between You and the following:

   i. The Governor of the State of New York or her staff.

ii. Any other State agency in the State of New York, other than NYAG.

iii. Any Member or staff of the state Senate or Assembly.

iv. Any agency or official for the City of New York.

v. Any tenant, investor, lender, employee or vendor for any of the Subject Buildings.

vi. PCA.

vii. The Real Estate Board of New York or the New York Apartment Association, or any employee or representative thereof.

viii. Any union or other labor group, tenant group, industry organization or other group, including representatives thereof, and regardless of whether official incorporated or unincorporated.

e. Between January 1, 2026 and the present, and pertaining to the SubRehab Program, between You and any agency or official for the City of New York, including but not limited to any person acting as agent for the Administration of Mayor Zohran Mamdani or the New York City Council, or any Member or staff thereof.

8. **Documents Related to Specific Topics**—For the time periods specified below (red font), produce Documents concerning or relating to:

a. Between 1974 and 1995, ETPA § 5(a)(5).

b. Between January 1, 1993 and January 1, 1998, OB 95-2, including all drafts of or internal memoranda regarding it, and those reflecting the rationale for, meaning or interpretation thereof, and the results of any public comments or testimony concerning it.

c. Between December 1, 1995 and the present, the SubRehab Program. For the

avoidance of doubt, this Request includes any Document reflecting, concerning or related to: (1) any Change or Modification of Policies with respect thereto; (2) PAR Decisions; (3) RA Decisions; (4) the SSD Standard; (5) the 80VP; (6) the 75BSRP; (7) DHCR Documents; (8) every determination or decision, including any decision to initiate or decline to initiate any regulatory or enforcement proceedings, or any anticipatory step thereto, against any SubRehab Project by Any Means; and (9) a version of every form or template order used by SubRehab Staff when administering an Advisory Opinion, a Prior Opinion, a SubRehab Exemption, a Tenant Complaint, or any other matter related to the SubRehab Program.

d. Between January 1, 2010 and the present, Settlement Agreements.

e. Between January 1, 2015 and the present, Tenant Buyouts, whether or not related to the SubRehab Program, including but not limited to: (1) Documents reflecting Tenant Buyouts supplied to You by owners or their agents; (2) Policies concerning whether DHCR's scrutiny of Buyouts was limited to a specific kind of tenant (e.g., rent stabilized versus free-market); (3) Policies concerning Tenant Buyouts unrelated to their treatment in the context of SubRehab Projects.

f. Between January 1, 2016 and the present, Greenbrook Holding LLC, Greenbrook SPEs, McNam Management, or Gregory Fournier, including but not limited to Tenant Complaints related to any of the properties they owned, managed or controlled.

g. Between January 1, 2016 and the present, Comparator Buildings, including but not limited to Tenant Complaints.

h. Between January 1, 2019 and the present, relating to the calculation of rents for apartments for which regulation or re-regulation of such apartment (whether vacant, owner-occupied or allegedly deregulated) was mandated or demanded by DHCR.

i. Between January 1, 2022 and June 1, 2024, *Matter of 219 Troutman LLC*, DHCR Rent Administrator's Docket No. KR210002RP (Nov. 18, 2020), Administrative Review Doc No. LO210030RO (DHCR June 6, 2023), including but not limited to (a) every draft of the PAR Decision and the RA Decision by any author, (b) any internal communication reflecting or discussing the content of either opinion, (c) communications reflecting agreement or disagreement with the discussion of Buyouts in the opinions and pages 4 and 5 of the PAR Decision, (d) any internal communications concerning whether the treatment of Buyouts therein (pages 4 and 5) was meant to apply on a forward-looking basis only, (e) any internal communications concerning whether the Buyout discussion therein (pages 4 and 5) was applicable or restricted to Buyouts concerning rent-stabilized tenants, free-market tenants or both, (f) any inter-agency communication or with any elected official concerning any of these or other topics related to *219 Troutman* or the discussion of Tenant Buyouts therein (pages 4 and 5), (g) any communication with any tenant or labor group regarding same, (h) documents sufficient to identify whether and how either opinion was made available to the general public, and (i) if they were, documents sufficient to show when and how.

j. Between June 1, 2018 and October 1, 2025, *Matter of 852 Hart LLC*, DHCR Rent Administrator's Docket No. LP210003RO (Mar. 2, 2023), Administrative Review

Doc No. JX210003RP (July 18, 2023), including but not limited to (a) every draft of the PAR Decision and the RA Decision by any author, (b) any communication reflecting or discussing the content of either opinion, (c) any communication concerning the treatment of Buyouts therein or page 6 of the PAR decision, (d) documents relating to the two Article 78 Petitions involving the building—Index No. 502737/2021 (N.Y. Sup. Ct. Kings Cnty. Feb. 3, 2021) and Index No. 526861/2023 (N.Y. Sup. Ct. Kings Cnty. Sep. 15, 2023)—including every draft affirmation by any author, Settlement Agreements, and communication regarding any petition, affirmation or order.

k. Between January 1, 2024 and the present, concerning any agreement or understanding between DHCR and any other City or State agency with respect to sharing information relating to substantial rehabilitation.

l. Between November 1, 2025 and March 31, 2026, relating to Michael Lohan, a named defendant in NYAG Complaint, including but not limited to any communication between either DHCR or NYAG, on the one hand, and any reporter or member of the media.

m. Between April 1, 2025 and March 31, 2026, the building located at 251 North 8th Street, Brooklyn, New York.

Dated: New York, New York

July 5, 2026

WALDEN HARAN WILLIAMS LLP

By: *<u>/s/ Jim Walden</u>*

Jim Walden
Hunter Pearl
250 Vesey Street, 27th Floor
(212) 335-2030
New York, New York
jwalden@whwllp.com
hpearl@whwllp.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 5, 2026, a true copy of the foregoing was served via electronic mail to:

Linda Fang and Bronwyn James
Office of the New York State Attorney General
28 Liberty Street
New York, New York 10005
(212) 416-8580
Linda.Fang@ag.ny.gov
Bronwyn.James@ag.ny.gov

*Attorneys for Defendants*

*/s/ Hunter Pearl*
Hunter Pearl