UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BALANCED HOUSING SOLUTIONS, by its President, Hank Sheinkopf, et al.,

Plaintiffs,

– against –

RUTHANNEVISNAUSKAS, in her official capacity as Commissioner of the New York State Division of Housing and Community Renewal,

Defendant.

No. 25-cv-06574 (DG) (VMS)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**


LETITIA JAMES
Attorney General
State Of New York
*Attorney for Defendant RuthAnne Visnauskas*
28 Liberty Street
New York, New York 10005

Linda Fang
*Special Litigation Counsel*
Bronwyn James
*Assistant Attorney General*
*Of Counsel*

## TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... i

PRELIMINARY STATEMENT .......... 1

STATEMENT OF THE CASE .......... 3

I. STATUTORY AND REGULATORY FRAMEWORK .......... 3

II. PROCEDURAL HISTORY .......... 6

A. THE STATE'S INVESTIGATION .......... 6

B. THE INSTANT FEDERAL ACTION AND THE RELATED STATE ENFORCEMENT ACTION .......... 7

STANDARD OF REVIEW .......... 8

ARGUMENT .......... 9

I. THE COURT SHOULD ABSTAIN FROM ADJUDICATING THIS CASE .......... 9

A. IRRESPECTIVE OF THE MERITS, ABSTENTION IS REQUIRED UNDER YOUNGER .......... 9

B. PLAINTIFFS FAIL TO DEMONSTRATE BAD FAITH SUFFICIENT TO EVADE YOUNGER .......... 10

C. THE COURT SHOULD ALSO ABSTAIN BASED ON PULLMAN AND WILTON .......... 12

II. THE ELEVENTH AMENDMENT BARS PLAINTIFFS' CLAIMS FOR MONETARY RELIEF .......... 14

III. PLAINTIFFS' AS-APPLIED REGULATORY TAKINGS CLAIM FAILS .......... 15

A. AS A THRESHOLD MATTER, THE TAKINGS CLAIM IS NOT RIPE .......... 15

B. PUTTING ASIDE RIPENESS, PLAINTIFFS CANNOT STATE A REGULATORY TAKINGS CLAIM .......... 16

1. The Economic Effects of DHCR's Enforcement Do Not Give Rise to a Taking .......... 17

2. DHCR's Enforcement Does Not Interfere with Any Reasonable Investment-Backed Expectations .......... 19

3. The Nature of DHCR's Enforcement is Inconsistent with a Taking .......... 22

IV. PLAINTIFFS FAIL TO STATE A VIABLE DUE PROCESS CLAIM........................23

V. PLAINTIFFS FAIL TO STATE AN EQUAL PROTECTION CLAIM........................24

CONCLUSION........................................................................................................25

## TABLE OF AUTHORITIES

**CASES**

*74 Pinehurst LLC v. New York,*
59 F.4th 557 (2d Cir. 2023) .......................................................... 15, 16, 17, 18, 19 ,22, 23, 24

*81 Russell St. Assoc. v. Scott*,
1993 N.Y.L.J. LEXIS 13 (Civ. Ct. Kings Cnty. Aug. 25, 1993)........................................... 22

*446 Realty Co. v. Higbie,*
186 Misc. 2d 632 (Civ. Ct. N.Y. Cnty. 2000)........................................................................ 22

*Allen v. Cuomo*,
100 F.3d 253 (2d Cir. 1996)......................................................................................... 19

*Amazon.com, Inc. v. James*, No. 21 Civ. 767,
2021 WL 3516382 (ED.N.Y. Aug. 10, 2011)................................................................. 9, 10, 11

*Analytical Diagnostic Labs, Inc. v. Kusel*
626 F.3d 135 (2d Cir.2010)......................................................................................... 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................ 8

*Augustin v. Digirolamo*,
No. 25 Civ. 3332, 2025 WL 2689598 (E.D.N.Y. Sept. 9, 2025)............................................. 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................................ 8

*Blakeman v. James*,
No. 24 Civ. 1655, 2024 WL 3201671 (E.D.N.Y. Apr. 4, 2024)............................................... 15

*Building & Realty Inst. of Westchester and Putnam Cntys., Inc. v. New York*,
No. 21-2526, 2024 WL 1061142 (2d Cir. Mar. 12, 2024)................................................. 16, 18

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)..................................................................................... 8, 25

*Community Hous. Improvement Prog. v. City of N.Y.*,
492 F. Supp. 3d 33 (E.D.N.Y. 2020) ("CHIP I")............................................................. 14, 17

*Community Hous. Improvement Prog. v. City of N.Y.*,
59 F.4th 540 (2d Cir. 2023) ......................................................................... 10, 18, 22, 23

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*,
508 U.S. 602 (1993) .......... 18

*Cullen v. Fliegner*,
18 F.3d 96 (2d Cir. 1994) .......... 9, 11, 12

*Diamond "D" Constr. Corp. v. McGowan*,
282 F.3d 191 (2d Cir. 2002) .......... 10, 11, 12

*Dittmer v. County of Suffolk*,
146 F.3d 113 (2d Cir. 1998) .......... 13, 14

*Dow Jones & Co. v. Harrods Ltd.*,
346 F.3d 357 (2d Cir. 2003) .......... 14

*Ex Parte Young*,
209 U.S. 123 (1908) .......... 14

*Expressions Hair Design v. Schneiderman*,
808 F.3d 118 (2d Cir. 2015) .......... 12

*Falco v. Justices of the Matrimonial Parts of Supreme Court of Suffolk* County,
805 F.3d 425 (2d Cir. 2015) .......... 9

*Federal Home Loan Mortg. Corp. v. New York State Div. of Hous. & Community Renewal*,
83 F.3d 45 (2d Cir. 1996) .......... 13, 19

*Gibson v. Berryhill*,
411 U.S. 564 (1973) .......... 9

*Greystone Hotel Co. v. City of N.Y.*,
13 F. Supp. 2d 524 (S.D.N.Y. 1998) .......... 18, 24

*Harmon v. Markus*,
412 F. App'x 420 (2d Cir. 2011) .......... 23

*Huffman v. Pursue, Ltd.*,
420 U.S. 592 (1975) .......... 10

*Juidice v. Vail*,
430 U.S. 327 (1977) .......... 10

*Keystone Bituminous Coal Ass'n v. DeBenedictis*,
480 U.S. 470 (1987) .......... 22

*Kirschner v. Klemons*,
225 F.3d 227 (2d Cir. 2000)........................................................................................ 11

*Knick v. Township of Scott, Pa.*,
588 U.S. 180 (2019)................................................................................................... 16

*LaTrieste Rest. v. Village of Port Chester*,
188 F.3d 65 (2d Cir. 1999)......................................................................................... 25

*Lingle v. Chevron U.S.A. Inc.*,
544 U.S. 528 (2005)............................................................................................. 17, 19

*Matter of Eastern Pork Prods. Co. v New York State Div. of Hous. & Cmty. Renewal*,
87 A.D.2d 320 (1st Dep't 1992) ........................................................................ 4, 22, 24

*Middlesex County Ethics Committee v. Garden State Bar Association*,
457 U.S. 423 (1982)............................................................................................... 9, 10

*Missere v. Gross*,
826 F. Supp. 2d 542 (S.D.N.Y. 2011)......................................................................... 25

*Murr v. Wisconsin*,
137 S. Ct. 1933 (2017)............................................................................................... 17

*Nov. Team, Inc. v. New York State Joint Comm'n on Pub. Ethics*,
233 F. Supp. 3d 366 (S.D.N.Y. 2017)......................................................................... 13

*Park Ave. Tower Assocs. v. City of N.Y.*,
746 F. 2d 135 (2d Cir. 1984)................................................................................. 18, 19

*Penn Cent. Transp. Co. v. City of N.Y.*,
438 U.S. 104 (1978)................................................................................................... 17

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984)..................................................................................................... 14

*Pennsylvania Coal Co. v. Mahon*,
260 U.S. 393 (1922)................................................................................................... 17

*Railroad Comm'n. of Texas v. Pullman Co.*,
312 U.S. 496 (1941)............................................................................................... 2, 12

*Reich v. Collins*,
513 U.S. 106 (1994)................................................................................................... 15

*Ruston v. Town Bd. for the Town of Skaneateles*,
610 F.3d 55 (2d Cir. 2010)........................................................................................... 25

*Schlagler v. Phillips*,
166 F.3d 439 (2d Cir. 1999)..................................................................................... 11, 12

*Schorr v. DoPico*,
686 F. App'x 34 (2d Cir. 2017). ..................................................................................... 11

*Spargo v. New York State Commission on Judicial Conduct*,
351 F.3d 65 (2d Cir. 2003)................................................................................................. 9

*Sprint Commc'n, Inc. v. Jacob*s,
571 U.S. 69 (2013)......................................................................................................... ,9

*State of New York v. Peak Capital Advisors, LLC, et al.*, Index No. 453503/2025 (Sup. Ct. N.Y. Cnty. 2025) ........................................................................................................................ 6

*Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot*.,
560 U.S. 702 (2010)....................................................................................................... 23

*Thomas v. Genova*, No. 11 Civ. 6084, 698 F. Supp. 3d 493 (E.D.N.Y. 2023), *aff'd as amended*, No. 23-7452, 2025 WL 583182 (2d Cir. Feb. 24, 2025) ........................................................ 24

*Toczek v. Alvord*,
841 F. App'x 263 (2d Cir. 2021) .................................................................................... 10

*Vassallo v. Lando*,
591 F. Supp. 2d 172 (E.D.N.Y. 2008) ........................................................................... 25

*Vermont Right to Life Comm., Inc. v. Sorrell*,
221 F.3d 376 (2d Cir. 2000)........................................................................................... 13

*Village of Willowbrook v. Olech*,
528 U.S. 562 (2000)....................................................................................................... 24

*West v. American Tel. & Tel. Co.*,
311 U.S. 223 (1940)....................................................................................................... 14

*Will v. Michigan Dep't of State Police*,
491 U.S. 58 (1989)......................................................................................................... 14

*Wilton v. Seven Falls*,
515 U.S. 277 (1995)......................................................................................................... 2

*Youell v. Exxon Corp.*,
74 F.3d 373 (2d Cir. 1996) .... 14

*Younger v. Harris*,
401 U.S. 37 (1971) .... 1

**CONSTITUTIONS**

U.S. Const., amend. V .... 15
U.S. Const., amend. XIV .... 15

**FEDERAL STATUTES**

42 U.S.C. § 1983 .... 14

**STATE STATUTES**

Emergency Tenant Protection Act
§ 2 .... 27
§ 4 .... 3
§ 5 .... 27

Rent Stabilization Law
§ 26-501 .... 3
§ 26-504(b) .... 4
§§ 26-510(a)-(b) .... 4
§ 26-511(b) .... 3
§ 26-511(c)(6) .... 4
§ 26-511(c)(13) .... 4
§ 26-511(6-a) .... 4
§ 26-504 .... 4
§ 26-516 .... 3

**REGULATIONS**

9 N.Y.C.R.R.
§§ 2520-31 .... 3
§ 2520.11(e) .... 4, 5, 6, 20, 21
§ 2522.4 .... 4
§ 2522.6 .... 4
§ 2526.1 .... 4

**RULES**

Fed. R. Civ. P. 12(b)(6) .... 8

**OTHER AUTHORITIES**

Statement, Rent Stabilization Code, at 14, *available at*
https://tinyurl.com/6y2bsdf4 (last visited July 17, 2026) ..........................................................5
*In the Matter of Greenbrook Holding LLC*, Assurance No. 22-064............................................ 25
Operational Bulletin 95-2 ..................................................................................... 4, 6, 20, 21
Operational Bulletin 2023-3 ................................................................................................ 5, 6

## PRELIMINARY STATEMENT

In this action, Plaintiffs Peak Capital Advisors, LLC ("Peak") and 31 Peak-affiliated owners, along with Balanced Housing Solutions, an association they formed (collectively "Plaintiffs") are suing defendant RuthAnne Visnauskas, in her official capacity as the Commissioner of the New York State Division of Housing and Community Renewal ("DHCR"), to enjoin DHCR's enforcement of the State's rent stabilization laws. Plaintiffs seek money damages and an order enjoining a pending enforcement action brought by DHCR and the New York State Attorney General's Office ("OAG") in state court. In the state court action, DHCR and OAG ("the State") allege that Peak and its affiliates unlawfully deregulated 159 rent-stabilized apartments in 31 buildings and engaged in fraudulent and deceptive business practices. The state court action alleges that the apartments in question do not qualify as exempt from rent stabilization under the substantial rehabilitation exemption—a narrow exemption from rent stabilization for seriously deteriorated buildings that were rehabilitated to be made habitable. In this Court, Plaintiffs allege that the State's ongoing enforcement action constitutes a regulatory taking as applied to the individual property owner Plaintiffs, and violates due process and equal protection.

Plaintiffs' claims are uniformly meritless and this Court should dismiss the Amended Complaint in its entirety. *First*, precedents require this Court to abstain from hearing this action in deference to the ongoing state court proceedings under *Younger v. Harris*, 401 U.S. 37 (1971). The state action is the prototypical state-initiated civil enforcement proceeding that warrants *Younger* abstention. The exceedingly rare step of federal-court intervention is unwarranted here because, among other reasons, the state courts provide an adequate forum for consideration of Plaintiffs' constitutional claims and defenses. Plaintiffs' criticisms of the State's investigation and enforcement of state law do not come close to meeting the stringent standards for invoking the bad faith exception to *Younger.* Abstention is also independently warranted under related abstention

principles to avoid a premature decision on federal constitutional law where the state court's decision in the pending state action may obviate the federal questions, and to avoid wasteful and duplicative litigation.

*Second*, the Eleventh Amendment bars Plaintiffs' claim for money damages from a state official sued in her official capacity in federal court. And no prospective injunctive relief is available for Plaintiffs' regulatory takings claim as avenues exist in state court for Plaintiffs to recover for any alleged taking of property.

*Third*, Plaintiffs' as-applied regulatory takings claim is not ripe for adjudication because there has been no final administrative or judicial determination of the rent-stabilized status of the subject apartments and because, as Plaintiffs acknowledge, the extent of the economic impact of DHCR's enforcement is currently "unknown." Even were the takings claim ripe, it would fail under decades of settled precedents which have consistently rejected the types of economic harm alleged here—loss of market rents, investments, and profits—as insufficient to constitute a regulatory taking. Nor do Plaintiffs' allegations plausibly establish that DHCR's enforcement of relevant exemption requirements interferes with reasonable investment-backed expectations where Plaintiffs' purported expectations are premised on unreasonable and erroneous constructions of the applicable regulations and DHCR guidance.

*Fourth*, Plaintiffs' due process claims should be dismissed as impermissibly duplicative of their takings claim, and they also fail on the merits. The state action does not violate due process as it is based on DHCR's reasonable application of the substantial rehabilitation exemption and furthers the State's important interests underlying the rent stabilization laws.

*Finally*, Plaintiffs cannot state a plausible equal protection claim by relying on allegations that a different actor investigated for different violations was treated differently than Plaintiffs.

## STATEMENT OF THE CASE

### I. Statutory and Regulatory Framework

In New York City, the laws and regulations governing the rent stabilization system are the Emergency Tenant Protection Act of 1974 ("ETPA"), the Rent Stabilization Law ("RSL"), and the Rent Stabilization Code ("RSC").[1] The New York Legislature enacted ETPA and RSL to address a persistent and acute housing crisis in New York City. *See* Ch. 576, § 4, 1974 N.Y. Laws 1510, 1512-33 (codified as amended at RSL § 26-501). Upon finding that "a substantial number of persons" were "being charged excessive and unwarranted rents," the Legislature concluded that government intervention into rent-setting was necessary to prevent the exaction of unreasonable rents and rent increases and to "forestall profiteering [and] speculation." ETPA § 2; RSL § 26-501.

DHCR is the state agency responsible for administering and enforcing the State's rent stabilization laws. ETPA § 10(a). Pursuant to this authority, DHCR promulgates regulations implementing the ETPA and the RSL, *see* 9 N.Y.C.R.R. pts. 2520-31, and written guidance clarifying its interpretation of the rent stabilization laws it is responsible for administering and enforcing. RSL § 26-511(b). DHCR also issues administrative orders enforcing the rent stabilization laws. *Id.* § 26-516(b). DHCR's administrative determinations frequently occur in the context of tenant challenges of rents, where DHCR acts in an adjudicatory capacity based on evidence presented by the parties. *Id.* § 26-516(a). Its determinations are subject to administrative review within DHCR, *id.* § 26-516(i), and thereafter to judicial review under CPLR article 78.

Under the State's rent stabilization laws, all rental buildings in New York City built before 1974 with six or more units are subject to rent stabilization unless one of several limited statutory

[1] The RSL is codified at New York City Administrative Code §§ 26-501 to 26-520. The ETPA, which principally governs rent stabilization outside of New York City, is codified at Chapter 1974 of the Unconsolidated Laws of New York. And the RSC is found at Title 9, Subtitle S, Chapter VIII of the New York Codes, Rules and Regulations.

exemptions applies.[2] ETPA § 5, RSL § 26-504(b). The Legislature enacted a narrow exemption to rent stabilization that allows owners to deregulate apartments (including by charging market rents) in residential buildings that have been "substantially rehabilitated" ("substantial rehab exemption" or "SRE"). *Id.* "The basic purpose of the exemption is to increase the number of habitable units available to the residents of [New York City]" and "to encourage rehabilitation of dilapidated and basically uninhabitable housing stock." *Matter of Eastern Pork Prods. Co. v New York State Div. of Hous. & Cmty. Renewal*, 187 A.D.2d 320, 324 (1st Dep't 1992).

In 1987, pursuant to its statutory authority, DHCR promulgated regulations setting forth the requirements to qualify for the SRE. *See* 9 N.Y.C.R.R. § 2520.11(e) (1987). Those regulations provided that building owners must demonstrate: (1) that they replaced at least 75 percent of building-wide and individual housing accommodation systems (e.g., roofs, windows, kitchens, electrical and heating systems, stairs); and (2) that the rehabilitation was commenced "in a building that was in a substandard or seriously deteriorated condition." *Id.* § 2520.11(e)(2).

In 1995, DHCR clarified the criteria for the SRE by issuing Operational Bulletin ("OB") 95-2. The bulletin made clear that owners had the burden of demonstrating their entitlement to the exemption "based upon the totality of the circumstances." OB 95-2 at 2. The bulletin also set forth examples of the types of records that owners "will be required" to provide "in support of a claim of substantial rehabilitation." *Id.* at 3. These include records pertaining to the pre-rehabilitation

[2] Rent-stabilized apartments in New York City are permitted annual rent adjustments as determined by the independent Rent Guidelines Board, a nine-person body composed of property owners, tenants, and the public. RSL § 26-510(a)-(b). Property owners who believe that standard rent adjustments fail to afford them a reasonable income may apply to DHCR for a hardship exemption permitting larger increases. *See* RSL § 26-511(c)(6), (6-a); RSC § 2522.4(b)-(c). In addition, the RSL permits landlords to increase stabilized rents if they make renovations to individual apartments, called individual apartment improvements, or if they undertake major capital improvements in rent-stabilized buildings (short of meeting the more stringent standards for a "substantial rehabilitation"). *See* RSL § 26-511(c)(6), (13).

condition of the buildings, for example, “architect’s or general contractor’s statements,” and “photographs of conditions before, during, and after the work was performed.” *Id*. Based on the premise that a building that is in a sufficiently “seriously deteriorated” and thus uninhabitable condition is likely to be largely vacant, DHCR also established a rebuttable “presumption” of a building’s “substandard or seriously deteriorated condition” “[w]here the rehabilitation was commenced in a building in which at least 80 percent of the housing accommodations were vacant of residential tenants.” *Id.* at 2. As DHCR explained, proof of a building’s vacancy prior to rehabilitation “shall, *in addition to*” the owner’s records pertaining to the building’s condition and the rehabilitation work “constitute evidence of whether the building was in fact in [seriously deteriorated] condition” so as to qualify for the SRE. *Id.* (emphasis added). In 2000, DHCR set forth the evidentiary presumption in regulation. *See* 9 N.Y.C.R.R. § 2520.11(e)(3) (2000).

In November 2023, following public notice and comment, DHCR amended its regulations by, among other things, eliminating the 80% vacancy evidentiary presumption. *See* 9 N.Y.C.R.R. § 2520.11(e) (2023). The basis for this change was DHCR’s conclusion, based on decades of experience administering the exemption, that the vacancy rate was not a reliable indicator of a building’s physical condition, was easily manipulated by owners, and “seemingly rewards keeping units off the market.” *See* DHCR Regulatory Impact Statement, RSC, at 14, *available at* https://tinyurl.com/6y2bsdf4 (last visited July 17, 2026). The amendments were made to “reinforc[e] the substantial rehabilitation regulatory requirement[s] by stating [them] more explicitly.” *Id.* at 15. DHCR thereafter updated its guidance in accordance with the regulatory change. *See* OB 2023-3 (Nov. 21, 2023).

In 2023, the Legislature amended the ETPA to provide that an owner who commences a substantial rehabilitation project after January 1, 2024 is required to submit an application to

DHCR within one year of completing the project and obtain an administrative determination from DHCR approving the exemption.[3] ETPA § 5(a)(5). Although owners were not required to apply for a DHCR determination in order to claim the SRE prior to 2024, the governing regulations long permitted owners to "apply to the DHCR for an advisory prior opinion that the building will qualify for exemption from rent regulation on the basis of substantial rehabilitation," so as to avoid the possibility of a DHCR finding that a building did not qualify after the rehabilitation was done. *See* 9 NYCRR § 2520.11(e)(8) (2000). Both before and after 2023, DHCR guidance made clear that property owners bore the burden of demonstrating, "based upon the totality of the circumstances," that their properties met the criteria for the substantial rehabilitation exemption if their claim to the exemption was challenged. *Compare* OB 95-2 at 2 *with* OB 2023-3 at 2.

## II. Procedural History

### A. The State's Investigation

In 2023, after receiving tenant complaints, DHCR, in conjunction with OAG's Housing Protection Unit, began investigating a spate of deregulations of presumptively rent-stabilized apartments in New York City based on the substantial rehabilitation exemption. *See* AC (ECF No. 14) ¶ 139 (referencing a years-long investigation). That investigation revealed that a real estate development company, Peak, had with affiliated investors purchased dozens of rent-stabilized buildings and shortly thereafter deregulated apartments in those buildings purportedly based on the SRE. *See* Compl. in *State v. Peak Capital Advisors, LLC, et al.*, Index No. 453503/2025 (Sup. Ct. N.Y. Cnty. 2025), NYSCEF Doc. No. 1 ("State Compl.") ¶ 1. Documents obtained by OAG and DHCR in their investigation, including appraisal reports, property condition assessments, and photographs of the subject buildings, however, demonstrated that the buildings were in good,

[3] The 2023 statutory and regulatory amendments are not implicated in the instant suit as they are not the basis of the underlying state enforcement action challenged by Plaintiffs.

average, or fair—not seriously deteriorated—conditions when Peak and its affiliates purchased and renovated them, and thus were not exempt from rent stabilization pursuant to the SRE. *See, e.g.*, State Compl. ¶¶ 152-158, 184-185.

**B. The Instant Federal Action and the Related State Enforcement Action**

In the midst of ongoing discussions about resolving the State's investigations,[4] in order to forestall DHCR's "imminent" enforcement action (*see* Compl. (ECF No. 1) ¶ 22), Plaintiff Balanced Housing Solutions ("BHS"), an association formed by Peak and its affiliated property owners,[5] filed the instant federal action on November 25, 2025 seeking declaratory and injunctive relief including, among other things, an order enjoining the state action. *Id.* pp. 38-39. Commissioner Visnauskas, sued in her official capacity, is the sole defendant in this action.

On December 1, 2025, in the culmination of their years-long investigation, DHCR and OAG commenced their enforcement action against Peak, Peak principals and officers, and 31 Peak-affiliated property owners in state court. The state court action alleges that 159 apartments located in 31 buildings purchased by Peak and its affiliates were improperly deregulated. State Compl. ¶ 89; AC ¶ 38. The State charges Peak and its affiliates with fraud, deceptive business practices, and violations of the State's rent stabilization laws arising out of a pattern of unlawfully deregulating buildings and apartments when the buildings did not qualify for the SRE. *See* State Compl. ¶¶ 1-4. The state action seeks injunctive relief and damages, disgorgement of ill-gotten

---

[4] *See* Tr. of Premotion Conf. 31:14-32:9 (Mar. 23, 2026).

[5] BHS originally proceeded as the sole plaintiff and did not identify any of its members. Compl. ¶ 19. response to DHCR's pre-motion conference request in this case, BHS amended its complaint to, among other things, add as individual plaintiffs Peak and the Peak-affiliated owners who are defendants in the state court action. *See* AC ¶¶ 37-38.

The Amended Complaint also disclosed that BHS's only members are "the 31 LLC Plaintiffs … who own the buildings targeted by DHCR's" enforcement action. AC ¶ 36.

gains, restitution, penalties, and other equitable relief. *Id.* at 67-69.

The gist of Plaintiffs' allegations is that DHCR and OAG are impermissibly seeking to retroactively apply to Plaintiffs a purportedly "new" interpretation of the RSL: that an 80% vacancy rate achieved through tenant buyouts is not dispositive of a building's eligibility for the SRE. Based on this premise, Plaintiffs claim that the State's enforcement action constitutes a regulatory taking as applied to its members (Count I), and violates substantive and procedural due process (Counts II and III). *Id.* ¶¶ 194-228. The Amended Complaint also asserts a "class of one" equal protection claim, alleging that DHCR has unlawfully singled Plaintiffs out for disparate treatment (Count IV). *Id.* ¶¶ 230-242. Plaintiffs seek declaratory relief and an order from this Court enjoining the pending state enforcement action. *Id.* at 98 ¶¶ A-F. Plaintiffs also seek compensatory damages for the alleged takings of their property and other purported economic injuries. *Id.* at 99-100 ¶¶ G-H.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the pleading must contain sufficient factual allegations to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is "plausible on its face" when it is supported by enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). In the context of a Rule 12(b)(6) motion, courts must generally accept all well-pled factual allegations as true but need not credit conclusory statements or legal conclusions. *See Iqbal*, 556 U.S. at 678. Courts may consider documents integral to the complaint, and those relied on by plaintiff in bringing suit in resolving a Rule 12(b) motion. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

# ARGUMENT

## I. THE COURT SHOULD ABSTAIN FROM ADJUDICATING THIS CASE

### A. Irrespective of the Merits, Abstention is Required Under *Younger*

*Younger* abstention aims to avoid federal-court interference with ongoing state proceedings that serve important state interests. The doctrine is rooted in "principles of equity, comity, and federalism," *Gibson v. Berryhill*, 411 U.S. 564, 575 (1973), and is predicated on the fundamental assumption that "ordinarily a state proceeding provides an adequate forum for the vindication of federal constitutional interests," *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994).

*Younger* abstention is presumptively warranted in three categories of cases, including, as relevant here, "civil enforcement proceeding[s]." *Sprint Commc'n, Inc. v. Jacob*s, 571 U.S. 69, 78 (2013). A "civil enforcement proceeding" is one initiated by "a state actor," following "an investigation," to "sanction" the party challenging the state action "for some wrongful act." *Id.* at 79. For cases warranting abstention under *Sprint's* categorical approach, courts may also consider the "additional factors" bearing on abstention identified in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982). *See Falco v. Justices of the Matrimonial Parts of Supreme Court of Suffolk* County, 805 F.3d 425, 427 (2d Cir. 2015). The *Middlesex* factors are (1) whether there is a pending state proceeding (2) implicating an important state interest (3) that "affords the federal plaintiff an adequate opportunity for judicial review" of the plaintiff's federal claims. *Falco*, 805 F.3d at 427.

The pending state court action is the prototypical civil enforcement proceeding requiring abstention under *Sprint*. Here, DHCR and OAG, two state agencies, commenced the pending state enforcement proceeding against Peak and Peak-affiliated owners following an investigation, alleging violations of the State's rent stabilization and anti-fraud laws. *See, e.g.*, *Amazon.com, Inc. v. James*, No. 21-cv-767 (BMC), 2021 WL 3516382, *4 (E.D.N.Y. Aug. 10, 2011) (OAG's

enforcement action charging labor law violations satisfies *Sprint* test). Any suggestion that *Younger* does not apply outside the criminal context is flatly refuted by decades of binding precedents. *See, e.g.*, *Middlesex*, 457 U.S. at 432 ("The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved"; attorney disciplinary proceedings); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 595-97, 607-11 (1975) (civil action to enforce obscenity laws); *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 194-97 (2d Cir. 2002) (civil proceeding for labor law violations).

The *Middlesex* factors likewise favor abstention. The pending state action seeks to vindicate the "important public interests" underlying the State's rent stabilization laws, which the Second Circuit recognized were enacted "to prevent 'serious threats to the public health, safety and general welfare.'" *See Community Hous. Improvement Prog. v. City of N.Y.*, 59 F.4th 540, 556 (2d Cir. 2023) ("CHIP"); *Amazon.com, Inc.*, 2021 WL 3516382, at *5 (enforcement of state laws by state actors "goes to a fundamental interest of the state as a sovereign"). And despite their unsupported allegation that the "State Action is not a neutral forum," (AC ¶ 16), Plaintiffs cannot credibly dispute that they will have a full and fair opportunity to raise their constitutional claims and defenses in the state court. *See, e.g.*, *Middlesex*, 457 U.S. at 437; *Juidice v. Vail*, 430 U.S. 327, 337 (1977) (opportunity to raise federal claims in state proceedings sufficient to invoke *Younger* abstention); *Toczek v. Alvord*, 841 F. App'x 263, 267 (2d Cir. 2021) (same). Accordingly, this Court should dismiss this action in deference to the parallel ongoing state court proceeding.

### B. Plaintiffs Fail to Demonstrate Bad Faith Sufficient to Evade *Younger*

Plaintiffs have utterly failed to establish the bad faith that would support an exception to *Younger.* As the Second Circuit has explained, application of the "narrow" bad faith exception to *Younger* is demanding: to invoke it, one must demonstrate that the "party bringing the state action [has] no reasonable expectation of obtaining a favorable outcome," or that the state proceeding

was "brought to retaliate for or deter constitutionally protected conduct . . . or for the purpose to harass." *Cullen*, 18 F.3d at 103-04 (quotation marks omitted). It is the "subjective motivation of the state authority in bringing the proceeding [that] is critical to, if not determinative of, this inquiry." *Diamond "D" Constr.*, 282 F.3d at 199. A plaintiff does not satisfy these stringent standards by relying on bare and conclusory allegations of bias. *Kirschner v. Klemons*, 225 F.3d 227, 236 (2d Cir. 2000); *Schorr v. DoPico*, 686 F. App'x 34, 37 (2d Cir. 2017) (summary order).

The Amended Complaint's conclusory allegations fall far short of the showing needed for the "tightly defined" "bad faith" exception to abstention. *See Diamond "D" Constr.*, 282 F.3d at 197. First, plaintiffs have not alleged the State's investigation—which commenced in 2023 (State Compl. ¶ 217; AC ¶ 139) and culminated in the filing of the state enforcement action—was "brought . . . [based on] a retaliatory motive or . . . some other nefarious purpose." *See Diamond "D" Constr.*, 282 F.3d at 200. Plaintiffs' suggestion of bad faith based on the filing of the state action six days after the federal complaint (*see* AC ¶ 138) is insufficient to establish the "very narrow" bad faith exception. *See Amazon.com, Inc.* 2021 WL 3516382 at *4-5 (rejecting argument for bad faith exception and applying *Younger* to dismiss a federal complaint filed four days before a state enforcement proceeding). Rather, where, as here, the State's investigation and enforcement action were "undertaken pursuant to [their] statutory duties" under New York law, *see id.*, the state action involves merely "a straightforward enforcement of the laws of New York," s*ee Schlagler v. Phillips*, 166 F.3d 439, 443 (2d Cir. 1999), and not the implementation of a personal vendetta. *See, e.g.*, *Diamond "D" Constr.*, 282 F.3d at 199; *Augustin v. Digirolamo*, No. 25-cv-3332 (NCM), 2025 WL 2689598, *6 (E.D.N.Y. Sept. 9, 2025) (absence of allegations about defendants' "subjective motivations" is dispositive).

Second, Plaintiffs fail to show that DHCR and OAG have "no reasonable expectation of

obtaining a favorable outcome" in the state court proceeding. *See Cullen*, 18 F.3d at 103; *Diamond "D" Constr.*, 282 F.3d at 199. Indeed, there has been no "conclusive determination" by any court—let alone by the "the New York Court of Appeals or the United States Supreme Court"—that supports Plaintiffs' interpretation of the SRE requirements or otherwise rejects the State's competing arguments. *See Schlagler*, 166 F.3d at 443.

In this case, Plaintiffs' claims of "bad faith" on the part of DHCR consists of complaints that DHCR (and OAG): (1) failed to plead in the state court complaint potential defenses the state court defendants may assert or sufficient details about their alleged wrongdoing (*e.g.*, AC ¶¶ 141-142, 159(g), 160(g)); and (2) "wholly ignored exculpatory evidence [DHCR] collected during its investigation" (*id.* ¶ 152). These criticisms of the State's investigation and complaints about alleged deficiencies of the state pleading are insufficient to establish bad faith. Even if there were flaws in the investigation—and refusing to credit certain evidence is not a flaw—the Second Circuit has made clear that flaws in the conduct of a governmental investigation do not constitute bad faith. *See Diamond "D" Constr.*, 282 F.3d at 195-97 (rejecting bad faith claim concerning labor law investigation premised on "inscrutable methods," erroneous assumptions and calculations, and unreliable documents); *Amazon.com, Inc.*, 2021 WL 3516382, *6 (applying *Younger* in dismissing complaint containing similar allegations of "bad faith" by OAG).

### C. The Court Should Also Abstain Based on *Pullman* and *Wilton*

Consideration of the principles underlying other abstention doctrines likewise independently favor abstention. *See Railroad Comm'n. of Texas v. Pullman Co.*, 312 U.S. 496 (1941); *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). First, *Pullman* abstention is warranted here to avoid a "premature decision on questions of federal constitutional law." *Expressions Hair Design v. Schneiderman*, 808 F.3d 118, 137 (2d Cir. 2015). As the Second Circuit has explained, abstention may be appropriate under *Pullman* where "unsettled questions of state law must be

resolved before a substantial federal constitutional question can be decided," and the state law "is susceptible to an interpretation by a state court that would avoid or modify the federal constitutional issue." *Vermont Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 384-85 (2d Cir. 2000).

The central dispute in the state court action—which is the focus of the federal claims—is the proper application of the SRE under the RSL. Whether the State's rent stabilization laws apply to certain apartments is a question of state law that should be answered by the state courts. *See Federal Home Loan Mortg. Corp. v. New York State Div. of Hous. & Community Renewal*, 83 F.3d 45, 47 (2d Cir. 1996) ("FHLMC") (certifying questions of rent-stabilized status of property to New York Court of Appeals). The state courts may construe the SRE in ways that would obviate the federal constitutional claims. For example, if the state court finds that Plaintiffs' properties qualified for the SRE and were properly deregulated, Plaintiffs' takings and due process claims would be moot. Because "a state court determination" of the proper application of the State's rent stabilization laws will "likely resolve or modify the federal constitutional issue[s]," this Court should abstain to avoid a potentially unnecessary constitutional ruling. *See, e.g.*, *Nov. Team, Inc. v. New York State Joint Comm'n on Pub. Ethics*, 233 F. Supp. 3d 366, 372 (S.D.N.Y. 2017).

Similar considerations to those warranting dismissal under *Younger* and *Pullman* also separately counsel for abstention under *Wilton*. In *Wilton*, the Supreme Court held that federal courts should use the "unique and substantial discretion" conferred upon them by the Declaratory Judgment Act, 28 U.S.C. § 2201(a), to decline to hear declaratory judgment actions where there are parallel state proceedings that can satisfactorily resolve all of the parties' claims and defenses. *Wilton*, 515 U.S. at 286. This abstention doctrine is grounded in concerns for avoiding "wasteful and duplicative litigation," *Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998), and

potentially '"gratuitous interference"' with pending state-court proceedings addressing '"the same state law issues"' involving the same parties, *Youell v. Exxon Corp.*, 74 F.3d 373, 376 (2d Cir. 1996) (alteration marks and emphasis omitted) (quoting *Wilton*, 515 U.S. at 283). In determining whether to abstain under *Wilton*, courts may consider whether the federal declaratory judgment action is being used as a means of forum shopping. *See Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359-60 (2d Cir. 2003) (per curiam).

*Wilton* abstention is appropriate over the instant suit. As explained above, entertaining this action will require this Court to construe state law and resolve questions of the proper scope and application of the SRE to the rent stabilization laws—a result that runs contrary to longstanding federal deference to state courts to determine state-law questions. *See West v. American Tel. & Tel. Co.*, 311 U.S. 223, 236-37 (1940); *cf. Dittmer*, 146 F.3d at 118 (declining to abstain where federal action "involves issues of federal law only"). The Court should thus abstain.

## II. THE ELEVENTH AMENDMENT BARS PLAINTIFFS' CLAIMS FOR MONETARY RELIEF

Were the Court not to abstain, it should dismiss all of Plaintiffs' claims for monetary relief. Absent a State's express waiver or an act of Congress, the Eleventh Amendment bars federal courts from adjudicating claims against a State, as well as its agencies and agents. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). This "jurisdictional bar" applies "regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The only exception is for claims for prospective relief in official-capacity suits against state officials for ongoing violations of federal law. *Ex Parte Young*, 209 U.S. 123, 159-60 (1908). Applied here, the Eleventh Amendment bars Plaintiffs' § 1983 claims for damages (AC at 99-100) against Commissioner Visnauskas, regardless of whether those claims sound in takings, due process, or equal protection. *E.g.*, *Community Hous. Improvement Prog. v. City of N.Y.*, 492 F. Supp. 3d 33,

39-42 (E.D.N.Y. 2020) (Komitee, J.) ("CHIP I") (dismissing due process and takings claims against DHCR on Eleventh Amendment grounds); *74 Pinehurst LLC v. New York*, 59 F.4th 557, 570 (2d Cir. 2023) (Takings Clause does not abrogate sovereign immunity); *Blakeman v. James*, No. 24-cv-1655 (NJC), 2024 WL 3201671, at *7-10 (E.D.N.Y. Apr. 4, 2024) (equal protection claim barred). In sum, sovereign immunity bars Plaintiffs' claims for money damages from the State asserted in federal court; any claim for money damages against the State must proceed in state court. *See, e.g.*, *Reich v. Collins*, 513 U.S. 106, 110 (1994).

## III. PLAINTIFFS' AS-APPLIED REGULATORY TAKINGS CLAIM FAILS

The Takings Clause of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amends. V, XIV, § 1. Plaintiffs claim that the pending enforcement action to enjoin Plaintiffs' continuing violation of rent stabilization laws with respect to 159 apartments across 31 buildings they own constitutes a regulatory taking as applied to each property owner Plaintiff. *See* State Compl. ¶¶ 89. But even assuming that an ongoing enforcement action can constitute a regulatory taking to begin with, Plaintiffs' takings claim is meritless.

### A. As a Threshold Matter, the Takings Claim is Not Ripe

As the Second Circuit has repeatedly explained, "a claim that a regulation effects an as-applied taking cannot be properly adjudicated until there is no question about how the regulations at issue apply to the particular property in question." *74 Pinehurst*, 59 F.4th at 565 (cleaned up). The governmental action challenged in this case is DHCR's enforcement action, which alleges that Plaintiffs' apartments were improperly deregulated under state law. AC ¶¶ 204-207. But the pending enforcement action, which concerns 159 apartments, each with a different rent, and 31 different buildings, each with different operating expenses, State Compl. ¶ 89; AC ¶¶ 159-189, has not proceeded beyond a motion to dismiss. There has been no determination of (1) whether each

unit or building is subject to rent stabilization; and (2) for any apartment found to be subject to rent stabilization, what the regulated rent will be.[6] And notably, in the meantime, no administrative or court order has been issued preventing Plaintiffs from continuing to collect market rents. Nor have Plaintiffs alleged that they have applied for hardship exemptions or exhausted means to obtain any other variances from regulated rent that may apply—thereby rendering their claims unripe. *See 74 Pinehurst*, 59 F.4th at 565; *Building & Realty Inst. of Westchester and Putnam Cntys., Inc. v. New York*, No. 21-2526, 2024 WL 1061142, at *3-4 (2d Cir. Mar. 12, 2024). Indeed, as Plaintiffs acknowledge, "the complete extent of damages resulting from the State's [action] to re-regulate the propert[ies] is unknown[.]" AC ¶¶ 162(f), 171(f), 185(c). That concession alone compels the dismissal of Plaintiffs' regulatory takings claim.

**B. Putting Aside Ripeness, Plaintiffs Cannot State a Regulatory Takings Claim**

Even if ripe, Plaintiffs are not entitled to injunctive relief—the primary relief they seek—with respect to their takings claims. *Knick v. Township of Scott, Pa.*, 588 U.S. 180, 201 (2019) (injunctive relief generally unavailable in takings cases). As an initial matter, no part of the RSL or its implementing regulations constitutes a taking. In any event, the Takings Clause does not prevent the government's taking of private property—only uncompensated takings. It thus follows that where, as here, "an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking." *Id.* Plaintiffs' remedy for any purportedly unlawful taking would lie, if at all, in a claim for compensatory damages in state court.

Plaintiffs' regulatory takings claim also fails on the merits. Regulatory takings analysis is

[6] Under the RSL, upon a judicial or administrative finding that an apartment was improperly deregulated, the owner must bring an apartment into compliance with rent stabilization laws by, inter alia, resetting the unlawful rent to a legal regulated rent. The methodology for determining a legal regulated rent is mandated by regulation, and must be calculated in one of several different ways set forth in regulation depending on the particular circumstances of the apartment at issue. *See, e.g.*, 9 N.Y.C.R.R. §§ 2522.6, 2526.1(a)(3), 2526.7(a), (c).

designed, in large part, to protect "the government's well-established power to adjust rights for the public good." *Murr v. Wisconsin*, 137 S. Ct. 1933, 1943 (2017). As the Supreme Court has long recognized, "'Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law.'" *Id.* (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 413 (1922)). Short of "a direct government appropriation or physical invasion of property," a compensable regulatory taking may occur where the governmental regulation regarding how private property may be used "goes too far" and is "so onerous that its effect is tantamount to a direct appropriation or ouster." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537-38 (2005). To determine whether a property owner has stated a regulatory takings claim, the Supreme Court in *Penn Central* developed a flexible, "ad hoc, factual inquir[y] focusing on three factors: (1) the economic impact of the regulation on the owner; (2) the extent to which the regulation interferes with reasonable, investment-backed expectations; and (3) the character of the governmental action. *See 74 Pinehurst*, 59 F.4th at 564-65 (quoting *Penn Cent. Transp. Co. v. City of N.Y.*, 438 U.S. 104, 124 (1978)).

Applying these factors, the Second Circuit has rejected "every regulatory-takings challenge" to the State's rent stabilization laws. *CHIP I*, 492 F. Supp. 3d at 45 (collecting cases rejecting challenges to the State's rent stabilization laws on takings, due process, and equal protection grounds). No different result is warranted in this case because all of the *Penn Central* factors weigh decidedly against Plaintiffs.

#### 1. <u>The Economic Effects of DHCR's Enforcement Do Not Give Rise to a Taking</u>

Plaintiffs' allegations of economic harm attributable to the State's pending enforcement action are plainly insufficient. In this case, the "property" that Plaintiffs allege will be taken through enforcement of the rent stabilization laws consists of "the rents, value, and economic benefits earned from [the] rehabilitations," AC ¶ 97, "their investment in the rehabilitated

buildings," *id.* ¶ 205, "reduce[d] budgeted 2026 net income,"[7] and unspecified reductions of property value, *e.g.*, *id.* ¶¶ 176(f), 179(f), 180(f), 182(f). But there is no constitutionally protected property interest in being able to collect market rents or to run a profitable enterprise. *See, e.g.*, *Park Ave. Tower Assocs. v. City of N.Y.*, 746 F. 2d 135, 139-40 (2d Cir. 1984); *Greystone Hotel Co. v. City of N.Y.*, 13 F. Supp. 2d 524, 528-89 (S.D.N.Y. 1998) ("no constitutional right to what [plaintiff] could have received in an unregulated market"). Notably, each type of economic harm alleged by Plaintiffs has been rejected as insufficient to support a regulatory takings claim under decades of consistent, binding precedents. *See, e.g.*, *74 Pinehurst*, 59 F.4th at 565-66 (loss of ability to collect market rents and deregulate apartments); *CHIP*, 59 F.4th at 554-55 ("elimination of net operating income"); *Park Ave. Tower Assocs.*, 746 F.2d at 139-40 ("loss of profit" and "loss of a reasonable return on investment").

Nor can the "mere diminution in the value of property, however serious," support a regulatory takings claim. *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 645 (1993) (collecting cases involving losses of 75% to 92.5% in property value); *Building. & Realty Inst.*, 2021 WL 4198332, *23 (collecting circuit cases finding losses of 75%, 81%, 83%, 92.5%, and 95% in property value insufficient). Plaintiffs do not allege losses anywhere near this magnitude; indeed, they do not allege any diminution in property value at all.

As relevant here, the Second Circuit has squarely held "that application of the Rent Stabilization Law" to subject a previously deregulated building to rent stabilization did not give rise to a regulatory taking where the owner maintained the ability to "rent apartments and collect

[7] According to Plaintiffs' own allegations, some of the properties will continue to generate positive net income even if they were reregulated. *See, e.g.*, AC ¶¶ 160(f), 161(f).

the regulated rents." *FHLMC*, 83 F.3d at 48 (collecting cases). Absent allegations that the governmental action challenged here—that is, the pending state action seeking to enforce the State's rent stabilization laws—"has rendered any property unusable for permitted purposes or otherwise unmarketable," there can be no viable regulatory taking claim. *74 Pinehurst*, 59 F.4th at 566; *accord Park Ave. Tower Assocs.*, 746 F.2d at 139 (no taking so long as "others might be interested in purchasing all or part of the [property] for permitted uses") (cleaned up).

### 2. **DHCR's Enforcement Does Not Interfere with Any Reasonable Investment-Backed Expectations**

As the Supreme Court has recognized, the reasonableness of owners' expectations is often the most significant consideration for a regulatory taking analysis. See *Lingle*, 544 U.S. at 538-39. This is so because compensation, if any, is meant to be limited to those who can "demonstrate that they bought their property in reliance on a state of affairs that did not include the challenged regulatory regime." *Allen v. Cuomo*, 100 F.3d 253, 262 (2d Cir. 1996) (quotation marks omitted).

Plaintiffs have alleged no such reliance. Plaintiffs claim that DHCR's pending enforcement action, which contends—based on evidence of pre-renovation conditions—that Plaintiffs' properties did not qualify for the SRE "interferes with Plaintiffs' reasonable, investment-backed expectations." Plaintiffs allege that they invested in renovating buildings based on their belief that a property's 80% vacancy rate (including where vacancies were achieved through tenant buyout agreements) *conclusively* qualified it for the rehabilitation exemption. They further claim that this belief derives from the language of DHCR's operational bulletin and is supported by a "consistent pattern of [DHCR administrative] decisions." AC ¶¶ 64-66, 77.

A plain reading of the applicable regulation and DHCR guidance relied on by Plaintiffs, however, does not support Plaintiffs' claims and demonstrates that Plaintiffs' expectations were not reasonable. Although the regulation in effect at the time Plaintiffs conducted their renovation

projects stated that an 80% vacancy rate gives rise to a *presumption* of a building's substandard or seriously deteriorated condition, nothing supports their view that that the presumption was irrebuttable or that DHCR was precluded from considering other evidence in determining whether the properties qualified for the SRE. To the contrary, DHCR's pre-2023 operational guidance cited by Plaintiffs expressly states that owners "will be required" to submit evidence and records pertaining to the building's condition and rehabilitation—"in addition to" vacancy evidence—in support of a SRE claim. *See* OB 95-2 at 2. DHCR's guidance was also explicit that the agency's determination of whether a building satisfied the SRE criteria would be "based upon the totality of the circumstances." OB 95-2 at 2-3; 9 NYCRR § 2520.11(e)(9).

Plaintiffs' mistaken assertion that DHCR's pending enforcement action represents a retroactive policy change of eliminating the vacancy presumption (*see* AC ¶¶ 7, 31-35, 136) does not further their takings claim. These allegations fundamentally misunderstand DHCR and OAG's enforcement action, which is not predicated on disallowing the vacancy presumption or buyouts. Rather, as the state complaint explains, DHCR and OAG intend to rely on evidence of the pre-renovation conditions of Plaintiffs' buildings to show that they were not in the substandard or seriously deteriorated conditions required to qualify for the SRE, regardless of their vacancy rate or how vacancy was achieved. *See* State Compl. ¶¶ 94, 112, 147-149, 153, 179, 183, 185 (detailing proofs consisting of appraisal reports, property condition assessments, and Plaintiffs' own statements about the buildings' non-seriously deteriorated conditions made to insurers and lenders). Thus, DHCR's enforcement action does not depend on retroactively invalidating the vacancy presumption and the use of tenant buyout agreements as Plaintiffs erroneously claim (AC ¶¶ 32-33); rather, DHCR simply seeks to apply the RSL and relevant regulations in effect at the time of Plaintiffs' purchases and renovations. Neither the bulletin nor the applicable regulations

support Plaintiffs' expectation of any "safe harbor" or guarantee of eligibility for the SRE based solely on vacancy rates (AC ¶¶ 23, 25-26). The only "safe harbor" provided under regulation and DHCR guidance was the option for owners to apply to DHCR for "an advisory prior opinion that the building will qualify for the [SRE] . . . based upon the owner's rehabilitation plan." 9 N.Y.C.R.R. § 2520.11(e)(8); *see also* OB 95-2 at 3 ("encourag[ing]" owners to apply for advisory opinion before commencing rehabilitation, as "DHCR recognizes the very significant financial commitment that a substantial rehabilitation necessitates"). But Plaintiffs do not allege that they ever availed themselves of this option.

Plaintiffs also incorrectly allege that the bulletin provided that the vacancy presumption could be rebutted on "two—and only two—grounds"—namely, when the vacancy was secured through arson or harassment (AC ¶ 73). This cannot be squared with the text of the regulation and guidance, which nowhere suggest that these grounds are exclusive or in any way limit DHCR's ability to consider (or require) other evidence in determining a building's eligibility for the SRE. *See generally* OB 95-2; 9 N.Y.C.R.R. § 2520.11(e)(4), (9). That DHCR may have, in its adjudicatory capacity, issued administrative orders upholding SREs against tenant challenges based on vacancy rates—in the absence of other evidence proffered by the parties in those cases—likewise does not support Plaintiffs' contention that DHCR was precluded from considering other evidence, or that vacancy rate alone ever constituted conclusive proof of a building's seriously deteriorated condition.[8]

---

[8] Plaintiffs allege that DHCR previously exempted 80% vacant properties regardless of the building's previous condition or whether the vacancy was achieved through tenant buyouts. *See* AC ¶ 29. But the cases Plaintiffs cite do not support this assertion. Instead, those cases merely sustained exemptions based on vacancy against tenant challenges where contrary evidence of the building's pre-rehabilitation condition was not offered. *See, e.g.* AC ¶ 77 n.21 (*Admin. Appeal of Various Tenants of 445 17th Street*, Dkt. No. SE210086RT (2004)). And other cases cited by Plaintiffs in fact demonstrate that DHCR has historically relied on other evidence of pre-renovation

Nor is there support for Plaintiffs' bald allegation that DHCR is retroactively imposing a new "uninhabitability" requirement (AC ¶ 34). To the contrary, authorities have long recognized that the SRE required the rehabilitation of basically uninhabitable buildings. *See, e.g.*, *Matter of Eastern Pork Prods. Co.*, 187 A.D.2d at 324 (purpose of SRE is to "encourage rehabilitation of dilapidated and *basically uninhabitable* housing stock) (emphasis added); *446 Realty Co. v. Higbie*, 186 Misc. 2d 632, 637 (Civ. Ct. N.Y. Cnty. 2000) (SRE is for landlords to "rehabilitate a building to create *habitable* apartments for residential use") (emphasis added); *81 Russell St. Assoc. v. Scott*, 1993 N.Y.L.J. LEXIS 13, *10 (Civ. Ct. Kings Cnty. Aug. 25, 1993) ("To qualify for the [sub rehab] exemption, the work . . . must be needed to repair substandard and *uninhabitable* buildings") (emphasis added). In the face of these authorities, Plaintiffs' purported expectations to the contrary are plainly not reasonable and cannot support any regulatory takings claim.

### 3. <u>The Nature of DHCR's Enforcement is Inconsistent with a Taking</u>

"The Supreme Court has instructed that in analyzing the 'character' of the governmental action, courts should focus on the extent to which a regulation was 'enacted solely for the benefit of private parties' as opposed to a legislative desire to serve "important public interests." *CHIP*, 59 F.4th at 555 (quoting *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 485–86 (1987)). Here, the challenged action is DHCR and OAG's enforcement of the RSL. Courts have repeatedly held that the RSL implicates important public interests and thus does not constitute a regulatory taking. *See, e.g., 74 Pinehurst*, 59 F.4th at 568; *CHIP*, 59 F.4th at 555.

Plaintiffs allege that the state enforcement action "is undertaken solely for the benefit of

---

condition to uphold exemption. *E.g.* AC ¶ 77 n. 23 (*Matter of Cholakian*, Dkt. No. VG210054RO (2008) (architect affidavit of building condition)), n. 25 (*Matter of Amos Fisher*, Dkt. No. DT210040RT at 17 (2016) (contractor affidavit and photographs credibly demonstrated building was seriously deteriorated prior to rehabilitation)); AC ¶ 95 n. 24 (*Admin. Appeal of Various Tenants of 505 Lafayette Ave.*, Dkt. No. XJ210022RT (2010) (building condition evidence considered in addition to vacancy)).

private persons and not to serve important public interests because [it] would . . . deprive [Plaintiffs] of the opportunity to be made whole after having put millions into the buildings." AC ¶ 204. But aside from Plaintiffs' failure to identify private persons the state action would benefit, this assertion cannot be reconciled with settled precedents. Indeed, courts have repeatedly affirmed that rent stabilization is a permissible governmental regulation adjusting economic relations between owners and tenants. *See, e.g., Harmon v. Markus*, 412 F. App'x 420, 423 (2d Cir. 2011) (summary order). Requiring owners to comply with the RSL plainly furthers important public interests in protecting tenants from oppressive rents and increasing the stock of affordable housing units in New York City. *See 74 Pinehurst*, 59 F.4th at 569. The character of the government action challenged here thus weighs strongly in favor of dismissal of Plaintiffs' regulatory taking claim.

## IV. PLAINTIFFS FAIL TO STATE A VIABLE DUE PROCESS CLAIM

This Court should dismiss Plaintiffs' due process claims concerning "re-regulation," as they must be analyzed under the Takings Clause. *See CHIP*, 59 F.4th at 556-57; *74 Pinehurst*, 59 F.4th at 569; *Harmon*, 412 F. App'x at 423. As the Supreme Court has explained, "the Due Process Clause cannot 'do the work of the Takings Clause' because 'where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *CHIP*, 59 F.4th at 556 (quoting *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 720-21 (2010)).

Even were it proper to consider Plaintiffs' claims under the due process lens, those claims also fail on the merits for several reasons. First, Plaintiffs do not plead the deprivation of any protected interest: the liberties protected by due process "do not include economic liberties." *Stop the Beach*, 560 U.S. at 721. Second, DHCR's enforcement of the RSL plainly satisfies the deferential rational basis review that would apply to Plaintiffs' substantive due process claim were

it considered on the merits. Courts have repeatedly held that the RSL is rationally related to legitimate state interests. *See, e.g.*, *74 Pinehurst*, 59 F.4th at 569 ("the RSL was enacted to permit low- and moderate-income people to reside in New York City"); *Greystone*, 13 F. Supp. 2d at 528 (affirming New York's "legitimate state interest" in "coping with an acute shortage of available housing, and preventing unjust and oppressive rents and profiteering"). And DHCR's decision to enforce the State's rent stabilization laws by relying on evidence of a building's actual condition to qualify for the SRE—instead of relying solely on an evidentiary presumption that is easily manipulated—is reasonable and rationally connected to furthering the legislative aim that the exemption be applied to the rehabilitation of "dilapidated and basically uninhabitable housing." *Eastern Pork*, 187 A.D.2d at 324. Third, even if Plaintiffs could allege the deprivation of a cognizable property interest, Plaintiffs' procedural due process claim necessarily fails because they cannot allege that they received insufficient process. There can be no serious dispute that Plaintiffs, as parties to the pending state court action, will have the opportunity to be heard before the state court prior to any determination of the rent stabilization status of their properties.

## V. PLAINTIFFS FAIL TO STATE AN EQUAL PROTECTION CLAIM

Plaintiffs allege a "class-of-one" equal protection claim on the basis that DHCR treated them differently from other owners. To demonstrate a "class of one" equal protection violation, the plaintiff must plausibly allege that he or she "has been intentionally treated differently from others similarly situated and that no rational basis exists for that different treatment." *Analytical Diagnostic Labs, Inc. v. Kusel,* 626 F.3d 135, 140 (2d Cir.2010) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)); *accord Thomas v. Genova*, 11-cv-6084 (HG) (ARL), 698 F. Supp. 3d 493, 514 (E.D.N.Y. 2023), *aff'd as amended*, No. 23-7452, 2025 WL 583182 (2d Cir. Feb. 24, 2025) (plaintiff must show "that they were intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose is all

but certain"). A class-of-one plaintiff must show "an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59-60 (2d Cir. 2010).

Plaintiffs identify a sole comparator: a property developer referred to as "Company A" – Greenbrook Holdings (AC ¶ 80 & n.31). Plaintiffs allege that Greenbrook engaged in "illegal deregulation" yet was not required to reregulate its buildings under an Assurance of Discontinuance ("AOD"). *Id.* But the AOD and Plaintiffs' own allegations demonstrate that Greenbrook was not "similarly situated" to Plaintiffs because it was found to have engaged in wholly different conduct unconnected to the SRE. *See* AC ¶ 80(a)(i)-(v) (findings of tenant harassment, charging unlawful rents, maintenance failures, and construction code violations); *In the Matter of Greenbrook Holding LLC*, Assurance No. 22-064 at Sec. II at 4-13 (detailing findings of violations) (Oct. 11, 2022), available at https://tinyurl.com/4za7sw6z.[9] That a different party allegedly obtained a more favorable settlement in a different case involving different violations is insufficient to state a plausible equal protection claim. *See, e.g.*, *Vassallo v. Lando*, 591 F. Supp. 2d 172, 184 (E.D.N.Y. 2008) (comparators must be "similarly situated in all material respects"). In any event, a "mere failure to prosecute other offenders is not a basis for a finding of denial of equal protection." *LaTrieste Rest. v. Village of Port Chester*, 188 F.3d 65, 70 (2d Cir. 1999); *Missere v. Gross*, 826 F. Supp. 2d 542, 564 (S.D.N.Y. 2011) (favorable treatment of another is insufficient to establish that plaintiff "suffered any differential treatment").

**CONCLUSION**

The Court should dismiss the Amended Complaint in its entirety.

[9] The Court may properly consider the content of the AOD for purposes of resolving the motion to dismiss because the Amended Complaint references and relies on the AOD. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Dated: New York, New York
July 17, 2026


LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendant RuthAnne Visnauskas*

By: */s/ Linda Fang*
LINDA FANG
Special Litigation Counsel
BRONWYN JAMES
Assistant Attorney General
28 Liberty Street
New York, NY 10005

**CERTIFICATION PURSUANT TO CIVIL RULE 7.1(C) OF THE JOINT LOCAL RULES OF THE UNITED STATES DISTRICT COURTS FOR THE SOUTHERN AND EASTERN DISTRICTS OF NEW YORK**

The undersigned certifies that, excluding the cover page, captions, tables of contents and authorities, and signature block, this Memorandum of Law in Support of the Defendant's Motion to Dismiss is 25 pages long, fewer than the 25-page limit set by Rule III(C)(1) of the Individual Practice Rules of Judge Diane Gujarati.

Dated: New York, New York
July 17, 2026

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendant RuthAnne Visnauskas*

By: */s/ Linda Fang*
LINDA FANG
Special Litigation Counsel
BRONWYN JAMES
Assistant Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-8580
Email: Linda.Fang@ag.ny.gov