UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BALANCED HOUSING SOLUTIONS, by its President, Hank Sheinkopf, et al.,

Plaintiffs,

– against –

RUTHANNE VISNAUSKAS, in her official capacity as Commissioner of the New York State Division of Housing and Community Renewal,

Defendant.

No. 25-cv-06574 (DG) (VMS)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**

LETITIA JAMES
Attorney General
State Of New York
*Attorney for Defendant RuthAnne Visnauskas*
28 Liberty Street
New York, New York 10005

Linda Fang
*Special Litigation Counsel*
Bronwyn James
*Assistant Attorney General*
*Of Counsel*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

ARGUMENT ........ 1

I. ABSTENTION IS WARRANTED OVER ALL OF PLAINTIFFS' CLAIMS ........ 2

II. NONE OF PLAINTIFFS' CLAIMS SURVIVE DHCR'S MOTION TO DISMISS ........ 6

A. Plaintiffs' Regulatory Takings Claim Is Premature ........ 6

B. Plaintiffs' Regulatory Takings Claim Challenging the Enforcement of the State's Rent-Stabilization Law Fails Under Binding Precedents ........ 8

C. Plaintiffs' Other Claims are Likewise Fatally Deficient ........ 13

CONCLUSION ........ 14

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*335-7 LLC v. City of N.Y.*, 524 F. Supp. 3d 316 (S.D.N.Y. 2021) .......... 7

*74 Pinehurst LLC v. New York*, 59 F.4th 557 (2d Cir. 2023) .......... 4, 7, 14

*Amazon.com, Inc. v. James*, No. 21-cv-767 (BMC),
2021 WL 3516382 (E.D.N.Y. Aug. 10, 2021) .......... 5

*Arbitron Inc. v. Cuomo*, No. 08-cv-8497 (DLC),
2008 WL 4735227 (S.D.N.Y. Oct. 27, 2008) .......... 4

*Cavanaugh v. Geballe*, 28 F.4th 428 (2d Cir. 2022) .......... 6

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) .......... 10

*Cienega Gardens v. United States*, 331 F.3d 1319 (Fed. Cir. 2003) .......... 13

*Cullen v. Fliegner*, 18 F.3d 96 (2d Cir. 1994) .......... 4

*Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191 (2d Cir. 2002) .......... 3, 5

*DoorDash, Inc. v. City of N.Y.*, 692 F. Supp. 3d 268 (S.D.N.Y. 2023) .......... 13

*Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998) .......... 12

*Elmsford Apt. Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148 (S.D.N.Y. 2020) .......... 9

*Federal Home Loan Mortg. Corp. v. New York State Div. of Housing & Community Renewal*,
83 F.3d 45 (2d Cir. 1996) .......... 9, 12

*Friedl v. City of New York*, 210 F.3d 79 (2d Cir. 2000) .......... 10

*Goldstein v. Pataki*, 516 F.3d 50 (2d Cir. 2008) .......... 13

*Hansel v. Town Ct. for Town of Springfield*, 56 F.3d 391 (2d Cir. 1995) .......... 6

*Jackson Hewitt Tax Serv. Inc. v. Kirkland*, 455 F. App'x 16 (2d Cir. 2012) .......... 4, 5

*Jackson Hewitt Tax Serv. Inc. v. Kirkland*, 735 F. Supp. 2d 91 (S.D.N.Y. 2010),
*aff'd* 455 F. App'x 16 (2d Cir. 2012) .......... 3

*Jagoda v. City of Saratoga Springs*, 819 F. Supp. 3d 116 (N.D.N.Y. 2025) .......... 3

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Matter of Eastern Pork Prods. Co. v. New York State Div. of Hous. & Community Renewal*, 187 A.D.2d 320 (1st Dep't 1992) ........ 11

*Minnesota Living Assistance, Inc. v. Peterson*, 899 F.3d 548 (8th Cir. 2018) ........ 3

*New Orleans Pub. Svc., Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989) ........ 3

*Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619 (1986) ........ 3

*Orenstein v. Figel*, 677 F. Supp. 2d 706 (S.D.N.Y. 2009) ........ 13

*Pakdel v. City and Cnty. of San Francisco*, 594 U.S. 474 (2021) ........ 7

*Sherman v. Abengoa, S.A.*, 156 F.4th 152 (2d Cir. 2025) ........ 5

*Sherman v. Town of Chester*, 752 F.3d 554 (2d Cir. 2014) ........ 13

*South Nassau Bldg. Corp. v. Town Bd. of Town of Hempstead*, 624 F. Supp. 3d 261 (E.D.N.Y. 2022) ........ 7

*Spargo v. New York State Commission on Judicial Conduct*, 351 F.3d 65 (2d Cir. 2003) ........ 3

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013) ........ 2

*Stop the Beach Renourishment, Inc. v. Florida Dep't of Env't Prot.*, 560 U.S. 702 (2010) ........ 14

*Vassallo v. Lando*, 591 F. Supp. 2d 172 (E.D.N.Y. 2008) ........ 13

*VDARE Found., Inc. v. James*, No. 25-cv-810 (N.D.N.Y.), Mem. Decision & Order, dated Sep. 10, 2026 (ECF No. 53) ........ 4

**Statutes**

ETPA § 10(a), L. 1983, ch. 403, § 3 ........ 4

ETPA § 5 ........ 9

RSL § 26-511 ........ 7

## ARGUMENT

Plaintiffs commenced the instant federal action seeking to enjoin and forestall the State's enforcement action against them. In that pending state action, the State Division of Housing and Community Renewal ("DHCR") and the New York State Office of the Attorney General ("OAG") allege that 159 apartments owned by Plaintiffs are subject to the State's rent-stabilization laws, and that Plaintiffs violated those state laws by, among other things, charging more than the legal regulated rents for those apartments. As DHCR explained in its moving brief, the federal action should be dismissed under *Younger* and related abstention doctrines in deference to the ongoing parallel state enforcement proceeding, and all of Plaintiffs' constitutional claims challenging the application of the State's rent-stabilization laws against them are foreclosed by decades of settled—and binding—precedents from the Second Circuit. In opposition, Plaintiffs fail to meaningfully grapple with any of the applicable legal authorities, and instead simply ask this Court to disregard them en masse as irrelevant. Plaintiffs additionally raise new allegations not contained in their pleadings and which are devoid of factual support. Because none of Plaintiffs' arguments have merit, the Court should grant DHCR's dismissal motion in its entirety and dismiss the Amended Complaint.[1]

---

[1] As a threshold matter, the Court should disregard Plaintiffs' improper request to construe their opposition brief as a "premotion request to cross move for a preliminary injunction." *See* Pls.' Opposition to Motion to Dismiss ("Pls.' Opp.") at 3. Plaintiffs do not explain why the extraordinary remedy of preliminary relief would be warranted now in a case they initiated ten months ago (in November 2025) involving only alleged economic harms. Nor do they articulate the preliminary relief they would be seeking. There is likewise no basis to permit Plaintiffs to amend their complaint (again) (Pls.' Opp. at 2-3 & n.5) where Plaintiffs cannot amend around abstention or the numerous fatal deficiencies in their legal theories.

## I. ABSTENTION IS WARRANTED OVER ALL OF PLAINTIFFS' CLAIMS

This Court should abstain from hearing the instant federal action in deference to the ongoing state enforcement action under *Younger*. As DHCR explained, the State's pending enforcement proceeding is the prototypical civil enforcement action subject to *Younger* abstention under *Sprint Communications*, and all of the *Middlesex* factors likewise counsel in favor of abstention. *See* Def.'s Mem. of Law in Supp. of Motion ("Def.'s Mem.") at 9-10. Plaintiffs do not dispute that they will have a full and fair opportunity to raise and litigate all of their constitutional claims and defenses in the state court action. Pls.' Opposition to Motion to Dismiss ("Pls.' Opp.") at 26-27. And Plaintiffs' complaints about the sufficiency of the State's state-court pleading and the legal merits of the claims asserted in the state action do not come close to satisfying the narrow bad faith exception for bypassing *Younger*. *See* Def.'s Mem. at 10-12.

In their opposition, Plaintiffs resist abstention and contend that the pending state enforcement action does not qualify as a "civil enforcement proceeding" under *Sprint*'s categorical test for *Younger* abstention and dispute that the state action implicates important state interests. *See* Pls.' Opp. at 27-30. These arguments are foreclosed by settled precedents.

Plaintiffs are mistaken that the pending enforcement action cannot be the basis for *Younger* abstention because it is "a regulatory dispute, not a quasi-criminal one." *See* Pls.' Opp. at 28-30. Here, there is no dispute that the pending state enforcement action was preceded by a years-long investigation by DHCR and OAG, and the state action seeks to sanction Plaintiffs for alleged violations of state rent-stabilization and consumer protection laws. The Supreme Court has identified these precise criteria as categorically triggering abstention under *Younger* as a "quasi-criminal" "civil enforcement proceeding." *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78-80 (2013) (describing a "civil enforcement proceeding" as being initiated by "a state actor"

following "an investigation" to "sanction" for "some wrongful act," whereas a civil action commenced by a *private actor* was not "akin to a criminal proceeding" and not subject to *Younger*).

The Supreme Court, the Second Circuit, and other district courts have consistently held that *Younger* abstention applies with equal force to civil actions (and administrative proceedings) like the one here—without requiring any direct "criminal analogue" (Pls.' Opp. at 29) to the state proceeding. *See, e.g.*, *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 626-29 (1986) (state administrative proceeding enforcing anti-discrimination laws); *Jackson Hewitt Tax Serv. Inc. v. Kirkland*, 735 F. Supp. 2d 91, 95-98 (S.D.N.Y. 2010), *aff'd* 455 F. App'x 16 (2d Cir. 2012) (same); *Spargo v. New York State Commission on Judicial Conduct*, 351 F.3d 65, 75 (2d Cir. 2003) (judicial disciplinary proceedings); *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 197 (2d Cir. 2002) (administrative proceeding based on state labor law violations); *Jagoda v. City of Saratoga Springs*, 819 F. Supp. 3d 116, 123-24 (N.D.N.Y. 2025) (enforcement of zoning and land use laws). Plaintiffs' own out-of-circuit citation (Pls.' Opp. at 28) is in accord. *See Minnesota Living Assistance, Inc. v. Peterson*, 899 F.3d 548, 554 (8th Cir. 2018) (state enforcement proceeding concerning wage law violations was subject to *Younger*).

Plaintiffs' additional contention (Pls.' Opp. at 27) that the state action does not implicate important state interests is similarly meritless. In determining "the substantiality of the State's interest in its proceedings," courts "do not look narrowly to [the State's] interest in the *outcome* of the particular case" but instead to "the importance of the generic proceedings to the State." *New Orleans Pub. Svc., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 365 (1989) (emphasis in original). The relevant interests in this case are thus the State's interests in enforcing the rent-stabilization and consumer protection laws to ensure that presumptively rent-stabilized housing units are not improperly removed from rent regulation, and that tenants are protected from

deceptive conduct. DHCR is the agency that the state Legislature designated to administer the rent stabilization laws. ETPA § 10(a), L. 1983, ch. 403, § 3. And OAG routinely enforces state anti-fraud and consumer protection laws. Courts have squarely concluded that these laws—which DHCR and OAG seek to enforce in the state action—further important state interests. *E.g.*, *74 Pinehurst LLC v. New York*, 59 F.4th 557, 568 (2d Cir. 2023) (rent-stabilization laws); *VDARE Found., Inc. v. James*, No. 25-cv-810 (N.D.N.Y.), Mem. Decision & Order, dated Sep. 10, 2026 (ECF No. 53) at 19-20 (applying *Younger* abstention where OAG enforcement of Exec. Law § 63(12) "concern vitally important state interests"); *Arbitron Inc. v. Cuomo*, No. 08-cv-8497 (DLC), 2008 WL 4735227, at *5 (S.D.N.Y. Oct. 27, 2008) (OAG's enforcement of state consumer protection laws implicates "important state interests" warranting abstention).

Plaintiffs' attempt to bypass *Younger* by claiming bad faith is unavailing. Plaintiffs' disagreement with the merits of the State's pending enforcement action (including who was named as defendant) and its characterization of the action as unprecedented (Pls.' Opp. at 31-33) fall far short of the "no reasonable expectation of obtaining a favorable outcome" showing which the Second Circuit has required for bad faith. *Jackson Hewitt Tax Serv. Inc. v. Kirkland*, 455 F. App'x 16, 19 (2d Cir. 2012) (quoting *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994)) (pursuing "novel" theory or new application of state law insufficient where it cannot be said that the State's theory was "so unreasonable as to suggest that its proceedings are in bad faith or are motivated by a desire to harass"). Plaintiffs make no attempt to argue that this strict standard is met.

Additionally, nothing in the statements in the press release announcing DHCR and OAG's enforcement action against Plaintiffs (Pls.' Opp. at 33)—which merely describe the State's allegations premised on evidence gathered during the State's investigation—provide any support for Plaintiffs' conclusory claims of bad faith. *See Jackson Hewitt*, 455 F. App'x at 19 (rejecting

similar arguments of bad faith predicated on press release statements concerning enforcement action where "[a]ny animus expressed in the statements is directed at the allegedly discriminatory conduct" and not at plaintiff). Nor can Plaintiffs avoid *Younger*'s application by contending, for the first time in its opposition to DHCR's motion to dismiss (and without a shred of factual support), that the State's years-long investigation was "pretextual." *See* Pls.' Opp. at 30; *but see* Am. Compl. ¶ 140 n.48 (acknowledging DHCR collected documents from Plaintiffs during investigation); Tr. of Premotion Conf., dated Mar. 23, 2026 at 8:7-11 ("The Court: But you're not taking issue with the representation that there had been an investigation prior to the filing of the state case? Mr. Walden: No, no, no. There absolutely was, Your Honor."); 46:24-47:1 (Plaintiffs' counsel: "There was a long period of investigation where [the State was] interviewing people and asking for documents").

In any event, putting aside the fact that Plaintiffs may not amend their "pleadings through a brief," *Sherman v. Abengoa, S.A.*, 156 F.4th 152, 170 (2d Cir. 2025), their new characterization of DHCR and OAG's investigation is still insufficient to satisfy the bad faith exception. Whatever Plaintiffs' criticisms of DHCR's actions, they have not alleged—nor can they demonstrate—that the investigation in 2023 and ensuing enforcement action in 2025 was "brought with no legitimate purpose," which is necessary for invoking the "tightly defined" bad faith exception. *Diamond "D" Constr.*, 282 F.3d at 195-97, 199-200 (enforcement predicated on a "facially unconstitutional" law and "arbitrary" investigation did not suffice to demonstrate bad faith); *Jackson Hewitt*, 455 F. App'x at 19; *accord Amazon.com, Inc. v. James*, No. 21-cv-767 (BMC), 2021 WL 3516382, *4-5 (E.D.N.Y. Aug. 10, 2021).

The stated purpose of this federal action is to interfere with—indeed, to halt and preclude—DCHR's pending enforcement action and force DHCR to litigate Plaintiffs' constitutional and

merits defenses in Plaintiffs' forum of choice. *See* Am. Compl. at 98-99. This is precisely the interference and forum shopping that *Younger* seeks to prevent.

The straightforward conclusion on the "threshold issue" that *Younger* applies here obviates the need for this Court to consider the merits of any of Plaintiffs' claims or the remaining grounds raised by DHCR for dismissal. *See, e.g.*, *Cavanaugh v. Geballe*, 28 F.4th 428, 432 (2d Cir. 2022) (district court properly determined *Younger* abstention before resolving other issues); *Hansel v. Town Ct. for Town of Springfield*, 56 F.3d 391, 394 (2d Cir. 1995) (where case "falls squarely within the traditional requirements for *Younger* abstention, the district court should have dismissed [the] action on this basis without reaching the merits of [the] constitutional claim"). Accordingly, the Court should dismiss this case in deference to the ongoing state court action.[2]

## II. None of Plaintiffs' Claims Survive DHCR's Motion to Dismiss

Even were the Court to consider the rest of the dismissal motion, the motion should be granted because Plaintiffs' claims cannot withstand the motion to dismiss.

### A. Plaintiffs' Regulatory Takings Claim Is Premature

As an initial matter, Plaintiffs' regulatory takings claim should be dismissed as unripe because there has been no final determination as to how the rent-stabilization laws—and the exemption from rent stabilization relied on by Plaintiffs ("the sub rehab exemption") in particular—will apply to Plaintiffs' properties. As DHCR previously explained, there has been no

[2] As DHCR previously explained, the Court should also abstain under related abstention doctrines. Abstention is warranted to avoid this Court's passing on potentially unnecessary constitutional questions that may be obviated by yet-to-be-made state court determinations about the proper scope of the State's rent-stabilization laws. *See* Def.'s Mem. at 14-17. For example, if the state court determines in the pending state court action that the apartments that Plaintiffs own were properly deregulated and are subject to market rents as Plaintiffs have contended (Pls.' Opp. at 3), then nothing would be "taken" from Plaintiffs and this Court would have no need to reach the question of whether a regulatory takings has occurred or whether due process was violated.

final determination as to whether the 159 apartments at issue in the state enforcement action are subject to rent-stabilized rents or market rents, or what those legal rents may be. These are the precise matters to be determined in the state enforcement action, which is ongoing. *See* Def.'s Mem. at 15-16 & n.6. Absent such a determination, Plaintiffs continue to collect market rents for their properties, as they have been doing for years prior to the enforcement action. *See* Def.'s Mem. at 15-16. Plaintiffs do not allege otherwise. And Plaintiffs do not explain why they are not able to apply for hardship exemptions for increased rents under the rent-stabilization laws like other property owners, *see* Def.'s Mem. at 4 n.2 (citing RSL § 26-511(c)(6), (6-a)), or why the Second Circuit's express holding that not applying for such hardship exemptions renders a takings claim unripe does not apply to them, *see, e.g.*, *74 Pinehurst*, 59 F.4th at 565; *335-7 LLC v. City of N.Y.*, 524 F. Supp. 3d 316, 335-36 (S.D.N.Y. 2021) (applying circuit precedents in dismissing as-applied regulatory takings claim as unripe where owners had not sought hardship exemptions).

Here, because it remains unknown "how far [the challenged government action] goes," Plaintiffs' claim that the action "has gone too far" as to constitute a regulatory taking is necessarily premature. *Pakdel v. City and Cnty. of San Francisco*, 594 U.S. 474, 479 (2021) (cleaned up). None of the readily distinguishable authorities involving final governmental actions relied on by Plaintiffs warrant a different result. *See id.* at 476 (city's denial of owner's request to be exempt from requirement of offering tenants a lifetime lease satisfied the finality requirement because the city had already denied the request for exemption twice and the "relevant agency could no longer grant relief" from the lease requirement) (cleaned up); *South Nassau Bldg. Corp. v. Town Bd. of Town of Hempstead*, 624 F. Supp. 3d 261, 270 (E.D.N.Y. 2022) (town's determination that property was subject to landmark designation, reached following several hearings where no appeals were available, was sufficiently final to render takings claim based on determination ripe).

### B. Plaintiffs' Regulatory Takings Claim Challenging the Enforcement of the State's Rent-Stabilization Law Fails Under Binding Precedents

Even if Plaintiffs' regulatory takings claim were ripe, it nonetheless fails on the merits under binding precedents. *See* Def.'s Mem. at 16-23. Unable to overcome the overwhelming weight of these authorities, Plaintiffs simply ask the Court to disregard them. Plaintiffs insist that the myriad cases consistently rejecting takings claims decided by the Second Circuit and other district courts concerning the State's rent-stabilization laws are "irrelevant" because Plaintiffs are not challenging those laws, but the State's enforcement action. *See* Pls.' Opp. at 14. But this argument makes no sense: because the State's pending action seeks to enforce the State's rent-stabilization laws as against Plaintiffs, challenging the enforcement action is no different than challenging the laws directly as applied to Plaintiffs.

As DHCR explained in its opening brief, none of the *Penn Central* factors weigh in favor of Plaintiffs. *See* Def.'s Mem. at 17-23. As for economic impact, the crux of the dispute between Plaintiffs and DHCR (and OAG) in the pending enforcement action is the rent-stabilized status of the subject apartments and the resulting rents that may be charged: Plaintiffs claim they are entitled to collect market rents because they qualified for the sub rehab exemption, and the State claims that Plaintiffs are entitled to collect only regulated rents because Plaintiffs did not satisfy the exemption requirements. Nothing in the pending enforcement action impairs Plaintiffs' ability to sell or transfer their properties, contrary to Plaintiffs' new assertions made in their brief. *See* Pls.' Opp. at 12 (arguing "[n]one of the buildings can be resold"). Plaintiffs' speculative claims about other purported economic harms and self-inflicted injuries are similarly insufficient. *See* Pls.' Opp. at 12-13 (asserting that the buildings cannot "afford to pay current expenses in light of legal costs," and alleging "wide-scale foreclosures, personal bankruptcies"). These assertions are so vague and devoid of factual detail that the Court should not credit them. But even if they were credited, they

nonetheless fail to state a claim because Plaintiffs have not identified any cases supporting their claims that foreclosures, negative income, or legal fees implicate cognizable property interests to begin with, or that such injuries can support a regulatory takings claim.

To the contrary, the Second Circuit has time and again rejected Plaintiffs' claims that landlords have any protected property interest in collecting market rents, and that a difference in the rent allowed to be collected—and the financial consequences that flow therefrom—can support a regulatory takings claim. *See* Def.'s Mem. at 17-18 (collecting cases); *see also, e.g.*, *Elmsford Apt. Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148, 167 (S.D.N.Y. 2020) (observing "New York landlords do not enjoy a constitutional right to realize a profit from their rental properties—let alone all the profits contemplated in each of their individual rental agreements").

These precedents apply with equal force to Plaintiffs' claims, which concern how the State's rent-stabilization laws (including the sub rehab exemption, which derives from state law, *see* ETPA § 5(a)) apply to their properties, regardless of how Plaintiffs characterize their challenge. Plaintiffs do not explain how not being able to maximize rents renders a property "unusable for permitted purposes or otherwise unmarketable," as they baselessly assert. *See* Pls.' Opp. at 14. Nor could they, since the Second Circuit has expressly held that the reregulation of previously deregulated apartments did not render the "property unusable for permitted purposes or otherwise unmarketable," where the owner maintained the ability to "rent apartment and collect the regulated rents," as is the case here. *See Federal Home Loan Mortg. Corp. v. New York State Div. of Housing & Community Renewal*, 83 F.3d 45, 47-48 (2d Cir. 1996) ("*FHLMC*").

Plaintiffs' assertions that the enforcement action upset their reasonable investment-backed expectations likewise do not support their regulatory takings claim.[3] As DHCR has explained, the plain text of the DHCR guidance that Plaintiffs rely on for claiming deregulation does not support Plaintiffs' primary claim that an 80% vacancy rate prior to a building's rehabilitation *conclusively* demonstrates an owner's entitlement to the sub rehab exemption, to the exclusion of any other evidence of a building's actual physical condition. *See* Def.'s Mem. at 19-20 (citing DHCR Operational Bulletin 95-2 at 2-3 (stating that owners will be required to provide evidence and records about the building's condition "in addition to" vacancy evidence)). Plaintiffs again misplace their reliance on administrative determinations issued by hearing officers employed by DHCR's Office of Rent Administration in rent challenges brought by tenants, where the issue of a building's vacancy was not disputed or litigated by the parties (*see generally* Pls.' Opp., Ex. C), or where the parties simply did not put forth evidence about a building's pre-rehabilitation condition (*see* Def.'s Mem. at 21 n.8 (summarizing earlier administrative determinations relied on by Plaintiffs in Amended Complaint)). Those administrative decisions issued by the adjudicatory arm of DHCR in resolving disputes between tenants and landlords are not related to DHCR's statutory authority to enforce the rent stabilization laws. *See* Def.'s Mem. at 21.

---

[3] In opposition to DHCR's motion to dismiss, Plaintiffs reference and rely on a number of extrinsic materials, including declarations by two consultants retained by Plaintiffs setting forth those consultants' personal opinions on various factual issues. *See* Pls.' Opp. at 2-3, 5-6, 31, Exs. A, B. Basic rules of civil procedure bar courts from considering such extra-pleading material in deciding a Rule 12(b) motion. *See Chambers v. Time Warner*, *Inc.*, 282 F.3d 147, 154 (2d Cir. 2002); *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) ("a district court errs when it considers affidavits and exhibits submitted by [parties], or relies on factual allegations contained in briefs or memoranda, in ruling on a 12(b)(6) motion to dismiss"). And in any event, the untested declarations which, read most generously, pertain to the merits of Plaintiffs' defenses in the state enforcement action, are not relevant to the resolution of DHCR's dismissal motion, which challenges the legal sufficiency of Plaintiffs' federal claims and the propriety of this Court's hearing of those claims in light of the ongoing parallel state action.

Similarly unavailing is Plaintiffs' claim that DHCR had never previously commenced an enforcement proceeding against any owners for not satisfying the sub rehab exemption requirements when the owners were able to demonstrate an 80% vacancy rate. *See* Pls.' Opp. at 14-15. Even if this assertion is assumed to be true, it does not follow that DHCR is not permitted to commence such actions or to overcome any presumptions arising from any demonstrated vacancy rates. Nor does it plausibly establish that DHCR's pending enforcement action seeks to impose new standards. To the contrary: "[f]orbearance in enforcement of a law does not thereby nullify its requirements, nor does more effective enforcement heighten them." *Citizens United v. Schneiderman*, 882 F.3d 374, 389 (2d Cir. 2018). DHCR's decision to enforce longstanding requirements that the sub rehab exemption apply only to the rehabilitation of essentially uninhabitable properties, *see, e.g.*, *Matter of Eastern Pork Prods. Co. v. New York State Div. of Hous. & Community Renewal*, 187 A.D.2d 320, 324 (1st Dep't 1992) (purpose of sub rehab exemption is to "increase the number of *habitable* units" in New York City) (emphasis added),[4] does not violate constitutional norms. Plaintiffs' allegations that DHCR's pending enforcement seeks to impose new rules by looking beyond a property's vacancy rate are not entitled to the presumption of truth because they are contradicted by the plain text of the regulatory guidance that Plaintiffs admit governed administration of the exemption.

Moreover, Plaintiffs' characterization of the state enforcement action as unprecedented and the State's claims as "false" (Pls.' Opp. at 32-33) does not support their regulatory takings claim.

---

[4] In DHCR's moving brief (Def.'s Mem. at 4, 22, 24), the phrase "to encourage rehabilitation of dilapidated and basically uninhabitable housing stock" was mistakenly quoted and attributed to *Matter of Eastern Pork Products Company v. New York State Division of Housing & Community Renewal*, 187 A.D.2d 320, 324 (1st Dep't 1992). The quoted language does not appear in *Matter of Eastern Pork*, although the underlying statement is supported by the First Department's decision. Counsel apologizes for this inadvertent error in the prior brief.

It cannot be disputed that the underlying state action seeks to enforce the State's generally applicable rent-stabilization (and consumer protection) laws. The Second Circuit has consistently concluded that application of the State's rent-stabilization laws, including provisions which limit deregulation and what rents may be collected, further the important public goals of protecting the stock of affordable housing units in New York City and thus are permissible governmental actions that are not consistent with a regulatory taking. *See* Def.'s Mem. at 22-23 (collecting cases).

At bottom, the ongoing state enforcement action simply seeks to determine the rent-stabilization status of the 159 apartments at issue and whether Plaintiffs satisfied the requirements for claiming exemptions from rent-stabilization for those apartments. Plaintiffs' argument that such actions are in the nature of an unconstitutional taking is foreclosed by the Second Circuit's decision in *FHLMC* issued decades ago. In *FHLMC*, the purchaser of a rental building that had been removed from rent stabilization pursuant to an exemption brought a declaratory judgment against DHCR, seeking a determination of its continued entitlement to the exemption. 83 F.3d at 46-47. After the New York Court of Appeals answered the Second Circuit's certified state-law question about the scope of the exemption by concluding that the building was no longer exempt under state law, the Second Circuit held that the nature of the harms suffered by FHLMC as a result of the government action—in being denied the exemption and thereby being limited to collecting lower, regulated rents—did not constitute a regulatory taking. *Id.* at 48. *FHLMC* is binding on this Court and compels the dismissal of Plaintiffs' regulatory takings claim. None of the cases relied on by Plaintiffs involving challenges to entirely factually distinguishable governmental actions (Pls.' Opp. at 9-10) supports their contrary assertions.[5]

---

[5] *Eastern Enterprises v. Apfel*, 524 U.S. 498, 499-500 (1998) (law that required company to pay insurance premiums for retired workers from decades prior); *Sherman v. Town of Chester*,

(*continued on the next page*)

### C. Plaintiffs' Other Claims are Likewise Fatally Deficient

In its moving brief, DHCR explained that Plaintiffs' selective enforcement claim should be dismissed because Plaintiffs failed to identify a comparator who was "similarly situated in all material respects." *See* Def.'s Mem. at 24-25; *e.g.*, *Vassallo v. Lando*, 591 F. Supp. 2d 172, 184 (E.D.N.Y. 2008). Other than repeating their conclusory and inadequate allegations of selective enforcement based on the sole alleged comparator ("Company A"), Plaintiffs' opposition utterly fails to respond to DHCR's argument that the Assurance of Discontinuance relied on by Plaintiffs in the Amended Complaint makes clear that Company A was investigated for entirely different conduct that bear no similarity to Plaintiffs' circumstances. *See* Def.'s Mem. at 25. Nor have Plaintiffs alleged any facts to establish any possible motive for why DHCR (and OAG) would choose to single out Plaintiffs for investigation and enforcement. Under such circumstances, Plaintiffs' bare assertions of selective enforcement are not entitled to the presumption of truth and must be dismissed. *See, e.g.*, *Goldstein v. Pataki*, 516 F.3d 50, 55-57 (2d Cir. 2008) (bald allegations of pretext and selective treatment by state did not "raise a right to relief above the speculative level"); *Orenstein v. Figel*, 677 F. Supp. 2d 706, 711 (S.D.N.Y. 2009) (dismissing claim as implausible where complaint provided no "explanation why [defendants] would have an interest in acting maliciously towards" plaintiff).

---

752 F.3d 554, 565-66 (2d Cir. 2014) (town's repeated enactment of new zoning ordinances, imposition of moratoriums and requirements to resubmit development plans, all targeted specifically to landowner and prevented him from developing his property for over 10 years); *Cienega Gardens v. United States*, 331 F.3d 1319, 1330 (Fed. Cir. 2003) (law that extinguished right to pre-payment of mortgages with private lenders impaired vested property interests); *DoorDash, Inc. v. City of N.Y.*, 692 F. Supp. 3d 268, 297-98 (S.D.N.Y. 2023) (delivery platform plausibly pleaded that city ordinance capping fees that delivery platforms could charge, as distinguished from generally-applicable "rent stabilization legislation at issue in *74 Pinehurst LLC*," was enacted to directly to target plaintiffs).

Plaintiffs similarly fail to raise any viable opposition to DHCR's arguments for dismissal of their due process claims. Whatever the merits of the *district court* decisions relied on by Plaintiffs (*see* Pls.' Opp. at 19 (citing *South Nassau Bldg. Corp.*, 624 F. Supp. 3d at 279 and *DoorDash*, 692 F. Supp. 3d at 300)), these cases cannot overcome the Supreme Court and Second Circuit's express holdings on the validity of Plaintiffs' due process claims here. *See, e.g.*, *Stop the Beach Renourishment, Inc. v. Florida Dep't of Env't Prot.*, 560 U.S. 702, 721 (2010) ("The first problem with using substantive due process to do the work of the Takings Clause is that we have held it cannot be done."); *accord 74 Pinehurst*, 59 F.4th at 569. Indeed, Plaintiffs' opposition is entirely silent as to why the Supreme Court and Second Circuit's repeated pronouncements that due process claims should be dismissed as duplicative of takings claims does not apply in this case. *See* Def.'s Mem. at 23-24.

Even assuming that Plaintiffs have any cognizable vested property interest in collecting market rents upon which to support a due process claim (which they do not have), *see* Def.'s Mem. at 17-19 (collecting cases), Plaintiffs will have ample process in the state court action before any determination will be made by the state court on their entitlement to the sub rehab exemption for their properties—that is, before any alleged "property" will be taken from them. This necessarily forecloses Plaintiffs' procedural due process claim.

**CONCLUSION**

For these and other reasons set forth in DHCR's moving brief, the Court should dismiss the Amended Complaint in its entirety.

Dated: New York, New York
September 11, 2026

Respectfully submitted,

LETITIA JAMES
*New York State Attorney General*
Counsel for Defendant

By: /s/ Linda Fang
Linda Fang
Special Litigation Counsel
Bronwyn James
Assistant Attorney General
28 Liberty Street
New York, New York 10005
(212) 416-8580

**LOCAL RULE 7.1(C) CERTIFICATION**

The undersigned certifies that, excluding the cover page, tables of contents, and table of authorities, this reply memorandum of law contains 4,626 words, and is 14 pages long, fewer than the 15-page limit set by this Court's order, dated August 12, 2026.

Dated: New York, New York
September 11, 2026

LETITIA JAMES
*New York State Attorney General*
Counsel for Defendant

By: /s/ Linda Fang
Linda Fang
Special Litigation Counsel
28 Liberty Street
New York, New York 10005
(212) 416-8580