WALDEN HARAN WILLIAMS

whwllp.com
T: 212-335-2030
F: 212-335-2040

October 19, 2026

**Via ECF**
Honorable Vera Scanlon
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

Re: ***Balanced Housing Solutions v. Visnauskas, EDNY No. 25-cv-6574 (DG) (VMS)***

Dear Judge Scanlon:

Plaintiffs write in opposition to Defendant's motion to reconsider the Court's June 26, 2026 order (the "Order") allowing discovery to proceed. Although Defendant grounds its request for reconsideration on "changed circumstances" since the Order (see ECF No. 46), it merely rehashes general discovery disputes that have already been presented to this Court. Defendant has not demonstrated good cause to stay discovery. The Court should once again deny Defendant's request for a stay.

## I. Procedural Background

On November 25, 2025, Plaintiffs commenced this action to remedy constitutional violations committed by the NYS Division of Housing and Community Renewal ("Defendant"). Defendant requested to move for dismissal on grounds of abstention and on the merits (ECF No. 11). Plaintiffs amended the Complaint (ECF No. 14), and Defendant again sought dismissal (ECF No. 15). Following a failed mediation, the parties submitted a joint letter agreeing to a briefing schedule and stating their respective positions as to whether discovery should proceed—Plaintiffs in favor, Defendant opposed (ECF No. 26).

Two weeks later, on June 25, 2026, Your Honor held a status conference, during which Plaintiffs explained their position that discovery should proceed because Defendant possessed documents revealing how it changed the "rules of the game" governing deregulation of rent-stabilized apartments and retroactively applied them to Plaintiffs. Defendant opposed, arguing that it would be successful in its abstention-based or merits-based arguments for dismissal. Defendant also argued undue burden. Your Honor rejected Defendant's entreaties, held that discovery "shall proceed," and ordered the parties to confer on a briefing and discovery schedule.

On June 29, 2026, the parties met and conferred pursuant to FRCP Rule 26(f); although the parties agreed on a revised briefing schedule for Defendant's motion, they had multiple points of disagreement regarding a discovery schedule, which they explained in their joint letter (ECF No. 27). The Court has not issued a scheduling order, but the parties have made progress on discovery: both sides have made initial disclosures, served requests for production and interrogatories, and begun rolling production of documents. Plaintiffs have also served requests for admission

("RFAs"). Defendant objected to the number of RFAs, so Plaintiffs voluntarily reduced them to four. Plaintiffs have tried to resolve other disputes, but Defendant has been unwilling to compromise.

## II. Defendant Has Not Demonstrated Changed Circumstances

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A court should not grant reconsideration where the moving party "seeks solely to relitigate an issue already decided." *Id.*

Here, Defendant has failed to present changed circumstances. Rehashing arguments it made during the June 25th status conference, Defendant states it has "strong reasons" for dismissal, and that Plaintiffs would not be prejudiced because discovery is available in the state action (Motion at 4). These are precisely the same arguments the Court already rejected.

Searching for some change—any change—in circumstances since the Order, Defendant claims Plaintiffs have (a) unreasonably propounded requests and pushed for a speedier schedule, (b) abused the discovery process for public-relations purposes, and (c) abused the Court's docket. None of these accusations survive scrutiny.

Plaintiffs have been reasonable. In response to discovery disputes, we have proposed meet and confers, made offers of compromise (which were largely rejected out of hand), and voluntarily reduced our RFAs to only four. We accommodated Defendant's request to extend a deadline. Unlike Defendant, we are trying to mediate—rather than litigate—our objections to Defendant's discovery demands. We made voluntary amendments to the Pascal declaration, which addressed Defendant's concerns (as it concedes, *see* ECF No. 38 at 1). Defendant mentions none of this in its effort to gin up "changed circumstances." This is not a surprise since facts can be pesky to those making false accusations.

Nor are Plaintiffs using the discovery process for PR purposes. Defendant's argument to the contrary starts on a shaky foundation, since the case has received scant press attention (and only from online real-estate media). Even then, Defendant cites no discovery material that Plaintiffs allegedly provided to the few real-estate reporters interested in the case. Lacking evidence of some illicit PR campaign, Defendant doesn't bother to explain *how* Plaintiffs are allegedly misusing discovery for PR.

What *is* clear? Defendant is aggrieved by one reporter's interest in the Pascal declaration. Defendant's oft-stated position is that Plaintiffs had "no valid litigation purpose" for filing it. From this, Defendant deduces that PR was the only conceivable purpose.

Pesky facts intrude again here. We explained our decision to file the Pascal declaration. (ECF No. 28). Specifically, we reasoned that if Your Honor knew that Defendant's own former

Deputy Commissioner gave a sworn attestation that (a) for 30 years, Defendant regularly approved projects substantially similar to Plaintiffs', (b) Defendant had changed the rules without public notice and applied them retroactively, and (c) Defendant had many internal documents that would support this testimony, the Court might be inclined to speed up discovery, especially for exculpatory documents showing Plaintiffs followed the rules as written and applied until Defendant's retroactive change.

Defendant ignores this explanation because it doesn't suit its preferred narrative. In this way, Defendant objects to the declaration *precisely because* it serves a legitimate litigation purpose—one that exposes the retroactive enforcement shift underlying its unprecedented taking. This is borne out by Defendant's limited discovery to date.[1]

From all this, we trust the Court sees through Defendant's arguments—Plaintiffs are simply trying to prove their case through legitimate litigation efforts.

While Defendant's other arguments lack merit, its claim that Plaintiffs are "abusing" the Court's docket takes the proverbial cake. In this eleven-month-old case, Defendant filed three motions, and Plaintiffs filed two. If this pace is "abusive" (it isn't), Defendant is in the lead. What's more, its motions are legally tenuous. Even after we accommodated Defendant's stated (but meritless) concerns with the Pascal declaration (ECF No. 37), Defendant pressed on, filing a legally baseless motion to chill his further disclosures (ECF No. 39). In short, Defendant characterizes Plaintiffs' litigation strategies in a manner more apt to its own.

### III. Defendant has Not Demonstrated Good Cause

While Defendant's various grievances cannot constitute "changed circumstances," its argument on the merits fares no better. Defendant has not demonstrated good cause for a protective order staying discovery. "Discovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed." *Republic of Turkey v. Christie's, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018) (citation modified). A court may issue a protective order under FRCP Rule 26(c), but the "burden of showing good cause for the issuance of a protective order falls on the party seeking the order." *Id.* This burden requires "specific demonstration of fact" establishing good cause, including "(1) whether the Defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." *Brawer v. Egan-Jones Ratings Co.*, 348 F.R.D. 182, 185 (S.D.N.Y. 2025) (citation modified). Each factor favors Plaintiffs' position.

Plaintiffs' claims are strong and their defense against Defendant's dismissal motion has been robust. "When determining if a defendant has shown that a plaintiff's claims are

[1] For example, Defendant has identified agency prior opinions confirming Plaintiffs' allegation that, prior to Defendant's targeting of Plaintiffs, Defendant treated the 80% vacancy presumption as dispositive proof of substandard or seriously deteriorated condition. *See, e.g.*, Prior Opinion Docket No. KW410001OP (2022) (noting only 80% vacancy with regard to building condition and finding the scope of work described would qualify for exemption under the Code); Prior Opinion Docket No. JM110001OP (2021) (same); *cf.* Prior Opinion Docket No. HR210005OP (2019) (requiring proof of substandard condition where owner failed to show 80% vacancy).

unmeritorious, courts have looked to whether the complaint is facially without merit or whether the plaintiff has been unable to cite relevant authority in response to a defendant's challenge." *Id.* at 186. "Conversely, a court is less likely to find that a plaintiff's case is unmeritorious when both the defendant and plaintiff can make 'strong arguments' in support of their position." *Id.* Here, the Amended Complaint has facial merit. Its central theory is now substantiated by one of Defendant's own former Deputy Commissioners. And, Plaintiffs' opposition brief thoroughly debunks Defendant's arguments for dismissal. Thus, even if, *arguendo*, Defendant presented "strong reasons for dismissal" (Motion at 4), Plaintiffs' strong response forecloses a discovery stay. *See id.* at 186-87 (crediting plaintiffs' allegations and denying stay); *Republic of Turkey*, 316 F. Supp. 3d at 678-79 (same); *Zou v. Han*, No. 23-CV-02370, 2024 WL 707285, at *6 (E.D.N.Y. Feb. 21, 2024) (finding plaintiffs' strong responses make it "difficult for the Court to find at this juncture that . . . Plaintiffs' claims are unmeritorious").

Defendant has not demonstrated undue breadth or burden of discovery. Where, as here, an action involves a single defendant and just four non-complex claims with a common nucleus of facts, courts generally do not find good cause for a stay. *See DK Gentile & Co. Inc. v. Glob. Indus. Distribution Inc.*, No. 25-CV-6810, 2026 WL 1948966, at *5-6 (E.D.N.Y. July 6, 2026). Although Defendant cites a single document request as an example of overbreadth, this does not necessitate a stay because "even if one or more of the requests is objectionable in whole or in part, [Defendant]—after meeting and conferring with Plaintiffs—can seek appropriate relief from the Court, if and as needed." *Brawer*, 348 F.R.D. at 186 & n.3. Because "some burden exists in all discovery," a stay is only warranted where a defendant can point to "specific facts as to burden." *Id.* at 186; *Mirra v. Jordan*, No. 15-CV-4100, 2016 WL 889559, at *2 (S.D.N.Y. Mar. 1, 2016) (denying a stay where the defendant did not "identify any burden associated with the production, other than asserting that the plaintiff's requests 'seek extensive documents related to a wide variety of issues'"). Defendant has not shown a burden here.[2]

Finally, Plaintiffs would be prejudiced by a stay. Defendant has thus far produced documents responsive to just one of Plaintiffs' twelve "Priority Requests." Defendant's requested stay would halt *all* forms of discovery currently available to Plaintiffs, as discovery is automatically paused in the state action pursuant to New York CPLR 3214(b). The prejudice is significant because time is of the essence: every day, DHCR's actions push 31 buildings closer to bankruptcy, and Plaintiffs' relief depends on receiving Defendant's exculpatory materials.

For the foregoing reasons, the Court should deny Defendant's motion for reconsideration and reaffirm the Order.

---

[2] The facts of this case stand in stark contrast to those in Defendant's cited cases. In *Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, plaintiffs brought more than twenty distinct federal and state causes of action—many of which had "glaring legal deficiencies"—against sixteen defendants. 236 F.R.D. 113, 116 (E.D.N.Y. 2006). In *Palladino v. JPMorgan Chase & Co.*, plaintiffs brought claims against Visa, Mastercard and ten major banks, and demanded depositions of each of their CEOs and Chairmen. 730 F. Supp. 3d 4, 13 (E.D.N.Y. 2024).

Respectfully submitted,

*/s/ Jim Walden*

Jim Walden
Hunter Pearl
Walden Haran Williams LLP
250 Vesey Street, 27th Floor
New York, NY 10281
(212) 335-2030
jwalden@whwllp.com
hpearl@whwllp.com

*Attorneys for Plaintiffs*

Cc: All Counsel of Record (By ECF)